**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VINCENT NASTRO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:02CV00857(DJS) |
| ARTHUR M. D'ONOFRIO, et. al. | : | |
| Defendants. | : | DECEMBER 18, 2003 |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFEDANT CAROLYN D'ONOFRIO**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and D. Conn. L. CIV. R. 9(d), Plaintiff Vincent Nastro ("Nastro") moves for an order compelling production of documents by Defendant Carolyn D'Onofrio. In support of this Motion, Nastro represents as follows:

1. On or about August 5, 2003, Nastro filed a request for production of documents to defendant Carolyn D'Onofrio. A copy of the request for production is attached hereto as Exhibit A.

2. On or about September 5, 2003, Defendant, Carolyn D'Onofrio filed objections to Nastro's request for production. A copy of the objections is attached hereto as Exhibit B.

3. On September 16, 2003, the undersigned and Scott M. Karsten, counsel for Carolyn D'Onofrio, held a good faith conference in order to resolve discovery disputes. As a result of said conference, the undersigned believed that Carolyn D'Onofrio would produce certain documents as discussed between

counsel, although objections would be maintained as to other requests. An Affidavit regarding this good faith conference is attached hereto as Exhibit C.

4. On October 30, 2003, the undersigned appeared at the offices of Scott M. Karsten, Esq., to review documents produced. At that time, the undersigned learned for the first time that Carolyn D'Onofrio would produce no documents in response to the request.

WHEREFORE, Plaintiff Vincent Nastro moves for an Order of this Court compelling Defendant Carolyn D'Onofrio to produce all documents requested.

In addition, because of defendant's refusal to produce any documents, Nastro requests that appropriate sanctions be imposed including, but not limited to, the cost of this Motion. A Memorandum in Support of This Motion is attached hereto and by reference incorporated herein.

THE PLAINTIFF
VINCENT NASTRO

by:________________________

Edwin L. Doernberger
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847
Fed. Bar No. ct05199

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was mailed via first class mail, postage pre-paid, to the following counsel of record on December 18, 2003:

Scott M. Karsten, Esq.
Nicole D. Dorman, Esq.
Sack, Spector and Karsten, LLP
836 Farmington Avenue
West Hartford, CT 06119

Thomas P. O'Dea, Jr., Esq.
James M. Sconzo, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880-4739

Edwin L. Doernberger

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VINCENT NASTRO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:02CV00857(DJS) |
| ARTHUR M. D'ONOFRIO, et. al. | : | |
| Defendants. | : | DECEMBER 18, 2003 |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

This Memorandum is submitted by Plaintiff Vincent Nastro ("Nastro") in support of Plaintiff's Motion to Compel Production of Documents by Defendant Carolyn D'Onofrio.

## I. BACKGROUND

This action was brought by Nastro against Carolyn D'Onofrio, among others, as a result of fraudulent transfers of property by Arthur M. D'Onofrio. In the First Count Nastro claims that the transfer of certain assets by Arthur D'Onofrio ("D'Onofrio") to an offshore trust for the benefit of Carolyn D'Onofrio and her children, which transfers were made while Nastro was a creditor of Arthur D'Onofrio and which rendered D'Onofrio insolvent, was fraudulent under Conn. Gen. Stat. §52-552a, et seq. (hereinafter "CUFTA").[1]

[1] More specifically, Nastro had obtained a judgment against D'Onofrio in an action pending in California two weeks prior to the transfer of D'Onofrio's interest in New England Propeller Service, U.S. Propeller Service of Connecticut, Div-Acq and ADMW to the off-shore Trust.

The Second Count of the Amended Complaint[2] seeks judgment against, among others, Carolyn D'Onofrio for the value of the assets transferred by Arthur D'Onofrio pursuant to Conn. Gen. Stat. §52-552i.

The Third Count of the Amended Complaint, which Count was contained in the Original Complaint filed by Nastro, claims that the transfers by D'Onofrio of the companies as set forth in First Count to the off-shore trust for the benefit of Carolyn D'Onofrio together with other transfers to Carolyn D'Onofrio, including, but not limited to, the transfer of Goodspeed Airport Development Corp. and real property located at 3 Lumbaryard Road, East Haddam, constituted fraudulent transfers, and that these transfers constituted an unfair trade practice within the meaning of Conn. Gen. Stat. §42-110(a) et seq. on part of Arthur D'Onofrio and Carolyn D'Onofrio. The motion of Carolyn D'Onofrio to dismiss this count was denied by the Court.

The Forth Count of the Amended Complaint[3] seeks the imposition of a constructive trust upon all assets fraudulently transferred by Arthur D'Onofrio and any proceeds from such transfers.

The Fifth Count of the Amended Complaint[4] claims that the transfers by D'Onofrio and the participation in these transfers by, among others, Carolyn

---

[2] A Motion to Dismiss this Count is currently pending before the Court, but this Count has not yet been dismissed from the Complaint.
[3] A Motion to Dismiss this Count is currently pending before the Court, but this Count has not yet been dismissed from the Complaint.
[4] A Motion to Dismiss this Count is currently pending before the Court, but this Count has not yet been dismissed from the Complaint.

D'Onofrio, constitute a violation of the Racketeering Influence Corrupt Organization Act, 18 U.S.C §1962 et seq. ("RICO").

Following the denial by the Court of the Motion to Dismiss the Original Complaint, Nastro commenced discovery by, among other items, filing a production request directed to Carolyn D'Onofrio (Exhibit A). These requests were filed to obtain information concerning transfers of property involving Carolyn D'Onofrio. Carolyn D'Onofrio filed objections to all requests (Exhibit B) and has refused to produce *any* documents. As more particularly set forth, below Nastro believes that all requested documents are directly relevant to the claims which he has asserted or are reasonably calculated to lead to the discovery of admissible evidence at the trial of this action, and that, therefore, the motion to compel should be granted.

## II. PARTICULAR DOCUMENT REQUESTS AND OBJECTIONS

As set forth in the affidavit attached hereto (Exhibit C), a good faith conference to resolve these discovery disputes was held between the undersigned and Scott M. Karsten Esq., on September 16, 2003. The undersigned believed and understood that many objections were resolved; however, since no documents were produced by Carolyn D'Onofrio, the following items and or categories are those which the undersigned believes are in dispute.

Rule 26 (b)(1) of the Federal Rules of Court Procedure provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party,

> including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 34 permits a party to inspect and copy documents "in the possession, custody or control" of another party. As will be shown below, Nastro's document requests fall within the scope of this rule.

A. Time Period

The time period for which documents were requested by Nastro was January 1, 1994 onward. Defendant objected to production of any documents prior to May 17, 1999, but during the conference modified such objection to May 17, 1998, based upon the 4-year statute of limitations contained in the CUFTA. Nastro believes that this time period is far too restrictive, since, among other items, Nastro is entitled: (1) to determine that other fraudulent transfers between Arthur D'Onofrio and Carolyn D'Onofrio took place for the purposes of the CUTPA claim, (2) determine for a time period beyond the 4-year period entered in CUFTA any other transfers between Arthur and Carolyn for the imposition of a constructive trust, assuming that Nastro can show the requisite intent to hinder delay or defraud creditors;[5] and (3) obtain discovery of such related to all transactions since these transfers may show the requisite conduct of the RICO enterprise. In short, the requested time period for the documents is reasonably

---

[5] Nastro has recently learned from counsel for Arthur D'Onofrio that one of the transfers complained of, the transfer of Arthur's stock interest in Goodspeed Airport Development Company, was actually made in 1992, and Nastro will be filing supplemental requests for production relating to this period of time. Nastro believes that the transfer of this stock worth approximately $3 million was part of Arthur D'Onofrio's plan to transfer assets so as to hinder, delay and defraud creditors.

calculated to lead to the discovery of evidence admissible at trial, or is directly relevant to issues regarding patterns of transfers between Arthur and Carolyn D'Onofrio.

In addition, defendants in their motions to dismiss the complaint have asserted that the transfers completed were not fraudulent since the items transferred had no value and were, therefore, not "assets" within the definition of CUFTA. Any information in the possession, custody or control of Carolyn D'Onofrio regarding the financial aspects of the transfers is directly relevant to this issue.

B. Request No. 1-Tax returns

Carolyn D'Onofrio produced no tax returns, despite an apparent agreement by her counsel that tax returns for 1998 onward would be produced. It might be noted that tax returns for this period were produced by Arthur D'Onofrio; these were joint returns filed with Carolyn D'Onofrio. However, information regarding individual earnings of Carolyn D'Onofrio in the form of W-2 forms and/or 1099's were excluded from those returns. Clearly, Nastro is entitled to the financial information regarding Carolyn to further develop his theories of fraudulent transfers by Arthur D'Onofrio.

C. Request No. 2 and No. 3-Checking, Bank Accounts and Brokerage Accounts

No documents were produced by Carolyn D'Onofrio. Again, this request for production is directly relevant to determine which transfers took place between Arthur and Carolyn D'Onofrio, to determine financial aspects of the transfers and the value of the assets transferred.

D. Request No. 4-Life Insurance

The purpose of this request is to determine if any life insurance policies owned or paid for by Arthur D'Onofrio were owned at one time by Arthur D'Onofrio, paid for by Arthur D'Onofrio, or placed in the name of Carolyn D'Onofrio. Again, this is directly relevant to possible fraudulent transfers between Arthur and Carolyn D'Onofrio.

E. Request No. 5 and No. 6-Vehicles

This request concerns ownership and leasing of motor vehicles, boats or aircraft. Such documents would possibly indicate the transfers of vehicles between Arthur and Carolyn and/or of each other's vehicles, and possible further fraudulent transfers.

F. Request No. 7-Financial Statements

Financial statements of Carolyn D'Onofrio are relevant to the claims asserted by Nastro or designed to lead to the discovery of evidence admissible at trial. These financial statements will include lists of assets and liabilities, some of which may have been either assets transferred to Carolyn by Arthur or assumption of liabilities of Arthur by Carolyn. In addition, financial statements will show values of assets transferred.

G. Request No. 8-Real Property

This request is for documents relating to the ownership of real property. Again, such documents are clearly relevant to the claims asserted; claims at present include a claim that a transfer of property at 3 Lumbaryard Road from

Arthur to Carolyn was fraudulent. Documents relating to this transfer and any other transfers of real property are directly relevant to the claims asserted by Nastro regarding fraudulent transfers.

H. Request No. 9-Personal Property

The same reason set forth above for real property applied to transfers of personal property. The undersigned believed that he and Scott Karsten had agreed to limit disclosure regarding such transfers to items with a value of $1,000 or greater. However, no documents were produced.

I. Request No. 10 and No. 11-Loans

These requests are for documentation regarding loans, including applications for loans. These would be reflective of Carolyn's assets and financial status at the time any loans were applied for. Such documentation might include the fact that certain property claimed to be transferred to Carolyn was not claimed as being owned by Carolyn, and would further show the dates of transfers. This information is directly relevant to the issues in this case.

J. Request No. 12-Office Equipment

This request is designed to seek disclosure as to additional assets of Carolyn D'Onofrio to determine whether such assets were obtained by fraudulent transfers.

K. Request No. 13-Accounts Receivable

Similar to other requests, this request is designed to seek information regarding amounts claimed to be owed to Carolyn. For example, documents produced by Arthur show that in December of 2000, Arthur D'Onofrio claimed to

owe Carolyn D'Onofrio $20,000; documents concerning this account receivable would be relevant to any claims or fraudulent transfers.

L. Request No. 14-Evidence of Company Ownership

This request seeks documents regarding the ownership of Carolyn D'Onofrio in any companies, including, but not limited to, the list of companies made a part of Request 14. Given the claims of fraudulent transfers, including what we know to be fraudulent transfers of Connecticut companies by Arthur to the off-shore trust for the benefit of Carolyn, the disclosure of her ownership interest of her other companies might divulge further information regarding fraudulent transfers.

M. Request No. 15-Entity Tax Returns

The value of these companies disclosed in response to Request 14 is relevant to whether the transfers were, in fact, fraudulent. Therefore, production of tax returns is relevant to the issues in the case.

N. Request No. 16-Safe Deposits

Again, the relevance of this request is to determine whether any safe deposit box or secure storage areas are being used by Arthur when being paid for by Carolyn or vice-versa, and to determine the possible location of other relevant documents.

O. Request No. 17-Ownership in Real Property

This request is for documents relating to Carolyn's ownership interest in property located at 3 Lumbaryard Road, East Haddam. In the Amended Complaint, it is alleged that this property was transferred from Arthur to Carolyn

in December of 2000 and was, in fact, a fraudulent transfer. Clearly, documents relating to this transfer are relevant to the issues in the case.

P. Request No. 18-Ownership of Home

This request is for documents relating to Carolyn's ownership in property located at 1304 Saybrook Road, Haddam, the residence of the D'Onofrio's. Upon information and belief, although "owned" by Carolyn D'Onofrio, the property was purchased and all payments relating to the property have been made by Arthur D'Onofrio. These documents are relevant to the CUTPA claims, the claims for imposition of a constructive trust, and the claims relating to the RICO Enterprise.

Q. Request No. 19-Transfer of Goodspeed Airport

In the original and Amended Complaints it is alleged that Arthur D'Onofrio's transfer of his ownership interest in Goodspeed Airport Development Corp. ("GADCO"), to Carolyn was fraudulent and a CUTPA violation. The Amended Complaint also alleges that the assets are subject to the imposition of a constructive trust. The request seeks documents concerning Carolyn's ownership interest in GADCO. Clearly such documents are relevant to the issues in the case.

R. Request No. 20-Trust Documents

This request seeks documents relating to any trusts established by Carolyn D'Onofrio. Arthur D'Onofrio, Carolyn's husband, has transferred property to defraud creditors; Nastro is entitled to determine if Carolyn is also using the tactics of transfers to an off-shore trust (or any other trust) to place

assets out of the reach of creditors, including Nastro. In addition, any transfers done by Carolyn to a trust would be relevant to CUTPA and RICO claims, as well as providing discovery for any additional potential claims.

S. Request No. 21-Trust Documents

This request is for documents relating to trusts of which Carolyn was a beneficiary. Clearly, this request encompasses any documents in the possession or control of Carolyn D'Onofrio relating to the Chana Trust. No objections were filed to this request; however, no documents were produced.

T. Request No. 22-Trust Documents

This request is for documents concerning any trusts for which Carolyn served as a trustee. Again, if Carolyn served as a trustee for any trust which included assets now or formerly owned by Arthur, such trust documents would be relevant to the issues of fraudulent transfers alleged in this case.

U. Request No. 23 and No. 24-Power of Attorney

This request is for powers of attorney either in favor of or granted by Carolyn D'Onofrio. Such documents would tend to show the control of property of Arthur and Carolyn by each other and, as such, would be relevant to issues of fraudulent transfers in this case.

V. Request No. 25 and No. 26-Transfer Documents

This request is for documents relating to the transfer of any property to Carolyn by Arthur. Such requests is clearly relevant to the issues in this case. Further transfers of the property as set forth in request 26 are also relevant since

Nastro is entitled to determine if Carolyn is still the real or beneficial owner of such property.

W. Request No. 27-Tax Returns for Transferred Property

In making a claim for fraudulent transfers, the value of any asset transferred is relevant to the determination of whether such transfer was fraudulent, and tax returns for any entities transferred would show the value of the assets.

X. Request No. 28 and No. 29-Transfers to Other Family Members

Request 28 and 29 relate to transfers of any property by Arthur D'Onforio to any family member other than Carolyn. This would include documents relating to the transfers for the benefit of Arthur A., Paul and Nicole D'Onofrio, D'Onofrio's children, and Arthur D'Onofrio's sister, Barbara Spector. We know that Arthur D'Onofrio's interests in the four Connecticut companies were transferred to the Chana Trust for the benefit of his children; we also know that Arthur transferred at least one automobile to his sister Barbara Spector. Nastro is entitled to ascertain whether there were any further transfers from Arthur to any other family members.[6]

Y. Request No. 30-Tax Returns for Transferred Entities

This request is for tax returns of entities transferred to family members other than Carolyn as requested in Nos. 28 and 29. This financial information will show the value of the entities transferred and, therefore is not relevant to whether such transfers were fraudulent.

[6] Naturally, to the extent that such documents are not in the possession, custody or control of Carolyn D'Onofrio, such documents need not be produced.

Z. Request No. 31-Intellectual Property

This request concerns information relating to Carolyn's ownership in any intellectual property. Arthur D'Onofrio has at various times owned certain FAA authorizations known as supplemental type certificates (also known as "STI's") and parts manufacturing authorities (also known as "PMA's"). The STI's and PMA's have at various times been assigned to various companies. The request seeks information concerning Carolyn's ownership of any of these type of intellectual properties (and any other intellectual property) to determine whether such ownership was obtained by a fraudulent transfer from Arthur D'Onofrio.

AA. Request No. 32-Credit Card Statements

This request is for credit card statements in the name of Carolyn D'Onofrio or for which she was an authorized signer. Again, the request is designed to further determine the extent of transfers between Arthur and Carolyn through the use of credit cards.

BB. Request No. 33-Legal Retainer Agreement

This request is for retainer agreements with any attorneys. Although communications between clients and counsel may be privileged to the extent legal counsel is given the terms of such retainer and payment for legal services are not privileged: In re Grand Jury Subpoena, 781 F. 2d 238, 247 (2d Civ. 1986), cert. denied, 475 U.S. 1108 (1989) ("We consistently have held that, absent special circumstances, client identity and fee information are not privileged."); see Vignelli v. United States, 992 F 2d 449 (2d Civ. 1998) This information is also relevant, since Nastro is entitled to determine if indeed,

Carolyn D'Onofrio retained her present counsel, or whether such retention may have been provided solely for or on behalf of Arthur D'Onofrio. In addition, no privilege log as required by D. Conn. L. Civ R. 9 (d)(1) was provided.

CC. Request No. 34-Judgments

This request is for any judgments issued in favor of Carolyn D'Onofrio. Such documents may disclose a situation where a cause of action sued upon belonged to Arthur D'Onofrio, but where judgments issued in favor of Carolyn.

## III. SANCTIONS

Nastro believes that the Objections and lack of production by Carolyn D'Onofrio are subject to sanctions under Rule 37(a)(4). More particularly, in her Objections to Nastro's Request for Production (Exhibit B) Carolyn D'Onofrio objects to any production relating to or concerning:

> A. any assets or property other than that transferred to the Chana Trust on or about June 21, 2001;
> B. any transaction between this defendant and any other individual occurring prior to or subsequent to June 21, 2001; and
> C. any actions transactions conduct, records affairs or other matters arising or occurring prior to May 17, 1999.

See Exhibit B, paragraph 8 at p. 3.

By this objection, Carolyn D'Onofrio indicates that an unfounded belief that the Complaint encompasses only a claim for the fraudulent transfer of the four companies to the off-shore trust on June 21, 2001. However, since the inception of this action, the claim for CUTPA violations has been pending against Carolyn D'Onofrio. Indeed, her motion to dismiss this claim was denied. The bad faith in making this objection is evident. In addition, at the time of this Request for Production, claims were pending against Carolyn D'Onforio under Conn. Gen.

Stat. §52-552i seeking a monetary judgment as a result of the transfer of the companies (Second Count), seeking the imposition of a constructive trust as a result of Carolyn D'Onofrio's participation in Arthur's fraudulent transfers with the intent to hinder delay or defraud creditors (Fourth Count) seeking damage against Carolyn D'Onofrio for participation in a RICO Enterprise. The scope of the Complaint is far beyond the transfer of D'Onofrio's interest in these four companies to the offshore trust. The referral to produce any documents is clearly in bad faith and should be sanctioned.

## IV. CONCLUSION

Rarely is the Court addressed with the situation where a defendant has refused to produce even one single document in response to request for production. Clearly, Nastro has raised significant issues in this case regarding fraudulent transfers between Arthur D'Onofrio and his wife Carolyn. Nastro is entitled to seek information from Carolyn regarding any transfers between Arthur and Carolyn D'Onofrio since such transfers may be relevant to the issues in this case.

For the foregoing reasons, it is respectfully requested that Carolyn D'Onofrio be ordered to produce all documents requested within 20 days of the order of the Court and that the Court order such sanctions as appropriate under the circumstances.

THE PLAINTIFF
VINCENT NASTRO

by: ______________________
Edwin L. Doernberger
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847
Fed. Bar No. ct05199