FILED

2004 FEB 17  A 1: 09

DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VINCENT NASTRO,                    :   NO.: 3:02CV00857(DJS)
    Plaintiff,

vs.

ARTHUR M. D'ONOFRIO, ET AL.,       :   FEBRUARY 17, 2004
    Defendants.

### OBJECTION OF CAROLYN D'ONOFRIO TO
### PLAINTIFF'S MOTION TO COMPEL DATED DECEMBER 18, 2003

**PRELIMINARY STATEMENT**

This case ("the Connecticut Federal case") has its genesis in California litigation between plaintiff Vincent Nastro and defendant Arthur D'Onofrio over ownership and management of a California propeller and aircraft parts business in which the two were partners for a number of years (the "California Action"). Since an initial judgment in favor of plaintiff Nastro in June, 2001, which was appealed and in large measure reversed, plaintiff has engaged in a concerted, deliberate and transparent effort to abuse, vex and oppress defendant D'Onofrio into settlement.

Nastro and his counsel have done so by the only means available to them, since there has never been and still is not any final judgment in the California Action upon which execution

against Arthur D'Onofrio's assets could be based. They have, instead, filed plainly redundant litigation in both Connecticut state and federal courts, and they have sought to bury defendant Arthur D'Onofrio, his businesses, his employees, his counsel and perhaps even the Courts, both in Connecticut and in California, in a blizzard of discovery procedures which are grossly burdensome, manifestly overbroad, and are clearly calculated primarily to oppress, not to discover relevant evidence.

As did the California court overseeing that Action in its February 5, 2004 ruling, this Court is respectfully urged to penetrate the dissemblance and restore a measure of order and reason to the discovery process in this case, and to reject plaintiff's efforts to bludgeon a favorable outcome to this litigation.

## STATUS OF THE CALIFORNIA ACTION

As this Court is aware, there was initially (June 2001) entered in the California Action, against defendant Arthur D'Onofrio only, a judgment in favor of plaintiff Nastro for more than $500,000 in compensatory damages, plus $1.6 million in punitive damages. On appeal, the punitive damages portion of the

- 2 -

award was vacated and the matter remanded to the trial court for a new trial on the issue of punitive damages. That new trial is now scheduled for March 29, 2004. At the present time, no final judgment has entered upon which plaintiff has apparently felt an execution could be premised.

In the course of prosecuting the current phase of the California Action, plaintiff's California and Connecticut attorneys, acting fully in concert, have sought production of massive amounts of documents by both Arthur and Carolyn D'Onofrio. Not surprisingly, the document production requests in California are not merely "similar", as plaintiff disingenuously represents in his February 10, 2004 memorandum in opposition to defendant's motion for extension ("Plaintiff's Mem. in Opp.") at p. 1; they are essentially identical to the document production requests propounded to Carolyn D'Onofrio in the Connecticut Federal litigation. See Exhibit A to Plaintiff's Motion to Compel dated December 18, 2003, Reqs. No. 1-34.

The retrial in the California Action is limited to the determination of any appropriate punitive damages against Arthur D'Onofrio (only), in light of his financial condition "at the

- 3 -

time of trial". Nevertheless, plaintiff's counsel in that case demanded production from her of the same documents demanded here from Carolyn D'Onofrio, also for the years 1994 to the present.

Following efforts by plaintiff's California and Connecticut counsel[1] to advance the very same arguments presented here, in support of their motion to compel production in the California Action, the California court pierced the dissemblance and obfuscation with which it had been confronted. Splitting the difference as to the appropriate time frame for production, commencing May 8, 1996 instead of January 1, 1994 as requested by plaintiff, the Court (Honorable Peter Saiers, J.) ruled that the subjects of the California motion to compel (Arthur and Carolyn) had <u>already</u> "substantially complied with" the plaintiff's document production requests, and had <u>already</u> "delivered" any additional documents to which plaintiff was entitled for purposes

---

[1] Plaintiff's Connecticut counsel, Edwin L. Doernberger, Esquire, was admitted in California *pro hac vice* for purposes of deposing Arthur and Carolyn D'Onofrio and was commissioned to do so on or about December 4, 2003.

- 4 -

of discovery.  See, copy of Order appended to Plaintiff's Mem. In Opp.[2]

Thus, in the underlying action, defendants have now been determined to have already provided to plaintiff's counsel whatever documents the court there considered appropriate for production.  That court obviously rejected outright plaintiff's repeated protestations, that defendant D'Onofrio and his wife were somehow refusing to cooperate with discovery.  In light of that ruling, those same protestations by the same attorney, ring equally hollow in this action.

**STATUS OF DISCOVERY IN THE CONNECTICUT ACTIONS**

As the court is aware, plaintiff Nastro commenced three (3) civil actions in the Connecticut state courts prior to instituting this federal action:  two against defendant Arthur D'Onofrio, and one against Arthur and Carolyn.

In response to document production requests relating to those cases, defendant Arthur D'Onofrio has produced literally

---

[2] An amazing willingness to distort the record is evidenced by footnote 2 in plaintiff's memorandum, regarding service by the clerk on February 6, 2004.  By clerical mistake, as plaintiff's counsel is well aware, the order was served on an attorney named Douglas Johnson, not defendant's counsel Douglas Smith, who never got the order until February 10.

- 5 -

boxes of documents, for years going back to at least 1998. He was subjected to a thorough, wide-ranging deposition — by the same attorney who now seeks the instant discovery - regarding his financial affairs through the date of that deposition in 2002. Significantly, so far as counsel in this action are aware, there has never been a complaint in that state court action that Arthur's discovery compliance was in any way lacking. In this federal action, plaintiff has engaged in discovery efforts which can only be considered altogether duplicative of that conducted as to defendant Arthur D'Onofrio in the state court action. Again, D'Onofrio has produced documents going back to 1998. Again, significantly, there is no complaint before this court that Arthur D'Onofrio's compliance has been deficient.

Nor has the discovery onslaught by plaintiff's counsel been limited to Arthur D'Onofrio. Plaintiff has also requested and received voluminous documents from business entities in which Arthur now or formerly had an interest: U.S. Propeller Service of Connecticut, Inc.; Div-ACQ., Inc.; and ADMW, LLC. (As the Court is aware, it is the transfer of these assets to a so-called offshore trust which is at the heart of plaintiff's claims in

- 6 -

this case of a fraudulent transfer. See Plaintiff's Motion to Compel, p. 1.) Once again, production of documents as to these defendant entities has gone back to 1998. Once again, there is no complaint to this court that the document production by these defendants has been less than satisfactory.

Indeed, on November 11, 2003, plaintiff issued yet another (second) set of document production requests relating to these same entities. This second set of requests seeks additional information from the business entities – customer lists, for example – which appear calculated primarily to benefit plaintiff Nastro as a once and future competitor of defendant D'Onofrio, rather than as a plaintiff in this action. Even as to most of those requests, more significantly, plaintiff has "only" requested documents going back to 1996 – in sharp contrast to the requests to Carolyn going back to January 1, 1994.

Virtually each and every document produced by these five other defendants is likewise responsive to the document production requests directed to Carolyn D'Onofrio, about whose purported "non-compliance" plaintiff now complains with such vigor. Indeed, plaintiff's representations to the Court in his

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE., SUITE 221• WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

February 10, 2004 Memorandum in opposition regarding Carolyn's "failure to produce even a single document" would be almost laughable, did it not constitute such a flagrant distortion of the actual state of affairs.

Thus, for example, as the result of this prior production plaintiff is already in possession of: joint tax returns for Arthur and Carolyn, as well as all other documents regarding properties, assets, interests and transactions involving them jointly; all documents sought by plaintiff regarding each and every asset now held by the Chana Trust; all documents relating to any material transfers by Arthur D'Onofrio to or for the benefit of Carolyn D'Onofrio (or any other family member); and all documents relating to the valuation of any entity so transferred. Since plaintiff has raised no objection to the court regarding the sufficiency of these other defendants' production, it may be assumed that there is no issue as to that. It may also be assumed that plaintiff's real effort here is to simply obtain production of the exact same documents, yet again, for a period of time already produced, plus an even more remote time period.

- 8 -

Small wonder the California court determined that Arthur and Carolyn D'Onofrio had already "substantially complied with" these self-same document production requests.

## OBJECTIONS OF CAROLYN D'ONOFRIO

### A. Time Period.

The time period for documents requested of this defendant – as in the California Action – currently dates back to January 1, 1994. (Plaintiff's counsel has threatened to increase this time period with requests dating back to 1992, but has not yet done so. Plaintiff's Motion, p. 4 n. 5.) Defendants originally objected to a time period commencing earlier than May 17, 1999, based upon the three-year statute of limitations for intentional torts set forth in C.G.S. § 52-577. As modified, defendants' objections on this issue now relate to production of documents pre-dating the onset of the four year CUFTA statute of limitations, May 17, 1998. This is the longest statutory limitations period applicable to any of plaintiff's asserted causes of action, under state law.

Plaintiff claims, conspicuously without authority, that the existence of the CUTPA, constructive trust and RICO claims in

- 9 -

this case entitles him to the longer time frame of document production. He also appears to claim, again without authority, that he can seek to establish these causes of action as they may relate to "creditors" other than himself. E.g., Plaintiff's Mem., p. 4 n. 5. Plaintiff's recited basis for this effort is transparent speculation: "Nastro believes". Id.

A temporal relationship to the specific claims at issue in the case at hand is one of the basic parameters of legal and logical relevance. In this instance, not even the underlying California litigation was commenced before May 1996. No doubt that was a factor in the California court's determination of the relevant time periods there.

Plaintiff has not made even an effort beyond bare assertion to demonstrate how his causes of action might entitle him to undo, and thus recover from, transactions now ten years in the past (1994). He has made no effort to argue that, even as late as 1998, defendants Arthur and Carolyn D'Onofrio had reason to anticipate a judgment against Arthur in 2001, and therefore engage in some transaction calculated to hinder Nastro in his efforts to collect on that future judgment. Perhaps even

- 10 -

plaintiff recognizes the seemingly patent foolishness of such an argument.

In any event, this Court should be guided as to the even potentially relevant time period by only the causes of action pending before it. Plaintiff cannot, as a matter of law, recover against any defendant in this case for conduct extending more than four years prior to the filing of this lawsuit. May 17, 1998 therefore should constitute the beginning of the period for which documents must be produced.

### B.    Substantial Compliance.

This Court now has the benefit of a ruling from the Superior Court of a sister state, regarding to directly related and equivalent discovery proceedings before it. As noted above, that court has now ruled that Arthur and Carolyn D'Onofrio have "substantially complied" with document production requests essentially identical to those at issue here. Subject to its determinations on the specific objections interposed by defendant Carolyn and any additional production ordered as a result thereof, this Court should likewise be assured that plaintiff has

received from all five (5) of the other defendants substantial compliance with his requests directed to this defendant.

Notably, as to no other defendants has plaintiff ever requested any formal, talismanic manifestation of discovery compliance.  If that is now the complaint, defendant Carolyn D'Onofrio can and will certify to the plaintiff and the Court that the documents already produced to the plaintiff also serve to satisfy plaintiff's requests for production as to Carolyn, subject to the objections she herself interposed through counsel.

At the center of this defendant's objections to plaintiff's document requests is objection No. 8a-c.[3]  See Exhibit B to Plaintiff's Motion, p. 3.  In that objection, this defendant simply made clear her position that, despite plaintiff's speculative net-casting exercise, this lawsuit should not properly be considered an occasion for plaintiff and his counsel to peer into every aspect, nook and crevice of her personal life as well as her business affairs.

To the extent there is any overlap whatsoever between the affairs of Arthur D'Onofrio, his business entities and Carolyn

---

[3] As noted by plaintiff, by agreement of counsel Objection 8c has been modified to May 17, 1998.

- 12 -

D'Onofrio during an even arguably relevant time period, defendant reiterates that the requested documents have been produced - both in Connecticut and in California.  As to none of the other five defendant's compliance has plaintiff raised any issue with this Court.

As to this defendant alone, however, plaintiff seeks to expand the scope of the litigation beyond the obvious parameters of its genesis: the claims in California against Arthur D'Onofrio only.  Beyond doubt, plaintiff is entitled in pursuit of those claims and any ultimate judgment to follow, identify and locate any asset or resource whose origin lies with that debtor, Arthur D'Onofrio.  He is not, however, thereby entitled to act as some sort of private attorney general, with unlimited license to inquire into affairs or assets of this defendant which do not fairly derive or devolve from that debtor, and he has produced no authority to show that he is so entitled.

Defendants have long since conceded the propriety of discovery relating to assets now or formerly in the possession or control of Arthur D'Onofrio, and both he and Carolyn have "substantially complied" with that discovery.

However, plaintiff now seeks unlimited and manifestly oppressive access to "all" records and affairs of Carolyn D'Onofrio, ostensibly "to further develop his theories of fraudulent transfers by Arthur D'Onofrio". Plaintiff's Motion, p. 5. Thus, for example, in Request No. 12 plaintiff seeks "all documents indicating" office equipment, inventory, etc. owned by Carolyn. In plaintiff's actual requests and in his motion, however, he seeks to determine "whether such assets were obtained by fraudulent transfers." This is true of No. 14, for example, which seeks information regarding wholly unrelated entities in the hope that it "might divulge further information regarding fraudulent transfers." Id., p. 8.

Plaintiff thus attempts to finesse the calculated blurring of the focus of his actual document requests. He has moved beyond documents related to "fraudulent transfers by Arthur D'Onofrio", and is now seeking documents relating to alleged "fraudulent transfers" of any nature or origin. See, e.g., Nos. 8, 13. It is exactly this aspect of plaintiff's purported discovery which renders it onerous, oppressive, and calculated to annoy, inconvenience and coerce, rather than to obtain legitimate

- 14 -

information. Under the guise of the California action - the only lawful basis for plaintiff to be conducting discovery at all as to Carolyn D'Onofrio - plaintiff has sought to explore every aspect of her affairs. It is on this basis, among the others set forth as to specific requests, that defendant Carolyn D'Onofrio has objected to these requests.

### SPECIFIC OBJECTIONS

As to the particular objections interposed by this defendant to specific production requests, in addition to those on broader grounds discussed above, defendant stands by said objections, as modified by agreement of counsel. Exhibit B to Plaintiff's Motion

In addition to the general objections discussed above, defendant's specific objections to plaintiff's document requests are addressed to the actual requests <u>as framed</u>, not to the diluted, seemingly less offensive explications offered in plaintiff's memorandum. Thus, for example, defendant objected to production of "all records" concerning bank and brokerage accounts - including all statements for the years in question. Schedule A, Nos. 2,3.

- 15 -

For this reason, defendant urges the Court to make specific reference to the requests themselves. In that light, the departure from legitimate discovery inquiries into the realm of oppression and coercion will become apparent.

## CONCLUSION

WHEREFORE, defendant Carolyn D'Onofrio respectfully requests plaintiff's motion to compel be denied.

DEFENDANT, CAROLYN D'ONOFRIO

BY *[signature]*
Scott M. Karsten
Federal Bar Number: ct05277
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119
Her Attorney
Phone No.: (860)233-8251

- 16 -

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 17th day of February, 2004, to the following counsel of record:

Edwin L. Doernberger, Esquire
Bradford J. Sullivan, Esquire
Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517

Thomas O'Dea, Esquire
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880

Scott M. Karsten

Chief Clerk
United States District Court
450 Main Street
Hartford, CT 06103