UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT NASTRO, | 2004 APR 19 A 11: 23 |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 3:02CV00857(DJS) |
| ARTHUR M. D'ONOFRIO, et. al. | |
| Defendants. | June 6, 2003 |

## AMENDED COMPLAINT

**FIRST COUNT**

PARTIES AND JURISDICTION

1. Plaintiff Vincent Nastro is a citizen and resident of the State of California.

2. Defendant Arthur M. D'Onofrio is a citizen and resident of the State of Connecticut.

3. Defendant Carolyn D'Onofrio is a citizen and resident of the State of Connecticut and is the wife of Arthur M. D'Onofrio.

4. Upon information and belief, defendant Arthur A. D'Onofrio is a citizen and resident of the State of Connecticut and is the son of Arthur M. D'Onofrio and Carolyn D'Onofrio. Arthur A. D'Onofrio is named as a defendant herein since he has or may claim an interest as a beneficiary of The Chana Trust as further described below.

5. Defendant Paul D'Onofrio is a citizen and resident of the State of Connecticut and is the son of Arthur M. D'Onofrio and Carolyn D'Onofrio. Paul D'Onofrio is named as a defendant herein since he has or may claim an interest as a beneficiary of The Chana Trust as further described below.

6. Defendant Nicole D'Onofrio is a citizen and resident of the State of Connecticut and is the daughter of Arthur M. D'Onofrio and Carolyn D'Onofrio. Nicole D'Onofrio is named as a defendant herein since she has or may claim an interest as a beneficiary of The Chana Trust as further described below.

7. Defendant New England Propeller Service, Inc. is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

8. Defendant U.S. Propeller Service of CT, Inc. is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

9. Defendant DIV-ACQ, INC. is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

10. Defendant ADMW, LLC is a limited liability company organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

11. Defendant The Chana Trust is a trust entity created by Arthur M. D'Onofrio as Settlor and Continental Trust Company Limited as Trustee located in the Island of Jersey, Channel Islands, and is, therefore, a citizen of a foreign country. The Chana Trust is named as a defendant herein since it has or may claim an interest in the property conveyed into The Chana Trust.

12. Defendant The Continental Trust Company Limited is the original Trustee of The Chana Trust and is a citizen of the Island of Jersey, Channel Islands. The Continental Trust Company Limited is named as a defendant herein since it has or may claim an interest in the property conveyed into The Chana Trust.

13. The amount in controversy is greater than $75,000.00 exclusive of interest and costs.

14. This court has jurisdiction of this matter pursuant to 28 USC §1332 as an action between citizens of different states in which the amount in controversy exceeds $75,000.00.

COMMON FACTUAL ALLEGATIONS

15. In 1996, Vincent Nastro filed an action against, among others, Arthur M. D'Onofrio (hereinafter Arthur M. D'Onofrio will be referred to as "D'Onofrio") in the Superior Court of California in and for the county of San Joaquin, case no. 293975 (the "California Action").

16. The California Action proceeded to trial against D'Onofrio on December 12th through 21st 2000 and January 17th through 25th 2001, and thereafter both plaintiff and defendant submitted briefs to the California court.

17. On June 7, 2001, Vincent Nastro obtained a judgment in the California Action against D'Onofrio in the amount of $514,698.75 in compensatory damages together with prejudgment interest on that amount from and after December 31, 1997 plus exemplary damages in the amount of $1,600,000.00 (hereinafter the "Judgment").

18. Thereafter, D'Onofrio filed an appeal of the Judgment. However, pursuant to §917.1(a) of the California Code of Civil Procedure, no stay of the Judgment was in effect since D'Onofrio did not file a bond for the Stay of Proceedings.

19. On August 10, 2001, the Judgment was registered in Connecticut pursuant to Conn. Gen. Stat. §52-604, et. seq. and became a judgment of the State of Connecticut

in Docket No. CV-01-0095961-S, Superior Court, Judicial District of Middlesex at Middletown.

20. On or about April 1, 2003, the California Appellate Court, Third Appellate District (No. C039020), affirmed the award of compensatory damages but remanded the action to the California trial court for a new trial on the amount of punitive damages to be awarded based on evidence of D'Onofrio's financial condition at the time of retrial.

21. Nastro was and is a "creditor" of D'Onofrio within the meaning of the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §52-552a, et. seq.

22. On or about June 21, 2001, following the entry of the Judgment, D'Onofrio as Settlor created The Chana Trust an "offshore trust", so called, located on the Island of Jersey in the Channel Islands. The original trustee of The Chana Trust is The Continental Trust Company Limited. The beneficiaries of The Chana Trust are D'Onofrio's wife and children, Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, and Nicole D'Onofrio.

23. On and before June 21, 2001, D'Onofrio was the owner of 100% of the shares of New England Propeller Service, Inc., U.S. Propeller of CT, Inc., and DIV'ACQ, INC.

24. On or before June 21, 2001, D'Onofrio was the owner of a fifty percent membership interest in ADMW, LLC.

25. On or about June 21, 2001, D'Onofrio transferred all of his right, title and interest in and to his shares of the stock of New England Propeller Service, Inc., U.S. Propeller of CT, Inc., and DIV'ACQ, INC., and his membership interest in ADMW, LLC to The Continental Trust Company Limited as trustees of The Chana Trust.

26. D'Onofrio received no money, consideration or other reasonably equivalent value for the aforesaid transfers of stock and membership interests.

27. Upon the making of the aforesaid transfers, D'Onofrio was insolvent.

28. The aforesaid transfers were fraudulent as to Nastro pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §52-552a, et seq.

29. Plaintiff is entitled to and seeks a preliminary and permanent injunction to be issued by this Court as follows:

    a. To require New England Propeller Service, Inc. to list D'Onofrio as the registered owner of the shares of the corporation and to deliver to a United States Marshal or other official designated by this Court such evidence of ownership of shares as will permit said official to sell such shares in satisfaction of the judgment in favor of Nastro.

    b. To require U.S. Propeller Service of CT, Inc. to list D'Onofrio as the registered owner of the shares of the corporation and to deliver to a United States Marshal or other official designated by this Court such evidence of ownership of shares as will permit said official to sell such shares in satisfaction of the judgment in favor of Nastro.

    c. To require DIV-ACQ, Inc. to list D'Onofrio as the registered owner of the shares of the corporation and to deliver to a United States Marshal or other official designated by this Court such evidence of ownership of shares as will permit said official to sell such shares in satisfaction of the judgment in favor of Nastro.

    d. To require ADMW, LLC to list D'Onofrio as the registered owner of fifty percent of the membership interest in the limited liability company and to deliver to a

United States Marshal or other official designated by this Court such evidence of ownership of the membership interest as will permit said official to sell such shares in satisfaction of the judgment in favor of Nastro.

30. In addition, pending trial of this action, plaintiff is entitled to and seeks a preliminary injunction prohibiting New England Propeller Service, Inc., U.S. Propeller Service of CT., Inc., DIV-ACQ, Inc. and ADMW, Inc. further transferring the corporate stock and membership interest and from paying any funds from all of the entities to or on behalf of D'Onofrio, Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, Nicole D'Onofrio, The Chana Trust or The Continental Trust Company Limited.

31. Nastro has no adequate remedy at law.

**SECOND COUNT**

1 - 28. The allegations contained in paragraphs 1 through 28 of the First Count are incorporated herein by reference and are thereby re-alleged.

29. The transfers set forth in paragraph 25 were for the benefit of defendants Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, and Nicole D'Onofrio.

30. Pursuant to Conn. Gen Stat. §52-552i(b), defendants Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, and Nicole D'Onofrio are liable to Nastro for the value of the assets transferred.

**THIRD COUNT**

1 - 28. The allegations contained in paragraphs 1 through 28 of the First Count are incorporated herein by reference and are thereby re-alleged.

29. The Judgment obtained by Nastro against D'Onofrio arose out of their ownership of an entity known as U.S. Propeller Service of California, Inc., an entity engaged in the

trade and business of propeller repair, service and installation and other services related to the aircraft industry.

30. D'Onofrio has been engaged in the aircraft industry for many years and at various times has used Carolyn D'Onofrio, his wife, as an alter ego in the conduct of his business.

31. In addition to the transfer above, Carolyn D'Onofrio has participated with D'Onofrio in the ownership and transfers of property in order to hinder, delay and defraud creditors of D'Onofrio, including Nastro. Such transfers include, but are not limited to the following:

    a. An entity known as Goodspeed Airport Development Corp. ("GADCO") was the owner of the Goodspeed Airport in East Haddam, Connecticut, which entity was placed in the name of Carolyn D'Onofrio although its operations were controlled by D'Onofrio. GADCO sold the airport in approximately August, 1999, and proceeds from the sale were not turned over to D'Onofrio.

    b. Prior to December 12, 2000, D'Onofrio was the owner of a parcel of land known as 3 Lumberyard Road, East Haddam, Connecticut, against which Nastro had filed a judgment lien. On December 12, 2000, D'Onofrio transferred the property to Carolyn D'Onofrio to hinder, delay or defraud Nastro as a creditor of D'Onofrio.

32. At all times relevant hereto, Carolyn D'Onofrio has knowingly participated with D'Onofrio in these fraudulent transactions.

33. The aforesaid acts are an unfair trade practice within the meaning of Conn. Gen Stat. §42-110a, et. seq. on the part of Carolyn D'Onofrio and D'Onofrio.

34. As a result of the aforesaid acts, Nastro has been injured in his trade and/or business.

**FOURTH COUNT**

1 - 32. The allegations contained in paragraphs 1 through 32 of the Third Count are incorporated herein by reference and are thereby re-alleged.

33.. The transfers by D'Onofrio as set forth above were made without receiving reasonably equivalent value and were made with the intent to hinder, delay and/or defraud the creditors of D'Onofrio, including Nastro.

34. Nastro is entitled to the imposition of constructive trust upon the assets fraudulently transferred by D'Onofrio and any proceeds from such assets.

**FIFTH COUNT**

1–28. The allegations contained in paragraphs 1 through 28 of the First Count are incorporated herein by reference and are thereby re-alleged.

29. Defendant Kleban & Samor, P.C. ("Kleban & Samor") is a professional corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

30. Defendant Elliot I. Miller is a citizen and resident of the State of Connecticut and is a member of the law firm of Kleban & Samor.

31. Defendants Kleban & Samor and Elliot I. Miller participated and assisted D'Onofrio in the establishment of The Chana Trust and in the aforesaid fraudulent transfers.

32. Defendants Kleban & Samor and Elliot I. Miller participated and assisted D'Onofrio in causing or attempting to cause the assets of D'Onofrio to be placed beyond the reach of D'Onofrio's creditors, including Nastro.

33. Defendants D'Onofrio, Carolyn D'Onofrio, New England Propeller Service, Inc. U.S. Propeller Service of Connecticut, Inc., DIV-ACQ, Inc. ADMW, LLC, Kleban & Samor and Elliot I. Miller (hereinafter "Defendants" unless specifically referenced by name) are in violation of 18 U.S.C. § 1962 (c).

34. Defendants were and continue to be associated with an enterprise.

35. The enterprise's activities affect interstate or foreign commerce.

36. The Defendants conducted or participated in the affairs of the enterprise through a pattern of racketeering activity.

37. The Defendants assisted or participated in committing mail and wire fraud in fraudulently transferring Arthur M. D'Onofrio's stocks in Connecticut Corporations and his membership interest in a limited liability company to the Chana Trust.

38. D'Onofrio devised a scheme to defraud Nastro by creating an offshore trust and transferring his stocks and membership interest to the trust, depriving Nastro of a claim to those assets for satisfaction of the judgment obtained by Nastro against D'Onofrio.

39. To perfect a scheme to defraud Nastro of his right to collect on his judgment, the Defendants corresponded via U.S. mail, facsimile, telephone and e-mail.

40. Continental Trust Company Limited ("Continental") and attorneys of Kleban & Samor exchanged various communications regarding the establishment of the trust, including, but not limited to the following:

  a. On or before May 16, 2001, Kleban & Samor contacted Continental via telephone in connection with the creation of the trust for D'Onofrio.

  b. A fax dated May 14, 2001, was sent to the Kleban & Samor from Continental making specific inquiries about language for the trust instrument.

  c.. A fax dated June 22, 2001, sent to Continental from the Kleban & Samor contained a SS-4 form, the application for employer identification number for the trust for IRS purposes.

  d. Continental sent a letter dated June 26, 2001, to Elliot Miller representing that D'Onofrio executed the Chana Trust on June 21, 2001.

  e. Kleban & Samor sent a letter dated July 2, 2001, to the IRS indicating the creation of a foreign trust on behalf of D'Onofrio.

  f. A letter dated July 11, 2001, was sent to Continental from the Kleban & Samor containing certificates and assignments of D'Onofrio's stock and membership interest to the Trustee, Continental.

41. D'Onofrio had knowledge that the use of the mails and facsimile would follow in the ordinary course of business or that the use of the mails and facsimile reasonably could have been foreseen even though not actually intended in creating the Chana Trust.

42. The communications exchanged through the U.S. mail and via facsimile by and between D'Onofrio, Continental and Kleban & Samor were in furtherance of D'Onofrio's scheme to defraud Nastro by depriving Nastro of his right to claim a right to the transferred assets and constitute a pattern of racketeering activity.

43. There is a continued scheme to defraud Nastro as the Trust continues to remain in place.

44. The Defendants are involved with continued criminal activity in order to keep the assets out of the reach of Nastro.

45. After the creation of the trust, acts of mail and wire fraud continued, including, but not limited to, the following:

   a. Continental sent a letter dated April 10, 2002, to the Kleban & Samor seeking information for inclusion on the annual information return of Foreign Trust with a U.S. owner form 3520-A for the IRS.

   b. Kleban & Samor sent a fax and letter each dated April 11, 2002, to Continental containing Form 1041, U.S. Income Tax return for Estate and Trusts seeking Continental's signature for completion of the form for the IRS.

46. Such acts will continue throughout the life of the trust, thereby, amounting to the likelihood of continued criminal activity.

47. There is injury to Nastro's property in that he has a property right in the assets that were conveyed to the Chana Trust.

48. Nastro's injury was caused by the Defendants' violation of 18 U.S.C. §1962, because the D'Onofrio's conveyance of the stocks and membership interest to the trust deprives Nastro of his right to assert a claim to the assets in satisfaction of his judgment against D'Onofrio.

49. Nastro's injury was caused by the Defendants' violation of 18 U.S.C. § 1962, because the Defendants' conveyance of the stocks and membership interest to the trust

deprives Nastro of his right to assert a claim to the assets in satisfaction of his judgment against D'Onofrio.

**WHEREFORE,** the plaintiff Vincent Nastro claims as follows:

<u>As to the First Count:</u>

1.   For a determination by the Court that the transfers by Arthur M. D'Onofrio into The Chana Trust were fraudulent as to Vincent Nastro;

2.   For a preliminary injunction, pending trial of this action, prohibiting New England Propeller Service, Inc., U.S. Propeller Service of CT., Inc., DIV-ACQ, Inc. and ADMW, Inc. from paying any funds from such entity to or on behalf of D'Onofrio, Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, Nicole D'Onofrio, The Chana Trust or The Continental Trust Company Limited;

3.   For a permanent injunction as follows:.

   a.   To require New England Propeller Service, Inc. to list Arthur M. D'Onofrio as the registered owner of the shares of the corporation and to deliver to a United States Marshal or other official designated by this Court such evidence of ownership of shares as will permit said official to sell such shares in satisfaction of the judgment in favor of Vincent Nastro;

   b.   To require U.S. Propeller Service of CT, Inc. to list Arthur M. D'Onofrio as the registered owner of the shares of the corporation and to deliver to a United States Marshal or other official designated by this Court such evidence of ownership of shares as will permit said official to sell such shares in satisfaction of the judgment in favor of Vincent Nastro;

    c.    To require DIV-ACQ, Inc. to list Arthur M. D'Onofrio as the registered owner of the shares of the corporation and to deliver to a United States Marshal or other official designated by this Court such evidence of ownership of shares as will permit said official to sell such shares in satisfaction of the judgment in favor of Vincent Nastro;

    d.    To require ADMW, LLC to list Arthur M. D'Onofrio as the registered owner of fifty percent of the membership interest in the limited liability company and to deliver to a United States Marshal or other official designated by this Court such evidence of ownership of the membership interest as will permit said official to sell such shares in satisfaction of the judgment in favor of Vincent Nastro, or in the alternative, pursuant to Conn. Gen. Stat. §34-171, to charge the interest of Arthur M. D'Onofrio in ADMW, LLC with payment of the judgment in favor of Vincent Nastro and to foreclose said interest.;

<u>As to the Second Count:</u>

4.    For judgment against defendants Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, and Nicole D'Onofrio in the amount of the value of the assets transferred to The Chana Trust by Arthur M. D'Onofrio

<u>As to the Third Count:</u>

5.    For actual damages, attorney's fees and punitive damages against defendants Arthur M. D'Onofrio and Carolyn D'Onofrio;

<u>As to the Fourth Count</u>

6.    For the imposition of a constructive trust upon assets fraudulently transferred by D'Onofrio or the proceeds of such assets;

<u>As to the Fifth Count:</u>

7.    For actual damages, treble damages and attorney's fees against the defendants.

## As to the All Counts:

8. For such other and further relief as may be equitable.

THE PLAINTIFF
VINCENT NASTRO

by: _____
Edwin L. Doernberger
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847
e-mail: eld@sdvlaw.com
e-mail: bjs@sdvlaw.com
Fed. Bar No. ct05199
