UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VINCENT NASTRO,

    Plaintiff,

v.

ARTHUR M. D'ONOFRIO, et. al.

    Defendants.

FILED
2004 APR 19 A 11: 22
U.S. DISTRICT COURT

CIVIL ACTION NO.

3:02CV00857(DJS)

June 6, 2003

## RICO CASE STATEMENT

The Plaintiff, Vincent Nastro ("Nastro"), submits this Racketeer Influence Corrupt Organizations Act ("RICO") Case Statement in conjunction with the proposed Amended Complaint containing a cause of action pursuant to 18 U.S.C. §§ 1961-1968.

1. *The alleged unlawful conduct that is claimed to be in violation of 18 U.S.C. §§ 1962 (a), (b), (c) and/or (d).*

The unlawful conduct claimed of in violation of 18 U.S.C. § 1962 (c) is that the Defendants (see #2 below for identities of each defendant) were associated with an enterprise, in which such enterprise's activities affected interstate or foreign commerce. The Defendants conducted or participated in the affairs of the enterprise through a pattern of racketeering activity. Specifically, the Defendants assisted or participated in committing mail and wire fraud in fraudulently transferring Arthur M. D'Onofrio's stocks in Connecticut Corporations and his membership interest in a limited liability company to an Offshore Trust, so called, for the benefit of his wife, Carolyn D'Onofrio and his children, Paul, Nicole and

Arthur A. D'Onofrio in a continuing scheme to defraud Nastro, a known creditor of Arthur M. D'Onofrio ("D'Onofrio.")

The Defendants violated 18 U.S.C. § 1962 (d) in that they conspired to violate 18 U.S.C. § 1962 (c) for the purpose of depriving Nastro of his property right in the fraudulently transferred stocks and membership interest.

2.  *The identity of each defendant and the alleged misconduct and basis of liability of each defendant.*

D'Onofrio fraudulently transferred his stocks in Connecticut Corporations and membership interest in a Connecticut Limited Liability Company to an offshore trust. D'Onofrio by association with an enterprise conducted and participated in the affairs of the enterprise through mail and wire fraud.

Defendants Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, Nicole D'Onofrio, New England Propeller Services, Inc., U.S. Propeller Services of CT, Inc., DIV-ACQ, Inc, ADMW, LLC, The Chana Trust, The Continental Trust Company Limited ("Continental"), Kleban and Samor, P.C. and Elliot I. Miller (hereinafter Kleban & Samore and Elliot I. Miller will be referred to as the "Law Firm" unless specifically named), knowingly participated and assisted in the fraudulent transfer of D'Onofrio's stocks and membership interest in the Connecticut Companies and, thereby, assisted the enterprise in the acts of mail and wire fraud.

3.  *The identity of the alleged wrongdoers, other than the defendants listed in response to paragraph 2, and the alleged misconduct of each wrongdoer.*

N/A

4.  *The identity of the alleged victim and the manner in which each victim was allegedly injured.*

Nastro is the victim injured by the above-mentioned Defendants' conduct. There is injury to Nastro's property in that he has a property right in the assets that were conveyed to an offshore trust. Nastro's injury was caused by the Defendants' violation of 18 U.S.C. § 1962, because the Defendants' conveyance of the stocks and membership interest to the trust deprives Nastro of his right to assert a claim to the assets in satisfaction of his claims against D'Onofrio.

5.  *A description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim which shall include the following information.*

a.  *The alleged predicate acts and the specific statutes, which were allegedly violated;*

The alleged predicate acts include acts of mail fraud pursuant to 18 U.S.C. § 1341 and wire fraud pursuant to 18 U.S.C. § 1343.

b.  *The dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;*

On June 7, 2001, Nastro obtained a judgment in a California action against D'Onofrio in the amount of $514,698.75 in compensatory damages together with prejudgment interest on that amount from and after December 31, 1997, plus exemplary damages in the amount of $1,600,000. On or before June 21, 2001, D'Onofrio contacted Continental Trust Company in the Channel Islands of Jersey to establish an offshore trust for the benefit of his family. D'Onofrio devised a scheme to defraud Nastro, a known judgment creditor, by transferring his stocks and membership interest in Connecticut Companies to this offshore trust. Specifically, D'Onofrio transferred 100 shares of stock in U.S. Propeller

3

Services of Connecticut, Inc., 50 shares of DIVACQ, Inc. shares, 1515 Shares of New England Propeller Services, Inc. and 50 percent membership interest in ADMW, LLC.

To perfect a scheme to defraud Nastro of his right to collect on his judgment, the Defendants corresponded via U.S. mail, facsimile, telephone and e-mail. Continental and members of the Law Firm exchanged various communications regarding the establishment of the trust, including but not limited to the following:

  a. On or before May 16, 2001, the Law Firm contacted Continental via telephone in connection with the creation of the trust for D'Onofrio).

  b. A fax dated May 14, 2001, to the Law Firm from Continental that makes specific inquiries about language for the trust instrument.

  c. A fax dated June 22, 2001, by which the Law Firm sent to Continental a SS-4 form, the application for employer identification number for the trust for IRS purposes.

  d. Continental sent a letter dated June 26, 2001, to Elliot Miller at the Law Firm representing that D'Onofrio executed the Chana Trust on June 21, 2001.

  e. The Law Firm sent a letter dated July 2, 2001, to the IRS indicating the creation of a foreign trust on behalf of D'Onofrio.

  f. In a letter dated July 11, 2001, the Law Firm sent certificates and assignments of D'Onofrio's stock and membership interest to the Trustee, Continental to Continental.

4

c.  *If the RICO claim is based on the predicate offenses of wire fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.Pro. 9(b). The time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made shall be identified.*

See subparagraph 2 above.

d.  *Whether there has been a criminal conviction for violation of the predicate acts;*

There has been no criminal conviction for violation of the predicate acts asserted above.

e.  *Whether civil litigation has resulted is a judgment in regard to the predicate acts;*

There has been no civil litigation which resulted in a judgment in regard to the predicate acts asserted above.

f.  *The manner in which the predicate acts form a "pattern of racketeering activity;" and,*

The predicate acts described above in subparagraph b. establish a pattern of racketeering activity. The predicate acts relate and amount to the likelihood of continued criminal activity. The communications exchanged through the U.S. mail and via facsimile by and between D'Onofrio, Continental and the Law Firm in furtherance of D'Onofrio's scheme to defraud Nastro by depriving Nastro of his right to claim a right to the transferred assets as a judgment creditor constitute a pattern of racketeering activity.

Additionally, there is a continued scheme to defraud Nastro as the Trust continues to remain in place. The Defendants are involved with continued

5

criminal activity in order to keep the assets out of the reach of Nastro. After the creation of the trust, further predicate acts were conducted, including, but not limited to, the following:

    a.    Continental sent a letter dated April 10, 2002, to the Law Firm seeking information for inclusion on the annual information return of Foreign Trust with a U.S. owner form 3520-A.

    b.    The Law Firm sent a fax and letter each dated April 11, 2002, to Continental containing Form 1041, U.S. Income Tax return for Estate and Trusts seeking Continental's signature for completion of the form.

Such predicate acts will continue throughout the life of the trust, thereby, continuing with the scheme to defraud Nastro.

g.    *Whether the alleged predicate acts relate to each other as part of a common plan, and if so, a detailed description of the common plan.*

The alleged predicate acts described in subparagraphs b. and f. above relate to each other as part of a common plan by D'Onofrio to block Nastro's attempt to collect on his judgment. The predicate acts establish the basis in which the trust was created and continues to be maintained. Such acts lead to the successful goal or common plan of depriving Nastro of his right to assert a claim against D'Onofrio's stocks and membership interest in the Connecticut Companies in satisfaction of the judgment he obtained against D'Onofrio.

6.    *A detailed description of the alleged enterprise for each RICO claim, which shall include:*

a.    *Names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;*

Arthur M. D'Onofrio,
Carolyn D'Onofrio,
Arthur A. D'Onofrio,
Paul D'Onofrio,
Nicole D'Onofrio,
New England Propeller Services, Inc.,
U.S. Propeller Services of CT, Inc.,
DIV-ACQ, Inc,
ADMW, LLC,
The Chana Trust,
The Continental Trust Company Limited ("Continental"),
Kleban and Samor, P.C. ("Law Firm"), and
Elliot I. Miller

b.      *The structure, purpose, function and course of conduct of the enterprise;*

The purpose of the enterprise was to create and maintain an offshore trust to keep D'Onofrio's assets out of the reach of Nastro. D'Onofrio hired the Law Firm to establish the trust with Continental as trustee. Carolyn, Nicole, Paul and Arthur A. D'Onofrio are the beneficiaries of the trust.

c.      *Whether any defendants are employees, officers or directors of the alleged enterprise;*

N/A

d.      *Whether any defendants are associated with the alleged enterprise; and*

The Defendants are individuals or entities associated with the enterprise for the common purpose of defrauding Nastro.

e.      *Whether the plaintiff contends that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise, and*

The defendants are the enterprise itself.

f.      *If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation as to whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.*

The perpetrators of the alleged racketeering activity are D'Onofrio, the Law Firm (including Elliot Miller) and Continental.

The passive instruments are the Connecticut companies; New England Propeller Services, Inc., U.S. Propeller Services of CT, Inc., DIV-ACQ, Inc and ADMW, LLC, as well as the beneficiaries of the trust LLC, Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio and Nicole D'Onofrio.

7.  *Whether plaintiff contends that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.*

The enterprise has an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering in that the enterprise is comprised of D'Onofrio, his family, his companies and his attorneys.

8.  *The alleged relationship between the activities of the enterprise and the pattern of racketeering activity, including a description of the manner in which the racketeering activity differs, if at all, from the usual and daily activities of the enterprise.*

The enterprise was formed for the purpose of conducting the activity of fraudulently transferring assets and keeping such assets from D'Onofrio's creditors. Aside from these activities, the enterprise had no separate usual and daily activities.

9.  *The benefits, if any, the alleged enterprise receives or has received from the alleged pattern of racketeering.*

The enterprise receives the benefit of having D'Onofrio's stocks and membership interest in Connecticut companies safely tucked away in an offshore trust out of the reach of Nastro.

10. *The effect of the activities of the enterprise on interstate or foreign commerce*

The racketeering activities of the enterprise effects interstate and foreign commerce with its use of interstate mail, fax, telephone and its conveyance of stocks and membership interest of the named Connecticut companies to the offshore/foreign trust.

11. *If the complaint alleges a violation of 18 U.S.C. Section 1962(a), provide the following information:*

a. *The identity of the individuals who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and*
b. *The use or investment of such income.*

N/A


12. *If the complaint alleges a violation of 18 U.S.C. Section 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.*

N/A


13. *If the complaint alleges a violation of 18 U.S.C. Section 1962 (b) provide the following information:*

a. *The individuals who are employed by or associated with the enterprise; and*

See response to 6a. above

b. *Whether the same entity is both the liable "person" and the "enterprise" under Section 1962(c).*

D'Onofrio and the Defendants are both the liable "person" and the "enterprise."

9

14. *If the complaint alleges a violation of 18 U.S.C. Section 1962 (d), describe in detail the alleged conspiracy.*

D'Onofrio conspired with Defendants (identified in #2 above) to violate 18 U.S.C. § 1962 (c) for the purpose of depriving Nastro of his property right in the fraudulently transferred stocks and membership interest.

15. *The alleged injury to business or property.*

There is injury to Nastro's property in that he has a property right in the stocks and membership interest that was conveyed to an offshore trust.

16. *The direct casual relationship between the alleged injury and the violation of the RICO statute.*

Nastro's injury was caused by the Defendants' violation of 18 U.S.C. § 1962, because the Defendants' conveyance of the stocks and membership interest to the trust deprives Nastro of his right to assert a claim to the assets in satisfaction of his judgment against D'Onofrio.

17. *The damages sustained for which each defendant is allegedly liable.*

Each identified defendant is liable for the damages to Nastro. Such damages include actual damages, treble damages and attorney's fees.

18. *A description of other federal causes of action alleged in the complaint, if any, and citation to the relevant statutes.*

There are no other federal causes of action alleged in the complaint.

19. *A description of all pendent state claims alleged in the complaint, if any.*

The pendent state claims alleged in the complaint include, 1) violation of the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a, et. seq. Nastro claims that D'Onofrio fraudulently transferred all of his right, title, and interest in Connecticut companies to an offshore trust in the Channel Islands

10

of Jersey; 2) liability of Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio and Nicole D'Onofrio under Conn. Gen. Stat. §52-552i(b); 3) violation of Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, et. Seq. asserted against Arthur M. and Carolyn D'Onofrio; and 4) imposition of a constructive trust on assets transferred by D'Onofrio for no consideration.

20.     *Any additional information plaintiff feels would be helpful to the Court in processing the RICO claim.*

N/A

 

THE PLAINTIFF
VINCENT NASTRO

By: _/s/ Edwin L. Doernberger_
Edwin L. Doernberger, Esq.
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847
e-mail: eld@sdvlaw.com
Fed. Bar No. ct05199