McCauley.  If a change in control of Service Center or a change in the McCauley business-related management of Service Center as shown on such Exhibit A occurs, Service Center shall immediately notify McCauley and McCauley, in its sole discretion, may terminate this Agreement.

Service Center agrees it shall immediately notify McCauley if, during the term of this Agreement, any of its management, directors, and/or stockholders accepts employment, which is not identified on Exhibit A, with any government other than the government of the U.S.

5.    __ASSIGNMENT__.  No property right or interest in the subject matter of this Agreement, either direct or indirect, is created, sold, or transferred hereby.  Service Center agrees this Agreement and the licensed privileges herein granted cannot be transferred, assigned, hypothecated, or otherwise conveyed or encumbered without the prior written approval of McCauley, which approval may be granted or withheld at the sole discretion of McCauley.

6.    _INSURANCE_.  *Service Center agrees to secure and maintain at all times:*

(a)    *Products and completed operations liability insurance with at least a combined single limit of One Million Dollars ($1,000,000).*

(b)    *Each type of insurance shall have a combined single limit, shall not have a per seat or per occurrence limit other than the aggregate, shall be placed with reputable companies acceptable to McCauley, and shall include Cessna Aircraft Company as an "additional insured" for any liability or alleged liability arising out of any activity or lack of activity of Service Center and/or its personnel.*

(c)    *Service Center shall furnish McCauley with Certificates of Insurance, or some other evidence acceptable to McCauley, of the required amounts of insurance along with this Agreement for McCauley's consideration.*

(d)    *Service Center or its insurer shall provide McCauley written notice 30 days in advance of any cancellation of the above described policies.*

B. OPERATIONAL REQUIREMENTS

1.    (a)    **FACILITIES AND LOCATION**.  Throughout the term of this Agreement, Service Center agrees to maintain offices and facilities satisfactory to McCauley and to keep such facilities neat, orderly, and businesslike so that they reflect a positive and professional image for Service Center and McCauley.  Service Center shall not directly or indirectly establish or locate offices and/or facilities at any other place of business for the sale or service of Products covered by this Agreement.

      (b)    **ON-SITE INSPECTION**.  Service Center agrees McCauley has the right, at McCauley's expense, to inspect, without prior notice, all Service Center facilities and procedures.  Such inspection may include, but is not limited to, overhaul procedures, equipment, tools, knowledge of warranty procedures, service information, parts tracking procedures, and FAA regulatory compliance.

2.    **OPEN ACCOUNT**.  Service Center agrees to establish and maintain an open account with McCauley/Cessna Aircraft Company in accordance with McCauley/Cessna Aircraft Company applicable credit policies which are in effect from time to time. Service Center's failure to establish and continuously maintain an open account with McCauley/Cessna Aircraft Company may, at McCauley's sole discretion, result in termination.  Service Center also agrees to maintain at all times during the term of this Agreement a financial structure and operating capital satisfactory to McCauley/Cessna Aircraft Companies.

3.    **SALES PROMOTION AND TRAINING PROGRAMS**.  Service Center agrees to fully support, participate in, and send a representative to no-charge McCauley sales promotion and training programs as announced by McCauley from time to time and to attend no-charge training courses to assure employee service competence on Products and customer service skills.  Service Center also agrees to demonstrate its technicians' service competence on Products as requested by McCauley. All technical training must have been attended by at least one representative of Service Center within the past five years of the expiration date of this Agreement.

4.    **SERVICE DEPARTMENT**.

      (a)    Service Center agrees to own, maintain, and operate a service department with trained personnel, Products, service equipment, technical information, and all other materials and all revisions thereof, which meet the minimum service requirements of McCauley.  This requirement includes Internet e-mail access, a working telefax machine, and a digital camera.

      (b)    Service Center shall be considered to have initially satisfied the requirements of Paragraph B.4.(a) if Service Center has submitted orders for required Products from McCauley or its identified and approved sources for delivery consistent with McCauley requirements and has scheduled required no-charge McCauley training of service personnel for completion as soon as possible.  Service Center must maintain compliance with McCauley's service requirements for Products throughout the term of this Agreement.  Failure of Service Center to purchase and maintain required Products from any available

source or to complete required no-charge McCauley training as scheduled shall be grounds for immediate termination of this Agreement by McCauley.

(c)    Service Center is strongly encouraged to use only McCauley factory-original Products in all repairs and overhaul work.

5.    **LAWS AND REGULATIONS**.    Service Center agrees to fulfill all applicable government license requirements and comply with all applicable laws and regulations including, but not limited to, the U.S. and the European Union, if applicable.

Service Center agrees to comply with all U.S. laws and regulations including, without limitation, those which control the export or re-export of commercial and military products and technology which are obtained from McCauley under this Agreement. Specifically, Service Center agrees to comply with the U.S. Export Administration Act (50 USC 2401, et seq.) and the U.S. Arms Export Control Act of 1976 (22 USC 2751, et seq.), which control the export and re-export of commercial and military goods, respectively, as well as any and all applicable U.S. sanctions and/or embargoes including regulations promulgated by the Office of Foreign Assets Control of the U.S. Department of Treasury.

Service Center agrees it shall immediately notify McCauley if, during the term of this Agreement, any of its owners, management, directors, and/or employees are the subject of an indictment or have been convicted of a violation of the U.S. Export Administration Act of 1979, as amended (50 USC app. 2401-2420); the U.S. Export Administration Regulations, or any order, license or authorization issued thereunder; any regulation, license or order issued under the U.S. International Emergency Economic Powers Act (50 USC 1701-1706); U.S. Espionage and Censorship (18 USC 793, 794 or 798); Section 4(b) of the U.S. Internal Security Act of 1950 (50 USC 783(b)); or Section 38 of the U.S. Arms Export Control Act (22 USC 2778).

Service Center acknowledges that information regarding U.S. export rules, regulations, and restrictions are readily available from computer internet addresses, including the U.S. Department of State, Office of Defense Trade Controls at http://www.pmdtc.org; the U.S. Government Printing Office at http://www.access.gpo.gov; the U.S. Department of Commerce, Bureau of Export Administration at http://www.bxa.doc.gov; and the U.S. Department of the Treasury, Office of Foreign Assets Control at http://www.treas.gov/ofac.

Service Center affirms that it has not and agrees that it will not, in connection with the transactions contemplated by this Agreement or in connection with any other business transactions involving McCauley, make or promise to make any payment or transfer anything of value, directly or indirectly: (i) to any government official or candidate for government office or government employee (including employees of government-controlled enterprises); (ii) to any political party, official of a political party, or candidate for political party office; (iii) to an intermediary for payment to any of the foregoing; (iv) to any officer, director, employee, or representative of any actual or potential customer of McCauley; (v) to any officer, director, or employee of Textron Inc., Cessna Aircraft Company, or any of their affiliates; or (vi) to any other person or entity if such payment or transfer would violate the laws of the country in which made or the

laws of the U.S. It is the intent of the parties that no payments or transfers of value shall be made which have the purpose or effect of public or commercial bribery, acceptance of or acquiescence in extortion, kickbacks, or other unlawful or improper means of obtaining business. This provision shall not, however, prohibit normal and customary business entertainment or the giving of business mementos of nominal value.

The U.S. Foreign Corrupt Practices Act of 1977, as amended, made it unlawful, among other things, for a U.S. company or anyone acting on its behalf to make or offer payment, promise to pay, or authorize the payment of anything of value to: (i) any officer or candidate for office or employee of, or any person acting in any official capacity for, a foreign government or any department, agency, or corporation thereof (including a government-controlled enterprise), or any foreign political party, party official, or candidate for political party office or (ii) any person, while knowing or having reason to know that all or a portion thereof will be offered, given or promised, directly or indirectly, to any government official for the purpose of: (1) influencing any act or decision by such person in his or her official capacity or (2) inducing him or her to use his or her influence with a foreign government to affect, either by action or inaction, any act or decision of such government to obtain or retain business for any person. Service Center acknowledges receipt of a copy of the U.S. Foreign Corrupt Practices Act, confirms its understanding of the provisions of the Act, and agrees to comply with those provisions and to take no action that might cause McCauley to be in violation of such Act.

Service Center affirms that it has disclosed to McCauley that no government official has any ownership interest, direct or indirect, in Service Center or in the contractual relationship established by this Agreement. In the event that during the term of this Agreement there is acquisition of an interest in Service Center or in this Agreement by a government official, Service Center agrees to make immediate disclosure to McCauley and that this Agreement will become subject to immediate termination upon written notice to Service Center. For the purposes of this Agreement, "government official" means any officer or employee of a government or any department, agency, corporation, or instrumentality thereof (including a government-controlled enterprise) or any person acting in an official capacity on behalf of the government or its instrumentality or of any political party, official of a political party, or candidate for government or political party office, including immediate family members or nominees of such government or political party official or candidate.

Service Center affirms that it has obtained assurances from any agent, representative, consultant, or other party, retained by or paid by Service Center in connection with its sale of the Products that they will comply with the U.S. Foreign Corrupt Practices Act and will take no action that might cause McCauley to be in violation of such Act, and Service Center also agrees to obtain such assurances from any such party retained in the future.

In the event McCauley notifies Service Center that McCauley has information or belief that there may be a violation of the U.S. Foreign Corrupt Practices Act, the U.S. Export Administration Act, the U.S. Arms Export Control Act of 1976 or any other applicable U.S. law by Service Center or by any agent, representative, consultant, or

other party, retained by or paid by Service Center in connection with the sale of Products, Service Center agrees to fully cooperate by providing full and complete responses to McCauley's inquiries as to the possible violation and, further, to grant McCauley and/or its representatives access and the right to audit Service Center's books, records, and other relevant documentation.

Payments, transfers of value, or promises to make payments or transfers of value by Service Center in violation of the U.S. Foreign Corrupt Practices Act or any provision of this Agreement, or reasonable cause to believe that such payments or transfers of value or promises are being made, shall be cause for automatic termination of this Agreement. McCauley may retain from or charge to Service Center an amount equal to the amount earned or to be earned by Service Center as a result of any transaction or matter from which such violation arose as liquidated damages and not as a penalty.

6.    (a)    **LIMITED WARRANTIES, WARRANTY DISCLAIMER, AND DAMAGE LIMITATION**. EXCEPT FOR THE EXPRESS TERMS OF McCAULEY'S WRITTEN LIMITED WARRANTIES PERTAINING TO McCAULEY PRODUCTS, AS MAY BE REVISED FROM TIME TO TIME, NEITHER McCAULEY NOR CESSNA AIRCRAFT COMPANY MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR OTHERWISE WHICH EXTEND BEYOND THE FACE HEREOF OR THEREOF. McCAULEY SPECIFICALLY EXCLUDES AND DISCLAIMS ANY AND ALL REPRESENTATIONS AND/OR WARRANTIES NOT INCLUDED WITHIN THE FOUR CORNERS OF THIS AGREEMENT.    THE    WRITTEN    WARRANTIES    OF    McCAULEY ACCOMPANYING ITS PRODUCTS ARE IN LIEU OF ANY OTHER OBLIGATION OR LIABILITY TO PURCHASERS OR ANY THIRD PARTY WHATSOEVER BY REASON OF THE MANUFACTURE, SALE, LEASE, OR USE OF THE WARRANTED PRODUCTS AND NO PERSON OR ENTITY IS AUTHORIZED TO MAKE ANY ADDITIONAL REPRESENTATIONS OR WARRANTIES OR TO ASSUME ANY FURTHER OBLIGATIONS ON BEHALF OF McCAULEY OR CESSNA AIRCRAFT COMPANY.    THE REMEDIES OF REPAIR OR REPLACEMENT SET FORTH IN McCAULEY'S WRITTEN LIMITED WARRANTIES ARE THE ONLY REMEDIES UNDER SUCH WARRANTIES. IN NO EVENT SHALL McCAULEY OR CESSNA AIRCRAFT COMPANY BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS OR GOODWILL, LOSS OF USE, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS, ETC.

THE LAWS OF SOME STATES DO NOT PERMIT CERTAIN LIMITATIONS ON WARRANTIES OR REMEDIES. IN THE EVENT SUCH A LAW APPLIES, THE FOREGOING EXCLUSIONS AND LIMITATIONS ARE AMENDED INSOFAR, AND ONLY INSOFAR, AS REQUIRED BY SAID LAW.

(b)    **WARRANTY ADMINISTRATION**. McCauley agrees to reimburse Service Center at its business address for applicable warranty parts and labor provided by Service Center in accordance with McCauley's warranty policies and

procedures as revised from time to time. Service Center agrees to fully comply with the terms and conditions of McCauley's written limited Warranty.

(c)    **WARRANTY AUDIT**.    Service Center agrees McCauley has the right, without notice, to inspect and audit Service Center's warranty and related records; and, Service Center expressly agrees to make such records available to McCauley during normal business hours.

(d)    **CARE OF OWNER**.    McCauley and Service Center recognize that customers may reasonably expect that parts sold by Service Center to repair McCauley Products are Products supplied by McCauley. Service Center will not represent that parts are genuine McCauley Products unless they have been supplied by McCauley. In addition, Service Center agrees it will not represent that McCauley has concurred that parts supplied by parties other than McCauley are equivalent to genuine McCauley Products when McCauley has not done so. If Service Center sells or installs a part which has not been supplied by McCauley, then Service Center shall advise the customer in writing that the part was not supplied by McCauley and that it is not covered by a McCauley warranty. If Service Center uses or sells a part not supplied by McCauley, Service Center agrees that it shall assume the defense of McCauley in any lawsuit related to the sale, installation or use of the part and it further agrees to indemnify and hold McCauley harmless for any loss, damage or expense, including but not limited to attorneys' fees, expenses and costs which McCauley incurs as a result of, or in connection with the sale, installation or use of the part supplied by Service Center which was not originally furnished to Service Center by McCauley. Notwithstanding any other wording in this Agreement, McCauley agrees that Service Center, as a result of this Agreement, has no duty to defend, indemnify or hold McCauley harmless for any liability arising from McCauley's design, manufacture and/or maintenance of any Products. Service Center guarantees that owners of Products who request service will receive the full benefit of McCauley's service programs. Accordingly, Service Center agrees to:

(1)    Supply owners of Products, regardless of where such Products were purchased, with Warranty inspections, parts, and labor, at no charge and to administer the applicable McCauley Warranties;

(2)    Perform services necessary to comply with McCauley's service manuals, service bulletins and service letters and to administer all related credit programs in accordance with the terms and conditions set forth in such service manuals, service bulletins, service letters, and other correspondence from McCauley, including the performance of such services at no charge to the owner where applicable; and

(3)    Ensure that McCauley's recommended service information and maintenance procedures are followed and all maintenance records are properly completed.

7.    **PRODUCT ORDERS**. Service Center agrees to submit all orders in accordance with and subject to the terms and conditions set forth on McCauley's or McCauley's

distributors' Purchase Order form.  Service Center agrees to pay and be liable for all payment of all sums due under Purchase Orders submitted to McCauley or McCauley's distributors as a result of other written or oral transactions submitted by individuals identified by Service Center on the Signature Authorization Sheet, Exhibit B.

8.    **FINANCE AND OTHER REPORTS**.  Upon request from time to time and within 15 days of Service Center's receipt of McCauley's request, Service Center agrees to furnish to McCauley, in English, complete, accurate, and current financial statements, including a balance sheet, and supporting data, reflecting the true and actual financial condition of Service Center, and other reports as McCauley may reasonably require. McCauley agrees not to disclose such information to anyone except its parent, affiliates, auditors, and as required by law or court order.

9.    **GENERAL AUDIT**.  Service Center agrees McCauley has the right, at McCauley's expense, to inspect and audit Service Center's business records related to McCauley.  Service Center agrees, at McCauley's request, to provide such business records to McCauley during normal business hours.

10.    **SIGNS AND IDENTIFICATION**.  Service Center agrees to participate in McCauley's identification programs and obtain, display, and maintain at its business location a McCauley sign acceptable to and approved by McCauley which accurately illustrates the sales and/or service authority granted Service Center by McCauley. Signs and other identification may be acquired by the Service Center from McCauley, or from independent sources PROVIDED THE SIGN MEETS McCAULEY's SPECIFICATIONS.  Service Center is responsible for all costs incurred in obtaining the required McCauley sign.  Service Center further agrees to remove all outdated or unacceptable McCauley identification within 30 days of notice by McCauley.

11.    **TRADEMARKS AND TRADE NAMES**.  McCauley grants to Service Center the nonexclusive, personal, and nontransferable right to use its trademark and trade name "McCAULEY®" but only in connection with the service of Products at Service Center's appointed location and only for the term of this Agreement.  Service Center agrees to install the McCauley trademark logo decal on all overhauled/repaired products as described in the appropriate McCauley repair/overhaul manuals in lieu of any other identifier.  McCauley encourages Service Center to use the name "McCauley" in its business operations and on its stationery, advertising, and business forms.  Service Center agrees, however, not to use the word "McCauley" in Service Center's legal name or as a part of its assumed, fictitious, or "doing business as" name, or any other firm or corporate designation for itself, or any other word adopted by McCauley for propellers, parts, accessories, or service, or any words, names, or combinations closely resembling them.  Each use of the McCauley Marks shall bear the label "TM," "SM," or "®," as appropriate, or as McCauley may otherwise direct.  It is expressly acknowledged and agreed that all goodwill arising from any use of the McCauley Marks inures to the sole benefit of McCauley.

Upon termination of this Agreement, or expiration of this Agreement if a new agreement is not consummated, all rights granted under this paragraph to use the McCauley name and any of McCauley's trademarks, service marks, signs, logos, and symbols (collectively "McCauley Marks") shall immediately terminate.  Service Center

agrees to discontinue immediately the use of all McCauley Marks, and any names, trademarks, signs or symbols closely resembling those used or adopted by McCauley and anything else representing Service Center as a McCauley Service Center. Service Center agrees to indemnify, defend, and hold McCauley harmless for any and all claims, damages, costs, expenses, and legal fees incurred by McCauley as a result of the improper continued use by Service Center of any McCauley Marks. Service Center further agrees to pay any and all costs, expenses, and legal fees incurred by McCauley in accomplishing removal of said McCauley Marks from Service Center's use.

12.    **PROPRIETARY INFORMATION**.  McCauley retains sole title to any and all proprietary information disclosed to Service Center by McCauley, regardless of the content of the information or the form of media used to make disclosure.  By its disclosure, McCauley does not relinquish and Service Center does not obtain any rights of ownership, assignment, or license of the proprietary information.  Any proprietary information disclosed by McCauley to Service Center is solely for Service Center's internal use in performing its obligations under this Agreement.  Service Center will ensure that all McCauley proprietary information, whether oral or written, shall not be disclosed to others.    The obligation of Service Center to hold such information confidential shall survive the termination or expiration of this Agreement.    Any photocopying, duplication or distribution of proprietary information, including, but not limited to, excerpts from service manuals, McCauley STC paperwork, service letters, service bulletins, etc., without the express written permission of McCauley is prohibited. Any knowledge or information which Service Center has disclosed or may hereafter disclose to McCauley shall not be deemed to be confidential or proprietary information and, accordingly, shall be acquired free from any restriction unless otherwise specifically agreed upon in writing by McCauley.    Service Center shall return all proprietary information to McCauley within 30 days of termination or expiration of the Agreement.

Service Center further acknowledges that it will, during the term of this Agreement, receive access to information from McCauley of a confidential business nature regarding the levels of inventory available in McCauley's parts distribution system. Service Center further acknowledges and agrees that such confidential information is competitively sensitive to McCauley. Therefore, Service Center agrees that it will not disclose, publish or release to any third person or entity any information in any form, whether oral, in writing or electronic, regarding McCauley's inventory, except that Service Center may advise an inquiring party regarding whether specific items are available in stock from McCauley.

## C. TERMS OF SALE

Acceptance by Service Center of McCauley's Products shall in all events constitute full acceptance of the terms and conditions in this Agreement.  Service Center may not assign this Agreement, any purchase orders, or any contract for Product purchases with McCauley without McCauley's prior written consent.

1.    **PRICES**.  McCauley agrees to sell Products to Service Center at the applicable McCauley Service Center prices in effect at the time of shipment, subject to the following conditions.  If Service Center wishes to order some items tax-exempt, then Service

Center must have a valid tax-exempt certification on file with McCauley. McCauley Service Center prices shall only apply to McCauley sales to Service Center for bona fide wholesale sales for sale or consumption by Service Center.

All prices shown are in U.S. dollars. Unless specifically otherwise set forth, Product prices do not include the cost of freight; cost or charges for insurance; any production, sales, use, transfer, transportation, excise or other tax; tariffs; or customs' duties. Service Center shall pay directly or be charged by McCauley for all such costs and/or charges in addition to the price(s) of the Products supplied hereunder. Service Center shall be obligated to pay such charges and costs on the same terms as apply to payment for Product as detailed herein. Service Center shall also pay a crating charge pursuant to policies set forth in the Manual for export shipments requiring special handling.

2.    **PRICE CHANGES**. McCauley shall have the right to change prices for Products and all other parts and accessories at any time and from time to time, without liability or obligation to notify Service Center in advance. Such changed prices shall apply to all undelivered or unshipped Products.

3.    **PAYMENTS**. Payments by Service Center for Products shall be made to McCauley in United States dollars (U.S. $) per the terms stated on the invoice or as otherwise specifically required by McCauley. The cost of transmitting funds and any exchange charges shall be borne by Service Center. If McCauley has to litigate or arbitrate to procure payments from Service Center, then McCauley and Service Center agree that all expenses of McCauley including, without limitation, attorneys' fees, arbitrators' fees, court costs, and other costs are the sole responsibility of and will be paid by Service Center.

4.    **INSURANCE**. McCauley does not insure shipments. Service Center may purchase freight insurance directly or from McCauley at the time of order placement. Recovery of losses due to loss or damage during shipment is the sole responsibility of Service Center.

5.    **PRODUCT DELIVERY, RISK OF LOSS AND TITLE**. Terms of delivery are Ex Works (EXW, Incoterms 2000), McCauley's point of shipment. Risk of loss and title shall pass to Service Center upon delivery by McCauley of the Products to Service Center, Service Center's agent, freight forwarder or carrier as the case may be; provided, however, that Service Center hereby grants McCauley and McCauley hereby retains a security interest in all Products and the right to repossess all Products purchased by Service Center from McCauley pursuant to this Agreement until it receives payment in U.S. dollars for the full amount of the Products' purchase price.

As applicable, McCauley shall be considered the U.S. Principal Party in Interest and Exporter of Record for those shipments that require a U.S. export license or are made directly by McCauley to a foreign country. In all other transactions, including a Routed Export, the Service Center shall be considered the U.S. Exporter of Record. It is Service Center's responsibility to ensure that the Shipper's Export Declaration is prepared and signed by Service Center or its U.S.-based authorized agent. Additionally, for Routed Export transactions, Service Center will be required to provide McCauley with a

signed copy of the Export Compliance Agreement, Exhibit D, prior to delivery by McCauley of any products to the Service Center's named U.S. agent.

IN NO EVENT, SHALL McCAULEY BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES AND SUCH DAMAGES ARE SPECIFICALLY EXCLUDED FROM THIS AGREEMENT.

If applicable, Products will be prepared, packed, and delivered in accordance with the procedures set forth in McCauley's policies and procedures.

6.    **LIQUIDATED DAMAGES FOR SERVICE CENTER'S DEFAULT ON PRODUCTS ORDERED**.  Service Center agrees that if any Products ordered are not accepted and financial arrangements satisfactory to McCauley are not made within the period set forth in the Manual or if Service Center fails to fulfill such financial arrangements, McCauley may retain the deposit on the order, if any, not as a forfeiture but as partial payment for liquidated damages for Service Center's default. If no deposit was made, Service Center shall be liable to McCauley for and shall pay liquidated damages for such default in the amount and within the period set forth in the Manual at the time the Products order was accepted by McCauley. It is understood and agreed by Service Center that the damages suffered by McCauley from Service Center's failure to accept and pay for ordered Products are difficult to measure accurately and that liquidated damages, as set forth in the Manual, reasonably represent the anticipated harm to McCauley in the event of default. McCauley may otherwise dispose of any Products for which liquidated damages are due under this provision without further notice to Service Center and shall be released from any liability to Service Center on said orders.

7.    **PRODUCT AND MODEL CHANGES**.  McCauley reserves the right at any time, without notice and without liability to Service Center, to discontinue, change, and exclude any of its Products from this Agreement.  McCauley shall not be required to deliver excluded or discontinued Products, substitute new Products, or make changes in Products ordered, if manufacture of ordered Products is commenced prior to incorporation of changes in McCauley's or its suppliers' regular production.  McCauley also reserves the right, at any time without notice and liability to Service Center, to discontinue or suspend the manufacture of any Products.

8.    **TAXES AND DUTIES**.  As Products sold by McCauley to Service Center are for resale, no sales, use, excise, turnover, stamp, or other taxes are included in McCauley's prices to Service Center.  If, as a result of any such sales, delivery, use, or transfer of Products by McCauley or Service Center, any such taxes, duties, and charges are levied against McCauley, then Service Center agrees to pay such taxes, duties, and charges, to prepare all reports in connection therewith, and to reimburse, indemnify, and hold McCauley harmless from all such taxes.

## D. TERMINATION

1.    **BY EXPIRATION OF TERM OR SUPERSEDING AGREEMENT**.    This Agreement becomes effective on the date of its execution by McCauley and shall continue in force until midnight, December 31, 2002, unless otherwise terminated as

provided herein. Subject to any applicable state or federal law, this Agreement shall terminate upon expiration of its term, upon the execution of a superseding Agreement, or as herein specified, whichever occurs first. McCauley has no obligation to offer Service Center an agreement for any period subsequent to the expiration of this Agreement. Service Center has no obligation to enter a new agreement with McCauley for any period subsequent to the expiration of this Agreement and may, without any notice to McCauley, decline to do so.

2.    **BY SERVICE CENTER**. In accordance with applicable law, Service Center may terminate this Agreement without cause by providing McCauley 30 days prior written notice. Service Center has no obligation to enter a new McCauley agreement and may, without any notice to McCauley decline to do so.

3.    **BY McCAULEY**. In accordance with applicable law, McCauley may terminate this Agreement or not offer a new agreement to Service Center without cause by providing Service Center 30 days written notice to the Service Center address specified in Exhibit C, subject to applicable laws, if any, concerning termination of this Agreement or McCauley's obligation to offer a new agreement.

4.    **IMMEDIATELY BY McCAULEY**. In accordance with applicable law, McCauley may terminate this Agreement immediately by providing written notice to Service Center in the event of:

(a)    Discontinuance of participation in the ownership or active management of Service Center by any person named in Exhibit A or any assignment or attempted assignment by Service Center of this Agreement or any right or obligation hereunder or any change or attempted change prohibited by Paragraph A.4. without prior written approval of McCauley;

(b)    Disparagement of McCauley, its employees, or of McCauley's Products by Service Center or Service Center's agents or employees;

(c)    Service Center's failure to meet, fulfill, or maintain any service requirements set forth in this Agreement;

(d)    Failure to comply with payment terms for any items purchased directly from McCauley;

(e)    Knowledge by McCauley that Service Center has violated or caused McCauley to violate the U.S. Foreign Corrupt Practices Act in connection with the sale and/or distribution of Products and/or related services or any failure of Service Center to comply with any other applicable laws;

(f)    Falsification of any records or reports by Service Center; and/or

(g)    Termination of employment, death or adjudication of incapacity of any key management official of Service Center, or of a partner if Service Center is a partnership.

13

5.    **SUMS DUE McCAULEY**.  Upon termination of this Agreement, Service Center will immediately pay all sums due McCauley.

6.    **UNFILLED ORDERS**.  Except as provided in Paragraph D.7., unless otherwise mutually agreed in writing within seven days of termination, termination shall automatically cancel all unfilled Product orders placed by Service Center, and McCauley shall be released from any liability to Service Center because of such orders. Service Center agrees no one shall be liable to Service Center if Products covered by its canceled orders are subsequently sold to another party.

7.    **NO REPURCHASE OR REIMBURSEMENT**.    Upon termination of this Agreement, McCauley shall have no obligation to repurchase or reimburse Service Center for Products and related items or for any warranty service begun after termination or expiration of this Agreement unless expressly required by applicable law. However, McCauley retains the right of first refusal to purchase a portion or all the Products to be divested, at the Service Center's acquisition cost.  Said purchase option to be exercised, in writing, by McCauley within 90 days of receipt of Service Center's written notice of the Products and related items to be divested.  McCauley's right of first refusal survives the termination or expiration of this Agreement.

Upon termination of this Agreement, McCauley shall have no obligation to repurchase or reimburse for any warranty service begun after termination or expiration of this Agreement unless expressly required by applicable law.

8.    **TRADEMARKS, SERVICE MARKS, SIGNS, AND SYMBOLS**.  Upon expiration or termination of this Agreement, Service Center agrees to discontinue immediately the use of all McCauley Marks, and names, trademarks, service marks, signs or symbols used or adopted by McCauley or closely resembling those used or adopted by McCauley or anything else representing Service Center as a McCauley service center.

Service Center agrees to indemnify, defend, and hold McCauley harmless for any and all claims, damages, costs, expenses, and attorneys' fees incurred by McCauley as a result of the improper continued use by Service Center of any McCauley Marks. Service Center further agrees to pay any and all costs, expenses, and attorneys' fees incurred by McCauley in accomplishing removal of said McCauley Marks if Service Center continues its improper use.

## E. GENERAL

1.    **LEGAL RELATIONSHIP AND INDEMNITY**.  The relationship created by this Agreement between McCauley and Service Center is that of independent contractor. Under no circumstances shall Service Center be considered an agent, partner, or joint venturer of McCauley.

2.    **INDEMNITY**.  Service Center is not granted any express or implied right or authority to assume or create any obligation or responsibility on behalf of or in the name of McCauley or to bind McCauley in any manner or thing whatsoever.  Service Center agrees to indemnify and hold McCauley harmless from any and all claims of damages

of any nature whatsoever, and legal costs, including attorney fees, incurred by McCauley as a result of or arising from Service Center's representations, negligent acts, failure to act properly, and/or omissions.

3.     **INCORPORATION BY REFERENCE.**  The Warranty policies and procedures are incorporated herein by reference and made a part of this Agreement and may be amended, altered, or modified from time to time by McCauley without notice or obligation to Service Center. The Organization Form, Exhibit A; Signature Authorization Sheet, Exhibit B; General Information Data Sheet, Exhibit C; and the Export Compliance Agreement, Exhibit D, as completed by Service Center, are also incorporated herein by reference and made a part of this Agreement.

4.     **CAUSES BEYOND CONTROL OF PARTIES.**  Neither McCauley nor Service Center shall be liable for failure to perform its part of this Agreement when the failure is due to accidents; acts of God; strikes or labor disputes; acts, laws, rules or regulations of any government or government agency; fires; floods; delays or failures in delivery of carriers or suppliers; shortages of material or other industrial disturbance; wars, riots or insurrections; or other causes beyond the control of the party failing to perform.

5.     **CONTROLLING LAW.**  Service Center and McCauley expressly agree to exclude from this Agreement the United Nations Convention on Contracts for the International Sale of Goods, 1980, and any successor thereto. This Agreement shall be governed in all respects and shall be construed, and the legal relationships between the parties shall be determined, in accordance with applicable commercial law of the State of Kansas, U.S.A., including, but not limited to, the Uniform Commercial Code, as the same may be enacted and in force from time to time in that jurisdiction.  The Kansas Consumer Protection Act (KSA 50-623, et seq.), as may be in effect from time to time, shall not apply to this Agreement or the parties hereto.  Service Center expressly agrees to be subject to and not object to the jurisdiction and venue of Kansas and/or Ohio courts. The parties agree to exclude the Kansas conflicts of law provisions from this Agreement.  If any provision of this Agreement contravenes any law, including the law of the place of performance, such provision shall be deemed not to be a part of this Agreement and the remainder of this Agreement shall be valid and binding as though such provision was not included.

        To the extent a provision of this Agreement would be enforceable under applicable law with modification to conform to the requirements of such law, the parties agree to negotiate in good faith for a written modification of this Agreement promptly upon discovery of the nonconformity and to perform and accept performance of the Agreement as modified to conform to applicable law.

6.     **WAIVER.**  The failure of either party to require performance by the other party of any provision of this Agreement shall in no way affect its right to require such performance at any time thereafter, neither shall the waiver by either party of a breach of any provision of this Agreement constitute a waiver of any succeeding breach of the same or any other provision nor shall it constitute a waiver of the provision itself.

7.     **ARBITRATION.**  All disputes arising from or in connection with this Agreement shall be submitted under Kansas law to binding arbitration held in Vandalia, Ohio, or

Wichita, Kansas, at McCauley's sole option, in the English language, by three independent arbitrators in accordance with the rules of the American Arbitration Association pursuant to the procedure set forth below. Either party may demand such arbitration in writing, which demand shall include the name of the arbitrator appointed by the party demanding arbitration and a statement of the matter in controversy.

Within 30 days after such demand, the other party shall name its arbitrator and the two arbitrators so selected shall select a third arbitrator within ten days or, in lieu of an agreement on the third arbitrator by the two arbitrators so appointed, a third arbitrator shall be appointed by the American Arbitration Association. If a second arbitrator is not selected within the time provided, the first arbitrator shall serve as sole arbitrator. The arbitrators shall have the power to determine the procedure to be followed, whether discovery is to be allowed and to what extent, and to establish a schedule for resolving the controversy, but they shall have no power to alter, change, amend, modify, or subtract from, any of the provisions of this Agreement or to award any punitive or exemplary damages. The decision of a majority of the arbitrators or the decision of the sole arbitrator if only one is selected shall be the final arbitration decision. All decisions shall be in writing. The parties agree that the provisions hereof shall be a complete defense to any suit, action, or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising out of this Agreement, that judgment may be rendered in any court of competent jurisdiction on any award made by the arbitrator(s) pursuant to this Agreement, and that the arbitration provisions hereof shall survive the termination of this Agreement for any reason. Notwithstanding any provision to the contrary, nothing in this paragraph shall prevent McCauley from obtaining judicial enforcement under Paragraphs B.6.(d), B.11., C.6., C.8., D.8., and E.2.

8.      **WRITTEN NOTICE**. Any notices to McCauley required or permitted to be given hereunder shall be in writing (unless otherwise specifically provided herein) and shall be sufficiently given if delivered personally or transmitted by facsimile, courier service, or mailed by registered or certified mail, return receipt requested, postage prepaid, to the McCauley address specified in this paragraph. In all cases where a facsimile is transmitted, both Parties agree to provide the other with originals of the facsimile documents by courier service within one week of the date of facsimile transmittal. The date of effective notice is the date of receipt of the facsimile or the date of personal delivery of the document or the date of receipt of the document by certified mail, registered mail or courier service, unless of course the documents were originally sent by facsimile. A written notice shall be considered delivered even if delivery is not accepted by the other party and the date of receipt of any mailing of any notice shall be counted in computing the notice period. Notices to Service Center should be sent to the General Manager at the business address provided in Exhibit C. Notices to McCauley should be sent to the Director of Product Support, at McCauley Propeller Systems, 3535 McCauley Drive, Vandalia, Ohio 45377 (Facsimile No. 937/890-6001).

9.      **REMEDIES**. Except as provided in Paragraphs B.6.(d), B.11., C.6., C.8., D.8., and E.2., the parties agree in any dispute, whether resolved by arbitration or otherwise, each party will pay its own expenses of arbitration and/or litigation, including, without limitation, attorneys' fees, arbitrators' fees, court costs, and other expenses.

10.    **ENTIRE AGREEMENT**. Except as specifically stated herein, all understandings and agreements between the parties relative to the Products covered by this Agreement are contained herein or in the documents incorporated herein by reference. No change to this Agreement shall be valid or binding on either party until reduced to writing and signed in accordance with Paragraph E.11.

11.    **SIGNATURES**. This Agreement is only valid when it contains, with respect to Service Center, the signature of the owner, if an individual proprietorship; the signature of one of the general partners, if a partnership; or the signature of a duly authorized officer of Service Center, if a corporation or limited liability company; and, with respect to McCauley, the signature of an authorized employee of McCauley. The signatories to this Agreement verify that they have read the complete Agreement, understand its contents, and have full authority to bind and hereby do bind their respective party.

The parties hereto have signed this Agreement, which is finally executed at Vandalia, Ohio. U.S., in duplicate originals.

EAST COAST PROPELLERS PTY LTD
(SERVICE CENTER's Legal Name)

_____
(Signature)

Title: MANAGING DIRECTOR

AGREEMENT
OFFER DATE: 11/12/01

CESSNA AIRCRAFT COMPANY

_____
(Accepted By)

Title: DIR. OF PRODUCT SUPPORT

ACCEPTANCE AND
AGREEMENT EFFECTIVE
DATE: DEC 14, 2001

17

## EXHIBIT A

### ORGANIZATION FORM
(Please Type)

Service Center's Name: ___ EAST COAST PROPELLERS PTY LTD ___

<u>FINANCIAL ORGANIZATION:</u>
Names of all Service Center
Stockholders and/or Owners
Officers and Directors,
regardless of
<u>financial interest (* & **)</u>

| Names | Title | Percent of Ownership | Current Government Position Held *** (Title & Country) |
|---|---|---|---|
| JOHN A. MARKS | MANAGING DIRECTOR | 50% | NONE |
| ELLEN M. MARKS | DIRECTOR | 50% | NONE |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

A separate form must be completed for each corporation, partnership, or other entity shown above as being an owner of an interest in Service Center.

\*      If you are a privately owned corporation, you <u>must show 100%</u> of all stockholders, their percentage of stock ownership, and their government positions, if any.

\*\*      If you are a publicly held corporation, then identify stockholders owning 5% or more of your stock, and the government positions, if any, held by such stockholders.

\*\*\*      This column must be completed.  If the individual(s) do not hold any government positions, then the word "NONE" should be inserted in the blank space.

## EXHIBIT B

## SIGNATURE AUTHORIZATION SHEET
(Please Type)

Service Center's
Name: _____ EAST COAST PROPELLERS PTY LTD _____

This is Service Center's authorization for McCauley to honor the signatures of the following names for warranty claims from Service Center. *(Please type names of individuals authorized to contractually commit Service Center [signatures are not required].)*

## WARRANTY CLAIMS

1. JOHN MARKS                          4. _____
2. IAN VERRALL                          5. _____
3. DEBORAH SMITH                     6. _____

## PRODUCT(S) ORDERS

1. JOHN MARKS                          4. _____
2. DEBORAH SMITH                     5. _____
3. _____              6. _____

## CHECKS

1. JOHN MARKS                          4. _____
2. DEBORAH SMITH                     5. _____
3. _____              6. _____

The individuals identified above are not authorized to commit McCauley in any way or manner. **SERVICE CENTER AGREES TO PAY AND TO BE LIABLE FOR PAYMENT OF SUMS DUE MCCAULEY AS A RESULT OF WRITTEN OR ORAL TRANSACTIONS SUBMITTED BY ANY INDIVIDUAL IDENTIFIED ABOVE.**

SERVICE CENTER:   EAST COAST PROPELLERS PTY LTD

_____
                                         (Signature)
NAME: JOHN A. MARKS _____
                                    (Please type)
TITLE: MANAGING DIRECTOR _____

DATE 11TH DECEMBER 2001 _____

## EXHIBIT C

### GENERAL INFORMATION DATA SHEET
(Please Type)

## LEGAL NAME AND PLACE OF BUSINESS:

Name: EAST COAST PROPELLERS PTY LTD

Street: BLD 641 KLEMM STREET

Airport: BANKSTOWN AIRPORT

City: BANKSTOWN          State/Province: NEW SOUTH WALES

Zip: 2200          COUNTRY: AUSTRALIA

## MAILING ADDRESS:

Name: EAST COAST PROPELLERS PTY LTD

Street: BLD 641 KLEMM STREET

City: BANKSTOWN AIRPORT          State/Province: NSW

Zip: 2200          COUNTRY: AUSTRALIA

## SHIPPING ADDRESS: (check here if for freight forwarder [ ])

Name: EAST COAST PROPELLERS PTY LTD

Street: BLD 641 KLEMM STREET

City: BANKSTOWN AIRPORT          State/Province: NSW

Zip: 2200          COUNTRY: AUSTRALIA

## ADDITIONAL INFORMATION:

Telephone: 61 2 9791 0246          Facsimile: 61 2 9791 0057

Internet/E-mail          Primary
Address: eastcoastpropellers@bigpond. Contact: JOHN MARKS
com

Internet website URL: www.eastcoastpropellers.com.au

## REMARKS:

## EXHIBIT D

## EXPORT COMPLIANCE AGREEMENT

Service Center Name:   EAST COAST PROPELLERS PTY LTD

Service Center Code:

Notifies McCauley that it hereby assumes full and complete responsibility for the export of Products supplied by McCauley, including, but not limited to, export reporting, determining licensing requirements, and obtaining licensing authorities.   Service Center, if it is a foreign citizen or corporation, further understands that its freight forwarder, a United States' corporation, will be acting as the U.S. Exporter of Record on behalf of Service Center.   Service Center acknowledges the freight forwarder designated as the U.S. exporter has been notified, is in concurrence with its role, and has full authority to perform its obligations on behalf of Service Center.

Service Center:   EAST COAST PROPELLERS PTY LTD

Signature:

Printed:   JOHN MARKS

Title:   MANAGING DIRECTOR

Date:   11-12.01

## McCAULEY SERVICE CENTER AGREEMENT
## 2003

This McCAULEY SERVICE CENTER AGREEMENT ("Agreement") is made and entered into by and between Cessna Aircraft Company, a Kansas corporation, doing business as McCauley Propeller Systems, hereinafter referred to as "McCauley," with its registered address at 5800 E. Pawnee, Wichita, Kansas  67218, United States of America ("U.S."), and

_EAST COAST PROPELLERS PTY LTD_
(Legal Name of Service Center)

[ ]    a sole proprietorship

[ ]    a partnership

[ ]    a corporation organized under the laws of _____

[X]    a limited liability company

with its business address at

_BUILDING  641    KLEMM STREET_
(Street Address)

_BANKSTOWN AIRPORT    NSW    2200_
(City, County, State/Province, Postal Code)

_AUSTRALIA_
(Country)

hereinafter referred to as "Service Center."

The purpose of this Agreement is to establish Service Center as the authorized customer support and service representative for McCauley propellers and accessories referred to in Service Center's appointment.  This Agreement also sets forth the responsibilities of McCauley to Service Center and the responsibilities of Service Center to McCauley.

Service Center hereby acknowledges, agrees, and accepts the responsibility for providing the highest possible standard of customer support and service to all owners of McCauley propellers and accessories included in Service Center's appointment.

IN CONSIDERATION of the foregoing and the mutual covenants and agreements of the parties, McCauley and Service Center agree as follows:

## A. SERVICE CENTER'S APPOINTMENT AND RESPONSIBILITIES

1.  **APPOINTMENT**.  Subject to the terms and conditions of and for the term of this Agreement, McCauley appoints Service Center as a McCauley Service Center for designated models of McCauley propellers, governors and de-ice accessories ("Products") as identified below:



   ☒     Propellers

   ☐     Governors

McCauley grants to Service Center the nonexclusive, nontransferable, and non-assignable privilege to conduct service on applicable propeller models and to purchase, sell, and service Products at the specified facility and at no other location.

Service Center hereby accepts such appointment and agrees to provide, to the satisfaction of McCauley, prompt and efficient maintenance and service at reasonable prices and terms on a consistent and continuing basis for Products.  The failure of Service Center to provide such maintenance and service shall, at the discretion of McCauley, be a basis for the termination of this Agreement.

2.  **NONEXCLUSIVE AREA**.   Service Center acknowledges and agrees that McCauley reserves, without liability or obligation to notify Service Center, the right to make direct sales and dispositions of Products and to provide any service to anyone.

McCauley also reserves the right to appoint others at any location to sell or dispose of any Products and/or any other parts and services to anyone without liability or obligation to notify Service Center.

3.  **NON-FRANCHISE AGREEMENT**.  McCauley and Service Center agree that Service Center does not by this Agreement become a franchisee of McCauley and that there is no required payment of a franchise fee or any other charge to McCauley, directly or indirectly, in connection with Service Center's appointment.

4.  **CHANGES IN OWNERSHIP, MANAGEMENT, OR TRANSFER**.   This Agreement is a personal service contract and is entered into in reliance upon and in consideration of the personal qualifications of the individuals who will substantially participate, both of record and beneficially, in the ownership and/or active management of Service Center's operation.

Service Center warrants that the information contained on the Organization Form, Signature Authorization Sheet, and General Information Data Sheet, hereinafter respectively referred to as Exhibits A, B, and C, is complete, true, and correct.  If a

2

change in control of Service Center or a change in the McCauley business-related management of Service Center as shown on such Exhibit A occurs, Service Center shall immediately notify McCauley and McCauley, in its sole discretion, may terminate this Agreement.

Service Center agrees it shall immediately notify McCauley if, during the term of this Agreement, any of its management, directors, and/or stockholders accepts employment, which is not identified on Exhibit A, with any government other than the government of the U.S.

5.    **BUSINESS REFERENCES**.  Service Center shall provide McCauley, in Exhibit A, with three business references.  McCauley shall have the right to contact the business references, conduct interviews, and request information pertaining to Service Center from each of the business references.

6.    **ASSIGNMENT**.  No property right or interest in the subject matter of this Agreement, either direct or indirect, is created, sold, or transferred hereby.  Service Center agrees this Agreement and the licensed privileges herein granted cannot be transferred, assigned, hypothecated, or otherwise conveyed or encumbered without the prior written approval of McCauley, which approval may be granted or withheld at the sole discretion of McCauley.

7.    **INSURANCE**.  Service Center agrees to secure and maintain at all times:

(a)    Products and completed operations liability insurance with at least a combined single limit of One Million Dollars ($1,000,000).

(b)    Each type of insurance shall not have a per seat or per occurrence limit other than the aggregate, shall be placed with reputable companies acceptable to McCauley, and shall include Cessna Aircraft Company as an additional insured.

(c)    Service Center's insurance is primary coverage and all other coverage secured by McCauley is excess and will not be applicable until the primary coverage limits are exhausted;

(d)    Service Center agrees to provide Cessna with a Certificate of Insurance, or other evidence, acceptable to Cessna, of the required amount of insurance.  The Certificate of Insurance shall include the following:

(1)    Cessna Aircraft Company as an Additional Insured for Service Center's share of products and completed operations liability arising out of aircraft accidents wholly or partially caused by Service Center (Cessna's liability, if any, for design and manufacture of Products shall not be included in Service Center's products and completed operations liability insurance coverage);

(2)    The statement "This insurance shall be primary and will pay Service

3

Center's share of products and completed operations liability arising out of aircraft accidents wholly or partially caused by Service Center, even if Cessna has separate coverage for the same liability;" and

(3)    The statement, "Issuer will provide Cessna with 30 days advance written notice in the event of insurance cancellation; however, if cancellation is due to non-payment, then written notice will be provided Cessna within ten days."

## B. OPERATIONAL REQUIREMENTS

1.    (a)    **FACILITIES AND LOCATION**.  Throughout the term of this Agreement, Service Center agrees to own or lease facilities satisfactory to McCauley and to keep such facilities neat, orderly, and businesslike so that they reflect a positive and professional image for Service Center and McCauley.  Service Center shall not directly or indirectly establish any other place of business for the sale or service of Products covered by this Agreement.

(b)    **ON-SITE INSPECTION**.  Service Center agrees McCauley has the right, at McCauley's expense, to inspect, without prior notice, all Service Center facilities and procedures.  Such inspection may include, but is not limited to, overhaul procedures, equipment, tools, knowledge of warranty procedures, service information, parts tracking procedures, and FAA regulatory compliance.

2.    **OPEN ACCOUNT**.  Service Center agrees to establish and maintain an open account with McCauley in accordance with McCauley credit policies which are in effect from time-to-time, and also agrees to maintain at all times during the term of this Agreement a financial structure and operating capital satisfactory to McCauley.

3.    **SALES PROMOTION AND TRAINING PROGRAMS**.  Service Center agrees to fully support, participate in, and send a representative to no-charge McCauley sales promotion and training programs as announced by McCauley from time-to-time. Service Center also agrees to attend training courses to assure employee service competence on Products and develop customer service skills.  Service Center agrees to demonstrate service competence on Products by its technicians.  All no-charge McCauley technical training must have been attended by at least one representative of Service Center within five years of the expiration date of this Agreement.

4.    **SERVICE DEPARTMENT**.

(a)    Service Center agrees to own, maintain, and operate a service department with trained personnel, service parts, service equipment, technical information, and all other materials which meet McCauley's service requirements and all revisions thereof.  This requirement includes Internet access, Internet e-mail access, a working telefax machine, and a digital camera.

(b)    Service Center shall be considered to have initially satisfied the requirements of Paragraph B.4.(a) if Service Center has submitted orders for required items from any available source for delivery as soon as possible and has scheduled required no-charge McCauley training of service personnel for completion as soon as possible.   Failure of Service Center to purchase and maintain required items from any available source or to complete required no-charge McCauley training as scheduled shall be grounds for immediate termination of this Agreement by McCauley.

(c)    Service Center is strongly encouraged to use only McCauley factory-original Products in all repairs and overhaul work.

5.    **LAWS AND REGULATIONS**.   Service Center agrees to fulfill all applicable government license requirements and comply with all applicable laws and regulations.

Service Center agrees to comply with all U.S. laws and regulations including, without limitation, those which control the export or re-export of commercial and military products and technology which are obtained from McCauley under this Agreement. Specifically, Service Center agrees to comply with the U.S. Export Administration Act (50 USC 2401, et seq.) and the U.S. Arms Export Control Act of 1976 (22 USC 2751, et seq.), which control the export and re-export of commercial and military goods, respectively, as well as any and all applicable U.S. sanctions and/or embargoes including regulations promulgated by the Office of Foreign Assets Control of the U.S. Department of Treasury.

Service Center acknowledges that information regarding U.S. export rules, regulations, and restrictions are readily available from computer internet addresses, including the U.S. Department of State, Office of Defense Trade Controls at http://www.pmdtc.org; the U.S. Government Printing Office at http://www.access.gpo.gov; the U.S. Department of Commerce, Bureau of Export Administration at http://www.bxa.doc.gov; and the U.S. Department of the Treasury, Office of Foreign Assets Control at http://www.treas.gov/ofac.

Service Center affirms that it has not made and agrees that it will not make or promise to make, in connection with the transactions contemplated by this Agreement or in connection with any other business transactions involving McCauley, any payment or transfer anything of value, directly or indirectly: (i) to any government official or candidate for government office or government employee (including employees of government-controlled enterprises); (ii) to any political party, official of a political party, or candidate for political party office; (iii) to an intermediary for payment to any of the foregoing; (iv) to any officer, director, employee, or representative of any actual or potential customer of McCauley; (v) to any officer, director, or employee of Textron Inc., Cessna Aircraft Company, or any of their affiliates; or (vi) to any other person or entity if such payment or transfer would violate the laws of the country in which made or the laws of the U.S.  It is the intent of the parties that no payments or transfers of value shall be made which have the purpose or effect of public or commercial bribery, acceptance of or acquiescence in extortion, kickbacks, or other unlawful or improper means of obtaining business.  This provision shall not, however, prohibit normal and

customary business entertainment or the giving of business mementos of nominal value.

The U.S. Foreign Corrupt Practices Act of 1977, as amended, made it unlawful, among other things, for a U.S. company or anyone acting on its behalf to make or offer payment, promise to pay, or authorize the payment of anything of value to: (i) any officer or candidate for office or employee of, or any person acting in any official capacity for, a foreign government or any department, agency, or corporation thereof (including a government-controlled enterprise), or any foreign political party, party official, or candidate for political party office or (ii) any person, while knowing or having reason to know that all or a portion thereof will be offered, given or promised, directly or indirectly, to any government official for the purpose of: (1) influencing any act or decision by such person in his or her official capacity, (2) inducing him or her to use his or her influence with a foreign government to affect, either by action or inaction, any act or decision of such government to obtain or retain business for any person, or (3) securing any improper advantage. Service Center acknowledges receipt of a copy of the U.S. Foreign Corrupt Practices Act.

Service Center is required to provide McCauley with a signed copy of the Annual Representative Foreign Corrupt Practices Act Certification, Exhibit F, prior to acceptance by McCauley of this Agreement. By executing the Certification, Service Center acknowledges and confirms its understanding of the provisions of the Act, and agrees to comply with those provisions and to take no action that might cause McCauley to be in violation of such Act.

Service Center affirms that it has disclosed to McCauley that no government official has any ownership interest, direct or indirect, in Service Center or in the contractual relationship established by this Agreement. In the event that during the term of this Agreement there is acquisition of an interest in Service Center or in this Agreement by a government official, Service Center agrees to make immediate disclosure to McCauley and that this Agreement will become subject to immediate termination upon written notice to Service Center. For the purposes of this Agreement, "government official" means any officer or employee of a government or any department, agency, corporation, or instrumentality thereof (including a government-controlled enterprise), or of a public international organization; or any person acting in an official capacity on behalf of any such government, department, agency, corporation or instrumentality, or public international organization, or of any political party, official of a political party, or candidate for government or political party office, including immediate family members or nominees of such government or political party official or candidate.

Service Center affirms that it has obtained assurances from any agent, representative, consultant, or other party, retained by or paid by Service Center in connection with its sale of the Products that they will comply with the U.S. Foreign Corrupt Practices Act and will take no action that might cause McCauley to be in violation of such Act, and Service Center also agrees to obtain such assurances from any such party retained in the future.

In the event McCauley notifies Service Center that McCauley has information or belief that there may be a violation of the U.S. Foreign Corrupt Practices Act, the U.S. Export Administration Act, the U.S. Arms Export Control Act of 1976 or any other applicable U.S. law by Service Center or by any agent, representative, consultant, or other party, retained by or paid by Service Center in connection with the sale of Products, Service Center agrees to fully cooperate by providing full and complete responses to McCauley's inquiries as to the possible violation and, further, to grant McCauley and/or its agents access and the right to audit Service Center's books, records, and other relevant documentation.

Payments, transfers of value, or promises to make payments or transfers of value by Service Center in violation of the U.S. Foreign Corrupt Practices Act or any provision of this Agreement, or reasonable cause to believe that such payments or transfers of value or promises are being made, shall be cause for automatic termination of this Agreement. McCauley may retain from or charge to Service Center an amount equal to the amount earned or to be earned by Service Center as a result of any transaction or matter from which such violation arose as liquidated damages and not as a penalty.

6.    (a)    **LIMITED WARRANTIES, WARRANTY DISCLAIMER, AND DAMAGE LIMITATION**. EXCEPT FOR THE EXPRESS TERMS OF McCAULEY'S WRITTEN LIMITED WARRANTIES PERTAINING TO McCAULEY PRODUCTS, AS MAY BE REVISED FROM TIME-TO-TIME, McCAULEY MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR OTHERWISE WHICH EXTEND BEYOND THE FACE HEREOF OR THEREOF. McCAULEY SPECIFICALLY EXCLUDES AND DISCLAIMS ANY AND ALL REPRESENTATIONS AND/OR WARRANTIES NOT INCLUDED WITHIN THE FOUR CORNERS OF THIS AGREEMENT. THE WRITTEN WARRANTIES OF McCAULEY ACCOMPANYING ITS PRODUCTS ARE IN LIEU OF ANY OTHER OBLIGATION OR LIABILITY TO PURCHASERS OR ANY THIRD PARTY WHATSOEVER BY REASON OF THE MANUFACTURE, SALE, LEASE, OR USE OF THE WARRANTED PRODUCTS AND NO PERSON OR ENTITY IS AUTHORIZED TO MAKE ANY ADDITIONAL REPRESENTATIONS OR WARRANTIES OR TO ASSUME ANY FURTHER OBLIGATIONS ON BEHALF OF McCAULEY. THE REMEDIES OF REPAIR OR REPLACEMENT SET FORTH IN McCAULEY'S WRITTEN LIMITED WARRANTIES ARE THE ONLY REMEDIES UNDER SUCH WARRANTIES. IN NO EVENT SHALL McCAULEY BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS OR GOODWILL, LOSS OF USE, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS, ETC.

THE LAWS OF SOME COUNTRIES AND/OR STATES DO NOT PERMIT CERTAIN LIMITATIONS ON WARRANTIES OR REMEDIES. IN THE EVENT SUCH A LAW APPLIES, THE FOREGOING EXCLUSIONS AND LIMITATIONS ARE AMENDED INSOFAR, AND ONLY INSOFAR, AS REQUIRED BY SAID LAW.

(b)    **WARRANTY ADMINISTRATION**. McCauley agrees to reimburse Service Center at its business address for warranty parts and labor, if applicable, provided by Service Center in accordance with published McCauley warranty policies and procedures. Service Center agrees to fully comply with the terms and conditions of McCauley's Warranty.

(c)    **WARRANTY AUDIT**. Service Center agrees McCauley has the right, without notice, to inspect and audit Service Center's warranty records; and, Service Center expressly agrees to make such records available to McCauley during normal business hours.

(d)    **CARE OF OWNER**. McCauley and Service Center recognize that customers may reasonably expect that parts sold by Service Center to repair McCauley Products are Products supplied by McCauley. Service Center will not represent that parts are genuine McCauley Products unless they have been supplied by McCauley. In addition, Service Center agrees it will not represent that McCauley has concurred that parts supplied by parties other than McCauley are equivalent to genuine McCauley Products when McCauley has not done so. If Service Center sells or installs a part that has not been supplied by McCauley, then Service Center shall advise the customer in writing that McCauley did not supply the part and that it is not covered by a McCauley warranty. If Service Center uses or sells a part not supplied by McCauley, Service Center agrees that it shall assume the defense of McCauley in any lawsuit related to the sale, installation or use of the part and it further agrees to indemnify and hold McCauley harmless for any loss, damage or expense, including but not limited to attorney fees, expenses and costs which McCauley incurs as a result of, or in connection with the sale, installation or use of the part supplied by Service Center which was not originally furnished to Service Center by McCauley. Notwithstanding any other wording in this Agreement, McCauley agrees that Service Center, as a result of this Agreement, has no duty to defend, indemnify or hold McCauley harmless for any liability arising from McCauley's design, manufacture and/or maintenance of any Products. Service Center guarantees that owners of Products who request service will receive the full benefit of McCauley's service programs. Accordingly, Service Center agrees to:

(1)    Supply owners of Products, regardless of where such Products were purchased, with Warranty inspections, parts, and labor, at no charge and to administer the applicable McCauley Warranties;

(2)    Perform services necessary to comply with McCauley's service manuals, service bulletins and service letters and to administer all related credit programs in accordance with the terms and conditions set forth in such service manuals, service bulletins, service letters, and other correspondence from McCauley, including the performance of such services at no charge to the owner where applicable; and

(3)    Ensure that McCauley's recommended service information and maintenance procedures are followed and all maintenance records are properly completed.

7.    **ORDERS**.  Service Center agrees to submit all orders in accordance with and subject to the terms and conditions set forth on McCauley's or McCauley's distributors' Purchase Order form.  Service Center agrees to pay and be liable for all payment of all sums due under Purchase Orders submitted to McCauley or McCauley's distributors as a result of either written or oral transactions submitted by individuals identified by Service Center on the Signature Authorization Sheet, Exhibit B.

8.    **FINANCE AND OTHER REPORTS**.  Upon request from time-to-time and within 15 days of Service Center's receipt of McCauley's request, Service Center agrees to furnish to McCauley, in English, complete, accurate, and current financial statements, including a balance sheet, and supporting data, reflecting the true and actual financial condition of Service Center, and other reports as McCauley may reasonably require. McCauley agrees not to disclose such information to anyone except its parent, affiliates, auditors, and as required by law or court order.

9.    **GENERAL AUDIT**.    Service Center agrees McCauley has the right, at McCauley's expense, to inspect and audit Service Center's business records related to McCauley.  Service Center agrees, at McCauley's request, to provide such business records to McCauley during normal business hours.

10.    **SIGNS AND IDENTIFICATION**.  Service Center agrees to obtain, display, and maintain at its business location a McCauley sign acceptable to and approved by McCauley.  Signs and other identification may be acquired by the Service Center from McCauley or from independent sources PROVIDED THE SIGN MEETS McCAULEY's SPECIFICATIONS.  Service Center is responsible for all costs incurred in obtaining the required McCauley sign.   Service Center further agrees to remove all outdated or unacceptable McCauley identification within 30 days of notice by McCauley.

Service Center agrees to indemnify, defend, and hold McCauley harmless for any and all claims, damages, costs, expenses and attorney fees incurred by McCauley as a result of the improper continued use by Service Center, its assigns or successors, of any signs and identification identifying Service Center as an authorized facility of McCauley for anything beyond that which is authorized in this Agreement.   Service Center further agrees to pay any and all costs, expenses, and attorney fees incurred by McCauley in accomplishing removal of said signs and identification if Service Center, its assigns or successors continue their improper use.

11.    **TRADEMARKS AND TRADE NAMES**.  McCauley grants to Service Center the nonexclusive, personal, and nontransferable right to use its trademark and trade name "McCAULEY®" but only in connection with the service of Products at Service Center's appointed location and only for the term of this Agreement.  Service Center agrees to install the McCauley trademark logo decal on all overhauled/repaired products as described in the appropriate McCauley repair/overhaul manuals in lieu of any other identifier.  McCauley encourages Service Center to use the name "McCauley" in its

business operations and on its stationery, advertising, and business forms. Service Center agrees, however, not to use the word "McCauley" in Service Center's legal name or as a part of its assumed, fictitious, or "doing business as" name, or any other firm or corporate designation for itself, or any other word adopted by McCauley for propellers, parts, accessories, or service, or any words, names, or combinations closely resembling them. Upon termination of this Agreement, for any reason, all rights granted under this paragraph to use the McCauley name and any of McCauley's trademarks, service marks, logos, and symbols (collectively "McCauley Marks") shall immediately terminate. Each use of the McCauley Marks shall bear the label "TM," "SM," or "®," as appropriate, or as McCauley may otherwise direct. It is expressly acknowledged and agreed that all goodwill arising from any use of the McCauley Marks inures to the sole benefit of McCauley.

12.    **PROPRIETARY INFORMATION**.  Any photocopying, duplication or distribution of proprietary information such as service manual excerpts, McCauley's Supplemental Type Certificate (STC) paperwork, service letters, service bulletins, etc., without express written permission from McCauley is prohibited. McCauley retains sole title to any and all proprietary information disclosed to Service Center by McCauley, regardless of the content of the information or the form of media used to make disclosure. By its disclosure, McCauley does not relinquish and Service Center does not obtain any rights of ownership, assignment, or license of the proprietary information. Any proprietary information disclosed by McCauley to Service Center is solely for Service Center's internal use in performing its obligations under this Agreement. Service Center shall ensure that all McCauley proprietary information, whether oral or written, is not disclosed to others. The obligation of Service Center to hold such information confidential shall survive the termination or expiration of this Agreement. Any knowledge or information which Service Center has disclosed or may hereafter disclose to McCauley shall not be deemed to be confidential or proprietary information and, accordingly, shall be acquired free from any restriction unless otherwise specifically agreed upon in writing by McCauley. Service Center shall return all proprietary information to McCauley within 30 days of termination or expiration of the Agreement.

Service Center further acknowledges that it will, during the term of this Agreement, receive access to information from McCauley of a confidential business nature regarding, but not limited to, the levels of inventory available in McCauley's parts distribution system. Service Center further acknowledges and agrees that such confidential information is competitively sensitive to McCauley. Therefore, Service Center agrees that it will not disclose, publish or release to any third person or entity any information in any form, whether oral, in writing or electronic, regarding McCauley's inventory, except that Service Center may advise an inquiring party regarding whether specific items are available in stock from McCauley.

## C. TERMS OF SALE

1.    **PRICES**.  McCauley agrees to sell Products to Service Center at the applicable McCauley Service Center prices in effect at the time of shipment and to furnish Service Center with schedules of such prices.

2.    **PAYMENTS**.  Payments by Service Center shall be made to McCauley in U.S. dollars per the terms stated on the invoice.  The cost of transmitting funds and any exchange charges shall be borne by Service Center.  If McCauley has to litigate or arbitrate to procure payments from Service Center, then McCauley and Service Center agree that all expenses of McCauley including, without limitation, attorney fees, arbitrator fees, court costs, and other costs are the sole responsibility of and will be paid by Service Center.

3.    **DELIVERY, TITLE, AND RISK OF LOSS**.  Unless Products are drop-shipped from a vendor, all Products will be prepared, packed, and delivered in accordance with the procedures set forth by McCauley.  Delivery will be ExWorks (EXW, Incoterms 2000) shipping point as determined by McCauley.  Service Center shall pay all other applicable charges such as special packing, transportation, duties, and taxes.  Title and all risk of loss shall pass to Service Center at shipper's dock upon delivery of Products to Service Center, Service Center's agent, freight forwarder or carrier as the case may be.  Service Center hereby grants McCauley and McCauley hereby retains a security interest in all Products and the right to repossess all Products purchased by Service Center from McCauley pursuant to this Agreement until it receives payment in U.S. dollars for the full amount of the Products' purchase price.

As applicable, McCauley shall be considered the U.S. Principal Party in Interest and Exporter of Record for those shipments that require a U.S. issued export license or are made directly by McCauley to a foreign country.  In all other transactions, including a Routed Export, the Service Center shall be considered the U.S. Exporter of Record.  It is Service Center's responsibility to ensure that the Shipper's Export Declaration is prepared and signed by Service Center or Service Center's U.S.-based authorized agent.  Additionally, for Routed Export transactions, the Service Center will be required to provide McCauley with a signed copy of the Export Compliance Agreement, Exhibit D, prior to delivery by McCauley of any products to Service Center's named U.S. agent.

**IN NO EVENT, SHALL McCAULEY BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES AND SUCH DAMAGES ARE SPECIFICALLY EXCLUDED FROM THIS AGREEMENT.**

4.    **PRODUCT INSURANCE**.  Service Center may purchase freight insurance directly or from McCauley at the time of order placement.  Recovery of losses due to loss or damage during shipment is the sole responsibility of Service Center.

5.    **PRICE CHANGES**.  McCauley shall have the right to change prices for Products and all other parts and accessories at any time and from time-to-time, without liability or obligation to notify Service Center in advance.  Such changed prices shall apply to all undelivered or unshipped Products.

6.    **PRODUCT AND MODEL CHANGES**.  McCauley reserves the right at any time, without notice and without liability to Service Center, to discontinue, change, and exclude any of its Products from this Agreement.  McCauley shall not be required to deliver

excluded or discontinued Products, substitute new Products, or make changes in Products ordered, if manufacture of ordered Products is commenced prior to incorporation of changes in McCauley's or its suppliers' regular production. McCauley also reserves the right, at any time without notice and liability to Service Center, to discontinue or suspend the manufacture of any Products.

7.    **TAXES AND DUTIES**.  As Products sold by McCauley to Service Center are for resale, no sales, use, excise, turnover, stamp, or other taxes are included in McCauley's prices to Service Center. If, as a result of any such sales, delivery, use, or transfer of Products by McCauley or Service Center, any such taxes, duties, and charges are levied against McCauley, then Service Center agrees to pay such taxes, duties, and charges, to prepare all reports in connection therewith, and to reimburse, indemnify, and hold McCauley harmless from all such taxes, penalties, duties, charges, attorney fees, and costs incurred by or levied against McCauley.

8.    **U.S. EXPORT REGULATION COMPLIANCE**.  The U.S. government maintains and publishes lists of countries, companies, and individuals, for which exportation or reexportation of commercial and military Products is restricted or prohibited.  Internet addresses for these lists are set forth in Paragraph B.5.  Service Center is hereby notified that the export, reexport, or diversion of any Product contrary to U.S. law is prohibited.  Service Center warrants to McCauley, acknowledgment and understanding of the applicable U.S. export regulation(s) and accepts full legal responsibility for the lawful export, reexport, or diversion of any Product purchased from McCauley.


## D. TERMINATION

1.    **BY EXPIRATION OF TERM OR SUPERSEDING AGREEMENT**.   This Agreement becomes effective on the date of its execution by McCauley and shall continue in force until midnight, December 31, 2003, unless otherwise terminated as provided herein.   Subject to any applicable statute or law, this Agreement shall terminate upon expiration of its term, upon the execution of a superseding Agreement, or as herein specified, whichever occurs first. McCauley has no obligation to offer Service Center a McCauley Service Center Agreement for any period subsequent to the expiration of this Agreement.   Service Center has no obligation to enter a new McCauley Service Center Agreement and may, without any notice to McCauley, decline to do so.

McCauley shall consider Service Center's failure to return this Agreement and all Exhibits, fully executed by Service Center, prior to December 31, 2002, to be Service Center's intention not to offer to enter into this Agreement and, further, Service Center's intention to allow its relationship with McCauley to expire.

2.    **TERMINATION BY SERVICE CENTER**.  In accordance with applicable law, Service Center may terminate this Agreement without cause by providing McCauley 30 days prior written notice.

3.   **TERMINATION BY McCAULEY**.  McCauley may terminate this Agreement or not offer a new agreement to Service Center without cause by providing Service Center 30 days written notice to the Service Center address specified in Exhibit C, subject to applicable laws, if any, concerning termination of this Agreement or McCauley's obligation to offer a new agreement.

4.   **TERMINATION IMMEDIATELY BY McCAULEY**.  In accordance with applicable law, McCauley may terminate this Agreement immediately by providing written notice to Service Center in the event of:

(a)   Any assignment or attempted assignment of this Agreement or any right or obligation hereunder, or any change or attempted change prohibited by Paragraph A.4. without prior written approval of McCauley;

(b)   Disparagement of McCauley, its employees, or of McCauley's Products by Service Center or Service Center's agents or employees;

(c)   Service Center's failure to meet, fulfill, or maintain the Service Center requirements as set forth or incorporated herein;

(d)   Failure to comply with payment terms for any items purchased directly from McCauley;

(e)   Knowledge by McCauley that Service Center has violated or caused McCauley to violate the U.S. Foreign Corrupt Practices Act in connection with the sale and/or distribution of Products and/or related services or any failure of Service Center or its agents or representatives to comply with any other applicable laws;

(f)   Falsification of any records or reports by Service Center; and/or

(g)   Termination of employment, death or adjudication of incapacity of any key management official of Service Center, or of the individual or a member of the partnership, if Service Center is an individual proprietorship or partnership.

5.   **SUMS DUE McCAULEY**.  Upon termination of this Agreement, Service Center will immediately pay all sums due McCauley.

6.   **UNFILLED ORDERS**.  Except as provided in Paragraph D.7., unless otherwise mutually agreed in writing within seven days of termination, termination shall automatically cancel all unfilled Product orders placed by Service Center, and McCauley shall be released from any liability to Service Center because of such orders. Service Center agrees no one shall be liable to Service Center if Products covered by its canceled orders are subsequently sold to another party.

7.   **NO REPURCHASE OR REIMBURSEMENT**.   Upon termination of this Agreement, McCauley shall have no obligation to repurchase or reimburse Service Center for Products and related items obtained pursuant to this Agreement.  However,