McCauley retains the right of first refusal to purchase a portion or all the Products to be divested, purchased under this Agreement, at the Service Center's acquisition cost. Said purchase option may be exercised, in writing, by McCauley within 90 days of receipt of Service Center's written notice of the Products and related items to be divested. McCauley's right of first refusal survives the termination or expiration of this Agreement.

McCauley shall have no obligation to repurchase or reimburse for any Warranty service begun after termination or expiration of this Agreement unless expressly required by applicable law.

8.   **TRADEMARKS, SERVICE MARKS, SIGNS, AND SYMBOLS**. Upon expiration or termination of this Agreement, Service Center agrees to discontinue immediately the use of all McCauley Marks, and names, trademarks, service marks, signs or symbols used or adopted by McCauley or closely resembling those used or adopted by McCauley or anything else representing Service Center as a McCauley service center.

If a new agreement is not consummated, and if Service Center fails to voluntarily remove signs reflecting and/or containing Cessna Mark(s) within 30 days of the effective date of termination or expiration of this Agreement causing McCauley to have such signs removed, Service Center agrees to pay any and all costs, expenses and attorney fees incurred by McCauley in accomplishing removal of said McCauley Marks from Service Center, its assigns or successor's use.

Service Center agrees to indemnify, defend, and hold McCauley harmless for any and all claims, damages, costs, expenses, and attorney fees incurred by McCauley as a result of the improper continued use by Service Center of any McCauley Marks.

### E. GENERAL

1.   **LEGAL RELATIONSHIP AND INDEMNITY**. The relationship created by this Agreement between McCauley and Service Center is that of independent contractor. Under no circumstances shall Service Center be considered an agent, partner, or joint venturer of McCauley.

Service Center is not granted any express or implied right or authority to assume or create any obligation or responsibility on behalf of or in the name of McCauley or to bind McCauley in any manner or thing whatsoever. Service Center agrees to indemnify and hold McCauley harmless from any and all claims of any nature whatsoever made against McCauley because of Service Center's representations, negligent acts, failure to act properly, and/or omissions.

2.   **INCORPORATED DOCUMENTS**. All Exhibits including the Organization Form, Exhibit A; Signature Authorization Sheet, Exhibit B; General Information Data Sheet, Exhibit C; Export Compliance Agreement, Exhibit D; and Annual Representative Foreign Corrupt Practices Act Certification, Exhibit E, as completed by Service Center are incorporated herein by reference and are hereby made a part of this Agreement.

3.  **CAUSES BEYOND CONTROL OF PARTIES**. Neither McCauley nor Service Center shall be liable for failure to perform its part of this Agreement when the failure is due to accidents, acts of God, strikes or labor disputes, acts, laws, rules or regulations of any government or government agency, fires, floods, delays or failures in delivery of carriers or suppliers, shortages of material or other industrial disturbance, wars, riots or insurrections, or other causes beyond the control of the party failing to perform.

4.  **CONTROLLING LAW**. Service Center and McCauley expressly agree to exclude from this Agreement the United Nations Convention on Contracts for the International Sale of Goods, 1980, and any successor thereto. This Agreement shall be governed in all respects and shall be construed, and the legal relationships between the parties shall be determined, in accordance with applicable commercial law of the State of Kansas, U.S., including, but not limited to, the Uniform Commercial Code, as the same may be enacted and in force from time-to-time in that jurisdiction. The Kansas Consumer Protection Act (KSA 50-623, et seq.), as may be in effect from time-to-time, shall not apply to this Agreement or the parties hereto. Service Center expressly agrees to be subject to and not object to the jurisdiction and venue of Kansas and/or Ohio courts. The parties agree to exclude the Kansas conflicts of law provisions from this Agreement. If any provision of this Agreement contravenes any law, including the law of the place of performance, such provision shall be deemed not to be a part of this Agreement and the remainder of this Agreement shall be valid and binding as though such provision was not included. To the extent a provision of this Agreement would be enforceable under applicable law with modification to conform to the requirements of such law, the parties agree to negotiate in good faith for a written modification of this Agreement promptly upon discovery of the nonconformity and to perform and accept performance of the Agreement as modified to conform to applicable law.

5.  **WAIVER**. The failure of either party to require performance by the other party of any provision of this Agreement shall in no way affect its right to require such performance at any time thereafter, neither shall the waiver by either party of a breach of any provision of this Agreement constitute a waiver of any succeeding breach of the same or any other provision nor shall it constitute a waiver of the provision itself.

6.  **ARBITRATION**. All disputes arising from or in connection with this Agreement shall be submitted under Kansas law to binding arbitration held inWichita, Kansas, in the English language, by three independent arbitrators in accordance with the rules of the American Arbitration Association pursuant to the procedure set forth below. Either party may demand such arbitration in writing, which demand shall include the name of the arbitrator appointed by the party demanding arbitration and a statement of the matter in controversy.

Within 30 days after such demand, the other party shall name its arbitrator and the two arbitrators so selected shall select a third arbitrator within ten days or, in lieu of an agreement on the third arbitrator by the two arbitrators so appointed, a third arbitrator shall be appointed by the American Arbitration Association. If a second arbitrator is not selected within the time provided, the first arbitrator shall serve as sole arbitrator. The arbitrators shall have the power to determine the procedure to be

followed, whether discovery is to be allowed and to what extent, and to establish a schedule for resolving the controversy, but they shall have no power to alter, change, amend, modify, or subtract from, any of the provisions of this Agreement or to award any punitive or exemplary damages. The decision of a majority of the arbitrators or the decision of the sole arbitrator if only one is selected shall be the final arbitration decision. All decisions shall be in writing. The parties agree that the provisions hereof shall be a complete defense to any suit, action, or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising out of this Agreement, that judgment may be rendered in any court of competent jurisdiction on any award made by the arbitrator(s) pursuant to this Agreement, and that the arbitration provisions hereof shall survive the termination of this Agreement for any reason. Notwithstanding any provision to the contrary, nothing in this paragraph shall prevent McCauley from obtaining judicial enforcement under Paragraphs B.6.(d), B.10., C.2., C.7., D.8., and E.1.

7. **NOTICES**. Any notices to McCauley required or permitted to be given hereunder shall be in writing (unless otherwise specifically provided herein) and shall be sufficiently given if delivered personally or transmitted by facsimile, courier service, or mailed by registered or certified mail, return receipt requested, postage prepaid, to the McCauley address specified in this paragraph. In all cases where a facsimile is transmitted, both Parties agree to provide the other with originals of the facsimile documents by courier service within one week of the date of facsimile transmittal. The date of effective notice is the date of receipt of the facsimile or the date of personal delivery of the document or the date of receipt of the document by certified mail, registered mail or courier service, unless of course the documents were originally sent by facsimile. A written notice shall be considered delivered even if the other party does not accept delivery and the date of receipt of any mailing of any notice shall be counted in computing the notice period. Notices to Service Center should be sent to the General Manager at the business address provided in Exhibit C. Notices to McCauley should be sent to the Director of Product Support, at McCauley Propeller Systems, 3535 McCauley Drive, Vandalia, Ohio 45377 (Facsimile No. 937/890-6001).

8. **REMEDIES**. Except as provided in Paragraphs B.6.(d), B.10., C.2., C.7., D.8., and E.1., the parties agree in any dispute, whether resolved by arbitration or otherwise, each party will pay its own expenses of arbitration and/or litigation, including, without limitation, attorney fees, arbitrator fees, court costs, and other expenses.

9. **ENTIRE AGREEMENT**. Except as specifically stated herein, all understandings and agreements between the parties relative to the Products covered by this Agreement are contained herein or in the documents incorporated herein by reference. No change to this Agreement shall be valid or binding on either party until reduced to writing and signed in accordance with Paragraph E.10.

10. **SIGNATURES**. This Agreement is only valid when it contains, with respect to Service Center, the signature of the owner, if an individual proprietorship; the signature of one of the general partners, if a partnership; or the signature of a duly authorized officer of Service Center, if a corporation or limited liability company; and, with respect to McCauley, the signature of an authorized employee of McCauley. The signatories to

this Agreement verify that they have read the complete Agreement, understand its contents, and have full authority to bind and hereby do bind their respective party.

The parties hereto have signed this Agreement, which is finally executed at Wichita, Kansas, U.S., in duplicate originals.

EAST COAST PROPELLERS PTY LTD
(SERVICE CENTER's Legal Name)

_____ (Signature)

Title: MANAGING DIRECTOR

AGREEMENT OFFER DATE: 28/11/02

CESSNA AIRCRAFT COMPANY d/b/a McCauley Propeller Systems

_____ (Accepted By)

Title: Director, Propeller Aircraft Customer Service

ACCEPTANCE AND AGREEMENT EFFECTIVE DATE: May 12, 2003

## EXHIBIT A

## ORGANIZATION FORM
(Please Type)

Service Center's Legal Name: <u>EAST COAST PROPELLERS PTY LTD</u>

Check applicable box:
- [x] Privately Owned Corporation
- [ ] Publicly Held Corporation
- [ ] Sole Proprietorship
- [ ] Partnership
- [ ] Limited Liability Company

### BUSINESS REFERENCES, do not use a McCauley reference
(name, address, telephone number, email address):

1. AIRCRAFT ACCESSORY SERVICES, Anderson Drive, Parafield Airport South Australia    Ph: 61 8 8258 3033

2. QANTAS DEFENCE SERVICES, 361 Milperra Road, Bankstown NSW 2200    Ph: 61 2 9772 8888

3. AIRCRAFT PROPELLERS & SPARES, Bld 127 Third Street, Moorabbin Airport, VIC 3194    Ph: 61 3 9580 2034

### FINANCIAL ORGANIZATION:

| Names of ALL STOCKHOLDERS (* & **) of SERVICE CENTER regardless of financial interest | Title, if any | Percent of Ownership | Current Government Positions Held and Applicable Country*** |
|---|---|---|---|
| JOHN A. MARKS | MANAGING DIRECTOR | 50% | NONE |
| ELLEN M. MARKS | DIRECTOR | 50% | NONE |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Names of ALL DIRECTORS of SERVICE CENTER regardless of financial interest | Title | Percent of Owner-ship | Current Government Positions Held and Applicable Country*** |
|---|---|---|---|
| JOHN MARKS | MANAGING DIRECTOR | 50% | NONE |
| ELLEN MARKS | DIRECTOR | 50% | NONE |

| Names of ALL OFFICERS of SERVICE CENTER regardless of financial interest | Title | Percent of Owner-ship | Current Government Positions Held and Applicable Country*** |
|---|---|---|---|
| JOHN MARKS | MANAGING-DIRECTOR | 50% | NONE |
| ELLEN MARKS | DIRECTOR | 50% | NONE |

IF ANY OF YOUR STOCKHOLDERS ARE CORPORATIONS, PLEASE COMPLETE THIS FORM FOR EACH SUCH ENTITY. WE MUST BE PROVIDED INFORMATION ON THE INDIVIDUALS WHO ARE THE ULTIMATE OWNERS OF YOUR COMPANY.

* IF YOU ARE A <u>PRIVATELY OWNED CORPORATION</u>, YOU <u>MUST SHOW 100%</u> OF ALL STOCKHOLDERS, THEIR PERCENTAGE OF STOCK OWNERSHIP, AND THEIR GOVERNMENT JOBS, IF ANY.

** IF YOU ARE A <u>PUBLICLY HELD CORPORATION</u>, THEN <u>IDENTIFY STOCKHOLDERS OWNING 5% OR MORE OF YOUR STOCK</u>, AND THE COUNTRIES AND GOVERNMENT JOBS, IF ANY, HELD BY SUCH STOCKHOLDERS. STOCKHOLDERS OWNING LESS THAN 5% DO NOT NEED TO BE LISTED.

*** THIS COLUMN MUST BE COMPLETED. If no Government positions are held by the individual(s), then the word "NONE" should be inserted in the blank space.

*IF INSUFFICIENT SPACE TO RESPOND, PLEASE ATTACH ADDITIONAL PAGES.*

## EXHIBIT B

## SIGNATURE AUTHORIZATION SHEET
(Please Type)

Service Center's Name: ___EAST COAST PROPELLERS PTY LTD___

This is Service Center's authorization for McCauley to honor the signatures of the following names for warranty claims from Service Center:

*(Please type names of individuals authorized to contractually commit Service Center [signatures are not required].)*

1. __JOHN MARKS__           4. _____

2. __IAN VERRALL__          5. _____

3. __DEBORAH SMITH__        6. _____

The individuals identified above are not authorized to commit McCauley in any way or manner.

**Service Center agrees to pay and to be liable for payment of sums due McCauley as a result of written or oral transactions submitted by any individual identified above.**

SERVICE CENTER:

_____
(signature)

NAME: ___JOHN A. MARKS___
(print or type)

TITLE: ___MANAGING DIRECTOR___
(print or type)

DATE ___28TH NOVEMBER 2002___

## EXHIBIT C

## GENERAL INFORMATION DATA SHEET
(Please Type)

### LEGAL NAME AND BUSINESS ADDRESS:

Name: EAST COAST PROPELLERS PTY LTD
Street: BLD 641 KLEMM STREET
Airport: BANKSTOWN AIRPORT
City: BANKSTOWN    State: NEW SOUTH WALES
Postal Code: 2200    COUNTRY: AUSTRALIA

### MAILING ADDRESS:

Name: EAST COAST PROPELLERS PTY LTD
Street: BLD 641 KLEMM STREET
City: BANKSTOWN AIRPORT    State: NSW
Postal Code: ~~2200~~    COUNTRY: AUSTRALIA

### SHIPPING ADDRESS: (check here if for freight forward [ ])

Name: EAST COAST PROPELLERS PTY LTD
Street: BLD 641 KLEMM STREET
City: BANKSTOWN AIRPORT    State: NSW
Postal Code: 2200    COUNTRY: AUSTRALIA

### ADDITIONAL INFORMATION:

Telephone: 61 2 9791 0246    Facsimile: 61 2 9791 0057
Internet/E-mail Address: eastcoastpropellers@bigpond.com
Primary Contact: JOHN MARKS
Internet website URL: www.eastcoastpropellers.com.au

### REMARKS:

## EXHIBIT D

## EXPORT COMPLIANCE AGREEMENT

Service Center's Legal Name: __EAST COAST PROPELLERS PTY LTD__

Service Center hereby notifies Cessna Aircraft Company that it assumes full and complete responsibility for the export of Products supplied by Cessna Aircraft Company, including, but not limited to, export reporting, determining licensing requirements, and obtaining licensing authorities. Service Center, if it is a foreign citizen or corporation, understands that its freight forwarder, a United States' corporation, will be acting as the U.S. Exporter of Record on behalf of Service Center. Service Center acknowledges the freight forwarder designated as the U.S. Exporter has been notified, is in concurrence with its role, and has full authority to perform its obligations on behalf of Service Center.

Service Center: __EAST COAST PROPELLERS PTY LTD__

Signature: _[signature]_

Name: __JOHN MARKS__
(print or type)

Title: __MANAGING DIRECTOR__
(print or type)

Date: __28.11.02__

# McCAULEY SERVICE CENTER AGREEMENT /2-/9-0?
## 2004 through 2006

This McCAULEY SERVICE CENTER AGREEMENT ("Agreement") is made and entered into by and between Cessna Aircraft Company, a Kansas corporation, doing business as McCauley Propeller Systems, hereinafter referred to as "McCauley," with its registered address at 5800 E. Pawnee, Wichita, Kansas 67218, United States of America ("U.S."), and

___EAST COAST PROPELLERS PTY LTD___
(Legal Name of Service Center)

- ☐ a sole proprietorship
- ☐ a partnership
- ☐ a corporation organized under the laws of _____
- ☒ a limited liability company

with its business address at

___64 KLEMM STREET___
(Street Address)

___BANKSTOWN AIRPORT NSW 2200___
(City, County, State/Province, Postal Code)

___AUSTRALIA___
(Country)

hereinafter referred to as "Service Center."

The purpose of this Agreement is to establish Service Center as the authorized customer support and service representative for McCauley propellers and accessories referred to in Service Center's appointment. This Agreement also sets forth the responsibilities of McCauley to Service Center and the responsibilities of Service Center to McCauley.

Service Center hereby acknowledges, agrees, and accepts the responsibility for providing the highest possible standard of customer support and service to all owners of McCauley propellers and accessories included in Service Center's appointment.

IN CONSIDERATION of the foregoing and the mutual covenants and agreements of the parties, McCauley and Service Center agree as follows:

## A. SERVICE CENTER'S APPOINTMENT AND RESPONSIBILITIES

1. **APPOINTMENT**. Subject to the terms and conditions of and for the term of this Agreement, McCauley appoints Service Center as a McCauley Service Center for designated models of McCauley propellers, governors and de-ice accessories ("Products") as identified below:

    ☑ Propellers ✓

    ☐ Governors

    McCauley grants to Service Center the nonexclusive, nontransferable, and non-assignable privilege to conduct service on applicable propeller models and to purchase, sell, and service Products at the specified facility and at no other location.

    Service Center hereby accepts such appointment and agrees to provide, to the satisfaction of McCauley, prompt and efficient maintenance and service at reasonable prices and terms on a consistent and continuing basis for Products. The failure of Service Center to provide such maintenance and service shall, at the discretion of McCauley, be a basis for the termination of this Agreement.

2. **NONEXCLUSIVE AREA**. Service Center acknowledges and agrees that McCauley reserves, without liability or obligation to notify Service Center, the right to make direct sales and dispositions of Products and to provide any service to anyone.

    McCauley also reserves the right to appoint others at any location to sell or dispose of any Products and/or any other parts and services to anyone without liability or obligation to notify Service Center.

3. **NON-FRANCHISE AGREEMENT**. McCauley and Service Center agree that Service Center does not by this Agreement become a franchisee of McCauley and that there is no required payment of a franchise fee or any other charge to McCauley, directly or indirectly, in connection with Service Center's appointment.

4. **CHANGES IN OWNERSHIP, MANAGEMENT, OR TRANSFER**. This Agreement is a personal service contract and is entered into in reliance upon and in consideration of the personal qualifications of the individuals who will substantially participate, both of record and beneficially, in the ownership and/or active management of Service Center's operation.

    Service Center warrants that the information contained on the Organization Form, Signature Authorization Sheet, and General Information Data Sheet, hereinafter

respectively referred to as Exhibits A, B, and C, is complete, true, and correct. If a change in control of Service Center or a change in the McCauley business-related management of Service Center as shown on such Exhibit A occurs, Service Center shall immediately notify McCauley and McCauley, in its sole discretion, may terminate this Agreement.

Service Center agrees it shall immediately notify McCauley if, during the term of this Agreement, any of its management, directors, and/or stockholders accepts employment, which is not identified on Exhibit A, with any government other than the government of the U.S.

5.   **BUSINESS REFERENCES**. Service Center shall provide McCauley, in Exhibit A, with five business references. McCauley shall have the right to contact the business references, conduct interviews, and request information pertaining to Service Center from each of the business references.

6.   **ASSIGNMENT**. No property right or interest in the subject matter of this Agreement, either direct or indirect, is created, sold, or transferred hereby. Service Center agrees this Agreement and the licensed privileges herein granted cannot be transferred, assigned, hypothecated, or otherwise conveyed or encumbered without the prior written approval of McCauley, which approval may be granted or withheld at the sole discretion of McCauley.

7.   **INSURANCE**. Service Center agrees to secure and maintain at all times:

(a)   Products and completed operations liability insurance with at least a combined single limit of One Million Dollars ($1,000,000).

(b)   Each type of insurance shall have a combined single limit, shall not have a per seat or per occurrence limit other than the aggregate, and shall be placed with reputable companies acceptable to McCauley.

(c)   Service Center agrees to provide Cessna with a Certificate of Insurance, or other evidence, acceptable to Cessna, of the required amount of products and completed operations liability insurance. The Certificate of Insurance shall include the statement, "Issuer will provide Cessna with 30 days advance written notice in the event of insurance cancellation; however, if cancellation is due to non-payment, then written notice will be provided Cessna within ten days." Service Center shall continue to provide Certificates of Insurance to Cessna throughout the Term of this Agreement to prove sustained insurance coverage in the proper amount.

## B. OPERATIONAL REQUIREMENTS

1. (a) **FACILITIES AND LOCATION**. Throughout the term of this Agreement, Service Center agrees to own or lease facilities satisfactory to McCauley and to keep such facilities neat, orderly, and businesslike so that they reflect a positive and professional image for Service Center and McCauley. Service Center shall not directly or indirectly establish any other place of business for the sale or service of Products covered by this Agreement.

(b) **ON-SITE INSPECTION**. Service Center agrees McCauley has the right, at McCauley's expense, to inspect, without prior notice, all Service Center facilities and procedures. Such inspection may include, but is not limited to, overhaul procedures, equipment, tools, knowledge of warranty procedures, service information, parts tracking procedures, and FAA regulatory compliance.

2. **OPEN ACCOUNT**. Service Center agrees to establish and maintain an open account with McCauley in accordance with McCauley credit policies which are in effect from time-to-time, and also agrees to maintain at all times during the term of this Agreement a financial structure and operating capital satisfactory to McCauley.

3. **SALES PROMOTION AND TRAINING PROGRAMS**. Service Center agrees to fully support, participate in, and send a representative to no-charge McCauley sales promotion and training programs as announced by McCauley from time-to-time. Service Center also agrees to attend training courses to assure employee service competence on Products and develop customer service skills. Service Center agrees to demonstrate service competence on Products by its technicians. All no-charge McCauley technical training must have been attended by at least one representative of Service Center within five years of the expiration date of this Agreement.

4. **SERVICE DEPARTMENT**.

(a) Service Center agrees to own, maintain, and operate a service department with trained personnel, service parts, service equipment, technical information, and all other materials which meet McCauley's service requirements and all revisions thereof. This requirement includes Internet access, Internet e-mail access, a working telefax machine, and a digital camera.

(b) Service Center shall be considered to have initially satisfied the requirements of Paragraph B.4.(a) if Service Center has submitted orders for required items from any available source for delivery as soon as possible and has scheduled required no-charge McCauley training of service personnel for completion as soon as possible. Failure of Service Center to purchase and maintain required items from any available source or to complete required no-charge McCauley training as scheduled shall be grounds for immediate termination of this Agreement by McCauley.

(c)     Service Center is strongly encouraged to use only McCauley factory-original Products in all repairs and overhaul work.

5.  **LAWS AND REGULATIONS**.  Service Center agrees to fulfill all applicable government license requirements and comply with all applicable laws and regulations.

Service Center agrees to comply with all U.S. laws and regulations including, without limitation, those that control the export or re-export of commercial and military products and technology that are obtained from McCauley under this Agreement. Specifically, Service Center agrees to comply with the U.S. Export Administration Act (50 USC 2401, et seq.) and the U.S. Arms Export Control Act of 1976 (22 USC 2751, et seq.), which control the export and re-export of commercial and military goods, respectively, as well as any and all applicable U.S. sanctions and/or embargoes including regulations promulgated by the Office of Foreign Assets Control of the U.S. Department of Treasury.

Service Center acknowledges that information regarding U.S. export rules, regulations, and restrictions are readily available from computer internet addresses, including the U.S. Department of State, Office of Defense Trade Controls at http://www.pmdtc.org; the U.S. Government Printing Office at http://www.access.gpo.gov; the U.S. Department of Commerce, Bureau of Export Administration at http://www.bxa.doc.gov; and the U.S. Department of the Treasury, Office of Foreign Assets Control at http://www.treas.gov/ofac.

Service Center affirms that it has not made and agrees that it will not make or promise to make, in connection with the transactions contemplated by this Agreement or in connection with any other business transactions involving McCauley, any payment or transfer anything of value, directly or indirectly: (i) to any government official or candidate for government office or government employee (including employees of government-controlled enterprises); (ii) to any political party, official of a political party, or candidate for political party office; (iii) to an intermediary for payment to any of the foregoing; (iv) to any officer, director, employee, or representative of any actual or potential customer of McCauley; (v) to any officer, director, or employee of Textron Inc., Cessna Aircraft Company, or any of their affiliates; or (vi) to any other person or entity if such payment or transfer would violate the laws of the country in which made or the laws of the U.S.  It is the intent of the parties that no payments or transfers of value shall be made which have the purpose or effect of public or commercial bribery, acceptance of or acquiescence in extortion, kickbacks, or other unlawful or improper means of obtaining business.  This provision shall not, however, prohibit normal and customary business entertainment or the giving of business mementos of nominal value.

The U.S. Foreign Corrupt Practices Act of 1977, as amended, made it unlawful, among other things, for a U.S. company or anyone acting on its behalf to make or offer payment, promise to pay, or authorize the payment of anything of value to: (i) any officer or candidate for office or employee of, or any person acting in any official capacity for, a foreign government or any department, agency, or corporation thereof (including a

government-controlled enterprise), or any foreign political party, party official, or candidate for political party office or (ii) any person, while knowing or having reason to know that all or a portion thereof will be offered, given or promised, directly or indirectly, to any government official for the purpose of: (1) influencing any act or decision by such person in his or her official capacity, (2) inducing him or her to use his or her influence with a foreign government to affect, either by action or inaction, any act or decision of such government to obtain or retain business for any person, or (3) securing any improper advantage. Service Center acknowledges receipt of a copy of the U.S. Foreign Corrupt Practices Act.

Service Center is required to provide McCauley with a signed copy of the Annual Representative Foreign Corrupt Practices Act Certification, Exhibit F, prior to acceptance by McCauley of this Agreement and on or before December 31 of each year within the term of this Agreement. By executing the Certification, Service Center acknowledges and confirms its understanding of the provisions of the Act, and agrees to comply with those provisions and to take no action that might cause McCauley to be in violation of such Act.

Service Center affirms that it has disclosed to McCauley that no government official has any ownership interest, direct or indirect, in Service Center or in the contractual relationship established by this Agreement. In the event that during the term of this Agreement there is acquisition of an interest in Service Center or in this Agreement by a government official, Service Center agrees to make immediate disclosure to McCauley and that this Agreement will become subject to immediate termination upon written notice to Service Center. For the purposes of this Agreement, "government official" means any officer or employee of a government or any department, agency, corporation, or instrumentality thereof (including a government-controlled enterprise), or of a public international organization; or any person acting in an official capacity on behalf of any such government, department, agency, corporation or instrumentality, or public international organization, or of any political party, official of a political party, or candidate for government or political party office, including immediate family members or nominees of such government or political party official or candidate.

Service Center affirms that it has obtained assurances from any agent, representative, consultant, or other party, retained by or paid by Service Center in connection with its sale of the Products that they will comply with the U.S. Foreign Corrupt Practices Act and will take no action that might cause McCauley to be in violation of such Act, and Service Center also agrees to obtain such assurances from any such party retained in the future.

In the event McCauley notifies Service Center that McCauley has information or belief that there may be a violation of the U.S. Foreign Corrupt Practices Act, the U.S. Export Administration Act, the U.S. Arms Export Control Act of 1976 or any other applicable U.S. law by Service Center or by any agent, representative, consultant, or other party, retained by or paid by Service Center in connection with the sale of

Products, Service Center agrees to fully cooperate by providing full and complete responses to McCauley's inquiries as to the possible violation and, further, to grant McCauley and/or its agents access and the right to audit Service Center's books, records, and other relevant documentation.

Payments, transfers of value, or promises to make payments or transfers of value by Service Center in violation of the U.S. Foreign Corrupt Practices Act or any provision of this Agreement, or reasonable cause to believe that such payments or transfers of value or promises are being made, shall be cause for automatic termination of this Agreement. McCauley may retain from or charge to Service Center an amount equal to the amount earned or to be earned by Service Center as a result of any transaction or matter from which such violation arose as liquidated damages and not as a penalty.

6.    (a)   **LIMITED WARRANTIES, WARRANTY DISCLAIMER, AND DAMAGE LIMITATION**. EXCEPT FOR THE EXPRESS TERMS OF McCAULEY'S WRITTEN LIMITED WARRANTIES PERTAINING TO McCAULEY PRODUCTS, AS MAY BE REVISED FROM TIME-TO-TIME, McCAULEY MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR OTHERWISE WHICH EXTEND BEYOND THE FACE HEREOF OR THEREOF. McCAULEY SPECIFICALLY EXCLUDES AND DISCLAIMS ANY AND ALL REPRESENTATIONS AND/OR WARRANTIES NOT INCLUDED WITHIN THE FOUR CORNERS OF THIS AGREEMENT. THE WRITTEN WARRANTIES OF McCAULEY ACCOMPANYING ITS PRODUCTS ARE IN LIEU OF ANY OTHER OBLIGATION OR LIABILITY TO PURCHASERS OR ANY THIRD PARTY WHATSOEVER BY REASON OF THE MANUFACTURE, SALE, LEASE, OR USE OF THE WARRANTED PRODUCTS AND NO PERSON OR ENTITY IS AUTHORIZED TO MAKE ANY ADDITIONAL REPRESENTATIONS OR WARRANTIES OR TO ASSUME ANY FURTHER OBLIGATIONS ON BEHALF OF McCAULEY. THE REMEDIES OF REPAIR OR REPLACEMENT SET FORTH IN McCAULEY'S WRITTEN LIMITED WARRANTIES ARE THE ONLY REMEDIES UNDER SUCH WARRANTIES. IN NO EVENT SHALL McCAULEY BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS OR GOODWILL, LOSS OF USE, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS, ETC.

<u>THE LAWS OF SOME COUNTRIES AND/OR STATES DO NOT PERMIT CERTAIN LIMITATIONS ON WARRANTIES OR REMEDIES. IN THE EVENT SUCH A LAW APPLIES, THE FOREGOING EXCLUSIONS AND LIMITATIONS ARE AMENDED INSOFAR, AND ONLY INSOFAR, AS REQUIRED BY SAID LAW.</u>

(b)   **WARRANTY ADMINISTRATION**. McCauley agrees to reimburse Service Center at its business address for warranty parts and labor, if applicable, provided by Service Center in accordance with published McCauley warranty

policies and procedures. Service Center agrees to fully comply with the terms and conditions of McCauley's Warranty.

(c) **WARRANTY AUDIT**. Service Center agrees McCauley has the right, without notice, to inspect and audit Service Center's warranty records; and, Service Center expressly agrees to make such records available to McCauley during normal business hours.

(d) **CARE OF OWNER**. McCauley and Service Center recognize that customers may reasonably expect that parts sold by Service Center to repair McCauley Products are Products supplied by McCauley. Service Center will not represent that parts are genuine McCauley Products unless they have been supplied by McCauley. In addition, Service Center agrees it will not represent that McCauley has concurred that parts supplied by parties other than McCauley are equivalent to genuine McCauley Products when McCauley has not done so. If Service Center sells or installs a part that has not been supplied by McCauley, then Service Center shall advise the customer in writing that McCauley did not supply the part and that it is not covered by a McCauley warranty. If Service Center uses or sells a part not supplied by McCauley, Service Center agrees that it shall assume the defense of McCauley in any lawsuit related to the sale, installation or use of the part and it further agrees to indemnify and hold McCauley harmless for any loss, damage or expense, including but not limited to attorney fees, expenses and costs which McCauley incurs as a result of, or in connection with the sale, installation or use of the part supplied by Service Center which was not originally furnished to Service Center by McCauley. Notwithstanding any other wording in this Agreement, McCauley agrees that Service Center, as a result of this Agreement, has no duty to defend, indemnify or hold McCauley harmless for any liability arising from McCauley's design, manufacture and/or maintenance of any Products. Service Center guarantees that owners of Products who request service will receive the full benefit of McCauley's service programs. Accordingly, Service Center agrees to:

>  (1) Supply owners of Products, regardless of where such Products were purchased, with Warranty inspections, parts, and labor, at no charge and to administer the applicable McCauley Warranties;

>  (2) Perform services necessary to comply with McCauley's service manuals, service bulletins and service letters and to administer all related credit programs in accordance with the terms and conditions set forth in such service manuals, service bulletins, service letters, and other correspondence from McCauley, including the performance of such services at no charge to the owner where applicable; and

>  (3) Ensure that McCauley's recommended service information and maintenance procedures are followed and all maintenance records are properly completed.

7. **ORDERS**. Service Center agrees to submit all orders in accordance with and subject to the terms and conditions set forth on McCauley's or McCauley's distributors' Purchase Order form. Service Center agrees to pay and be liable for all payment of all sums due under Purchase Orders submitted to McCauley or McCauley's distributors as a result of either written or oral transactions submitted by individuals identified by Service Center on the Signature Authorization Sheet, Exhibit B.

8. **FINANCE AND OTHER REPORTS**. Upon request from time-to-time and within 15 days of Service Center's receipt of McCauley's request, Service Center agrees to furnish to McCauley, in English, complete, accurate, and current financial statements, including a balance sheet, and supporting data, reflecting the true and actual financial condition of Service Center, and other reports as McCauley may reasonably require. McCauley agrees not to disclose such information to anyone except its parent, affiliates, auditors, and as required by law or court order.

9. **GENERAL AUDIT**. Service Center agrees McCauley has the right, at McCauley's expense, to inspect and audit Service Center's business records related to McCauley. Service Center agrees, at McCauley's request, to provide such business records to McCauley during normal business hours.

10. **SIGNS AND IDENTIFICATION**. Service Center agrees to obtain, display, and maintain at its business location a McCauley sign acceptable to and approved by McCauley. Signs and other identification may be acquired by the Service Center from McCauley or from independent sources PROVIDED THE SIGN MEETS McCAULEY's SPECIFICATIONS. Service Center is responsible for all costs incurred in obtaining the required McCauley sign. Service Center further agrees to remove all outdated or unacceptable McCauley identification within 30 days of notice by McCauley.

Service Center agrees to indemnify, defend, and hold McCauley harmless for any and all claims, damages, costs, expenses and attorney fees incurred by McCauley as a result of the improper continued use by Service Center, its assigns or successors, of any signs and identification identifying Service Center as an authorized facility of McCauley for anything beyond that which is authorized in this Agreement. Service Center further agrees to pay any and all costs, expenses, and attorney fees incurred by McCauley in accomplishing removal of said signs and identification if Service Center, its assigns or successors continue their improper use.

11. **TRADEMARKS**. McCauley grants to Service Center the nonexclusive, personal, and nontransferable right to use its trademark and trade name "McCAULEY®," service marks, logos, and symbols (collectively "McCauley Marks"), or any combination thereof, in connection with the service of Products at Service Center's appointed location and only for the term of this Agreement. Service Center agrees to install the McCauley trademark logo decal on all overhauled/repaired products as described in the appropriate McCauley repair/overhaul manuals in lieu of any other identifier. McCauley encourages Service Center to use the name "McCauley" in its business operations and

on its stationery, advertising, and business forms; however, Service Center shall not state or infer a higher level of service as a McCauley Service Center than its appointment under this Agreement in any advertising media, stationery or by any other means of promotion. Service Center shall not use the word "McCauley" in Service Center's legal name or as a part of its assumed, fictitious, or "doing business as" name, its internet domain name or any other firm or corporate designation for itself, or any other word adopted by McCauley for propellers, parts, accessories, or service, or any words, names, or combinations closely resembling them. Each use of the McCauley Marks shall bear the label "TM," "SM," or "®," as appropriate, or as McCauley may otherwise direct. It is expressly acknowledged and agreed that all goodwill arising from any use of the McCauley Marks inures to the sole benefit of McCauley.

12. **PROPRIETARY INFORMATION**. Any photocopying, duplication or distribution of proprietary information such as service manual excerpts, McCauley's Supplemental Type Certificate (STC) paperwork, service letters, service bulletins, etc., without express written permission from McCauley is prohibited. McCauley retains sole title to any and all proprietary information disclosed to Service Center by McCauley, regardless of the content of the information or the form of media used to make disclosure. By its disclosure, McCauley does not relinquish and Service Center does not obtain any rights of ownership, assignment, or license of the proprietary information. Any proprietary information disclosed by McCauley to Service Center is solely for Service Center's internal use in performing its obligations under this Agreement. Service Center shall ensure that all McCauley proprietary information, whether oral or written, is not disclosed to others. The obligation of Service Center to hold such information confidential shall survive the termination or expiration of this Agreement. Any knowledge or information which Service Center has disclosed or may hereafter disclose to McCauley shall not be deemed to be confidential or proprietary information and, accordingly, shall be acquired free from any restriction unless otherwise specifically agreed upon in writing by McCauley. Service Center shall return all proprietary information to McCauley within 30 days of termination or expiration of the Agreement.

Service Center further acknowledges that it will, during the term of this Agreement, receive access to information from McCauley of a confidential business nature regarding, but not limited to, the levels of inventory available in McCauley's parts distribution system. Service Center further acknowledges and agrees that such confidential information is competitively sensitive to McCauley. Therefore, Service Center agrees that it will not disclose, publish or release to any third person or entity any information in any form, whether oral, in writing or electronic, regarding McCauley's inventory, except that Service Center may advise an inquiring party regarding whether specific items are available in stock from McCauley.

## C. TERMS OF SALE

1. **PRICES**. McCauley agrees to sell Products to Service Center at the applicable McCauley Service Center prices in effect at the time of shipment and to furnish Service Center with schedules of such prices.

2. **PAYMENTS**. Payments by Service Center shall be made to McCauley in U.S. dollars per the terms stated on the invoice. The cost of transmitting funds and any exchange charges shall be borne by Service Center. If McCauley has to litigate or arbitrate to procure payments from Service Center, then McCauley and Service Center agree that all expenses of McCauley including, without limitation, attorney fees, arbitrator fees, court costs, and other costs are the sole responsibility of and will be paid by Service Center.

3. **DELIVERY, TITLE, AND RISK OF LOSS**. Unless Products are drop-shipped from a vendor, all Products will be prepared, packed, and delivered in accordance with the procedures set forth by McCauley. Delivery will be ExWorks (EXW, Incoterms 2000) shipping point as determined by McCauley. Service Center shall pay all other applicable charges such as special packing, transportation, duties, and taxes. Title and all risk of loss shall pass to Service Center at shipper's dock upon delivery of Products to Service Center, Service Center's agent, freight forwarder or carrier as the case may be. Service Center hereby grants McCauley and McCauley hereby retains a security interest in all Products and the right to repossess all Products purchased by Service Center from McCauley pursuant to this Agreement until it receives payment in U.S. dollars for the full amount of the Products' purchase price.

As applicable, McCauley shall be considered the U.S. Principal Party in Interest and Exporter of Record for those shipments that require a U.S. issued export license or are made directly by McCauley to a foreign country. In all other transactions, including a Routed Export, the Service Center shall be considered the U.S. Exporter of Record. It is Service Center's responsibility to ensure that the Shipper's Export Declaration is prepared and signed by Service Center or Service Center's U.S.-based authorized agent. Additionally, for Routed Export transactions, the Service Center will be required to provide McCauley with a signed copy of the Export Compliance Agreement, Exhibit D, prior to delivery by McCauley of any products to Service Center's named U.S. agent.

IN NO EVENT, SHALL McCAULEY BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES AND SUCH DAMAGES ARE SPECIFICALLY EXCLUDED FROM THIS AGREEMENT.

4. **PRODUCT INSURANCE**. Service Center may purchase freight insurance directly or from McCauley at the time of order placement. Recovery of losses due to loss or damage during shipment is the sole responsibility of Service Center.

5. **PRICE CHANGES**. McCauley shall have the right to change prices for Products and all other parts and accessories at any time and from time-to-time, without liability or