obligation to notify Service Center in advance. Such changed prices shall apply to all undelivered or unshipped Products.

6. **PRODUCT AND MODEL CHANGES**. McCauley reserves the right at any time, without notice and without liability to Service Center, to discontinue, change, and exclude any of its Products from this Agreement. McCauley shall not be required to deliver excluded or discontinued Products, substitute new Products, or make changes in Products ordered, if manufacture of ordered Products is commenced prior to incorporation of changes in McCauley's or its suppliers' regular production. McCauley also reserves the right, at any time without notice and liability to Service Center, to discontinue or suspend the manufacture of any Products.

7. **TAXES AND DUTIES**. As Products sold by McCauley to Service Center are for resale, no sales, use, excise, turnover, stamp, or other taxes are included in McCauley's prices to Service Center. If, as a result of any such sales, delivery, use, or transfer of Products by McCauley or Service Center, any such taxes, duties, and charges are levied against McCauley, then Service Center agrees to pay such taxes, duties, and charges, to prepare all reports in connection therewith, and to reimburse, indemnify, and hold McCauley harmless from all such taxes, penalties, duties, charges, attorney fees, and costs incurred by or levied against McCauley.

8. **U.S. EXPORT REGULATION COMPLIANCE**. The U.S. government maintains and publishes lists of countries, companies, and individuals, for which exportation or reexportation of commercial and military Products is restricted or prohibited. Internet addresses for these lists are set forth in Paragraph B.5. Service Center is hereby notified that the export, reexport, or diversion of any Product contrary to U.S. law is prohibited. Service Center warrants to McCauley, acknowledgment and understanding of the applicable U.S. export regulation(s) and accepts full legal responsibility for the lawful export, reexport, or diversion of any Product purchased from McCauley.

## D. TERMINATION

1. **BY EXPIRATION OF TERM OR SUPERSEDING AGREEMENT**. This Agreement becomes effective on the date of its execution by McCauley and shall continue in force until midnight, December 31, 2006, unless otherwise terminated as provided herein. Subject to any applicable statute or law, this Agreement shall terminate upon expiration of its term, upon the execution of a superseding Agreement, or as herein specified, whichever occurs first. McCauley has no obligation to offer Service Center a McCauley Service Center Agreement for any period subsequent to the expiration of this Agreement. Service Center has no obligation to enter a new McCauley Service Center Agreement and may, without any notice to McCauley, decline to do so.

McCauley shall consider Service Center's failure to return this Agreement and all Exhibits, fully executed by Service Center, prior to December 31, 2003, to be Service

Center's intention not to offer to enter into this Agreement and, further, Service Center's intention to allow its relationship with McCauley to expire.

2.     **TERMINATION BY SERVICE CENTER**.  In accordance with applicable law, Service Center may terminate this Agreement without cause by providing McCauley 30 days prior written notice.  Service Center has no obligation to enter a new McCauley service center agreement and may, without notice to McCauley decline to do so.

3.     **TERMINATION BY McCAULEY**.  In accordance with applicable law, McCauley may terminate this Agreement or not offer a new agreement to Service Center without cause by providing Service Center 30 days written notice to the Service Center address specified in Exhibit C, subject to applicable laws, if any, concerning termination of this Agreement or McCauley's obligation to offer a new agreement.

4.     **TERMINATION IMMEDIATELY BY McCAULEY**.  In accordance with applicable law, McCauley may terminate this Agreement immediately by providing written notice to Service Center in the event of:

     (a)     Any assignment or attempted assignment of this Agreement or any right or obligation hereunder, or any change or attempted change prohibited by Paragraph A.4. without prior written approval of McCauley;

     (b)     Disparagement of McCauley, its employees, or of McCauley's Products by Service Center or Service Center's agents or employees;

     (c)     Service Center's failure to meet, fulfill, or maintain the Service Center requirements as set forth or incorporated herein;

     (d)     Failure to comply with payment terms for any items purchased directly from McCauley;

     (e)     Knowledge by McCauley that Service Center has violated or caused McCauley to violate the U.S. Foreign Corrupt Practices Act in connection with the sale and/or distribution of Products and/or related services or any failure of Service Center or its agents or representatives to comply with any other applicable laws;

     (f)     Falsification of any records or reports by Service Center; and/or

     (g)     Termination of employment, death or adjudication of incapacity of any key management official of Service Center, or of the individual or a member of the partnership, if Service Center is an individual proprietorship or partnership.

5.     **SUMS DUE McCAULEY**.  Upon termination of this Agreement, Service Center will immediately pay all sums due McCauley.

6.    **UNFILLED ORDERS**.  Except as provided in Paragraph D.7., unless otherwise mutually agreed in writing within seven days of termination, termination shall automatically cancel all unfilled Product orders placed by Service Center, and McCauley shall be released from any liability to Service Center because of such orders.  Service Center agrees no one shall be liable to Service Center if Products covered by its canceled orders are subsequently sold to another party.

7.    **NO REPURCHASE OR REIMBURSEMENT**.    Upon termination of this Agreement, McCauley shall have no obligation to repurchase or reimburse Service Center for Products and related items obtained pursuant to this Agreement.  However, McCauley retains the right of first refusal to purchase a portion or all the Products to be divested, purchased under this Agreement, at the Service Center's acquisition cost. Said purchase option may be exercised, in writing, by McCauley within 90 days of receipt of Service Center's written notice of the Products and related items to be divested.  McCauley's right of first refusal survives the termination or expiration of this Agreement.

McCauley shall have no obligation to repurchase or reimburse for any Warranty service begun after termination or expiration of this Agreement unless expressly required by applicable law.

8.    **TRADEMARKS, SERVICE MARKS, SIGNS, AND SYMBOLS**.    Upon termination of this Agreement or expiration of this Agreement if a new Agreement is not consummated, Service Center agrees to discontinue immediately the use of all McCauley Marks, and names, trademarks, service marks, signs or symbols used or adopted by McCauley or closely resembling those used or adopted by McCauley or anything else representing Service Center as a McCauley service center.

If a new agreement is not consummated, and if Service Center fails to voluntarily remove signs reflecting and/or containing Cessna Mark(s) within 30 days of the effective date of termination or expiration of this Agreement causing McCauley to have such signs removed, Service Center agrees to pay any and all costs, expenses and attorney fees incurred by McCauley in accomplishing removal of said McCauley Marks from Service Center, its assigns or successor's use.

Service Center agrees to indemnify, defend, and hold McCauley harmless for any and all claims, damages, costs, expenses, and attorney fees incurred by McCauley as a result of the improper continued use by Service Center of any McCauley Marks.

9.    **PROPRIETARY INFORMATION**: The obligation of Service Station to hold such information confidential shall survive the termination or expiration of this Agreement.  Any knowledge or information, which Service Station has disclosed or may hereafter disclose to Cessna shall not be deemed to be confidential or proprietary information and, accordingly, shall be acquired free from any restriction unless otherwise specifically agreed upon in writing by Cessna.  When this Agreement terminates or is not renewed for

any reason, Service Station agrees to destroy or return all Cessna proprietary information to Cessna within 30 days of termination or expiration of the Agreement.

## E. GENERAL

1.    **LEGAL RELATIONSHIP AND INDEMNITY**.  The relationship created by this Agreement between McCauley and Service Center is that of independent contractor. Under no circumstances shall Service Center be considered an agent, partner, or joint venturer of McCauley.

Service Center is not granted any express or implied right or authority to assume or create any obligation or responsibility on behalf of or in the name of McCauley or to bind McCauley in any manner or thing whatsoever.  Service Center agrees to indemnify and hold McCauley harmless from any and all claims of damages of any nature whatsoever, and legal costs, including attorney fees, incurred by McCauley as a result of or arising from Service Center's representations, negligent acts, failure to act properly, and/or omissions.

2.    **INCORPORATED DOCUMENTS**.  All Exhibits including the Organization Form, Exhibit A; Signature Authorization Sheet, Exhibit B; General Information Data Sheet, Exhibit C; Export Compliance Agreement, Exhibit D; and Annual Representative Foreign Corrupt Practices Act Certification, Exhibit E, as completed by Service Center are incorporated herein by reference and are hereby made a part of this Agreement.

3.    **CAUSES BEYOND CONTROL OF PARTIES**.  Neither McCauley nor Service Center shall be liable for failure to perform its part of this Agreement when the failure is due to accidents, acts of God, strikes or labor disputes, acts, laws, rules or regulations of any government or government agency, fires, floods, delays or failures in delivery of carriers or suppliers, shortages of material or other industrial disturbance, wars, riots or insurrections, or other causes beyond the control of the party failing to perform.

4.    **CONTROLLING LAW**.  Service Center and McCauley expressly agree to exclude from this Agreement the United Nations Convention on Contracts for the International Sale of Goods, 1980, and any successor thereto.  This Agreement shall be governed in all respects and shall be construed, and the legal relationships between the parties shall be determined, in accordance with applicable commercial law of the State of Kansas, U.S., including, but not limited to, the Uniform Commercial Code, as the same may be enacted and in force from time-to-time in that jurisdiction.  The Kansas Consumer Protection Act (KSA 50-623, et seq.), as may be in effect from time-to-time, shall not apply to this Agreement or the parties hereto.  Service Center expressly agrees to be subject to and not object to the jurisdiction and venue of Kansas and/or Ohio courts.  The parties agree to exclude the Kansas conflicts of law provisions from this Agreement.  If any provision of this Agreement contravenes any law, including the law of the place of performance, such provision shall be deemed not to be a part of this Agreement and the remainder of this Agreement shall be valid and binding as though

15

such provision was not included. To the extent a provision of this Agreement would be enforceable under applicable law with modification to conform to the requirements of such law, the parties agree to negotiate in good faith for a written modification of this Agreement promptly upon discovery of the nonconformity and to perform and accept performance of the Agreement as modified to conform to applicable law.

5.    **WAIVER**. The failure of either party to require performance by the other party of any provision of this Agreement shall in no way affect its right to require such performance at any time thereafter, neither shall the waiver by either party of a breach of any provision of this Agreement constitute a waiver of any succeeding breach of the same or any other provision nor shall it constitute a waiver of the provision itself.

6.    **ARBITRATION**. All disputes arising from or in connection with this Agreement shall be submitted under Kansas law to binding arbitration held in Wichita, Kansas, in the English language, by three independent arbitrators in accordance with the rules of the American Arbitration Association pursuant to the procedure set forth below. Either party may demand such arbitration in writing, which demand shall include the name of the arbitrator appointed by the party demanding arbitration and a statement of the matter in controversy.

        Within 30 days after such demand, the other party shall name its arbitrator and the two arbitrators so selected shall select a third arbitrator within ten days or, in lieu of an agreement on the third arbitrator by the two arbitrators so appointed, a third arbitrator shall be appointed by the American Arbitration Association. If a second arbitrator is not selected within the time provided, the first arbitrator shall serve as sole arbitrator. The arbitrators shall have the power to determine the procedure to be followed, whether discovery is to be allowed and to what extent, and to establish a schedule for resolving the controversy, but they shall have no power to alter, change, amend, modify, or subtract from, any of the provisions of this Agreement or to award any punitive or exemplary damages. The decision of a majority of the arbitrators or the decision of the sole arbitrator if only one is selected shall be the final arbitration decision. All decisions shall be in writing. The parties agree that the provisions hereof shall be a complete defense to any suit, action, or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising out of this Agreement, that judgment may be rendered in any court of competent jurisdiction on any award made by the arbitrator(s) pursuant to this Agreement, and that the arbitration provisions hereof shall survive the termination of this Agreement for any reason. Notwithstanding any provision to the contrary, nothing in this paragraph shall prevent McCauley from obtaining judicial enforcement under Paragraphs B.6.(d), B.10., C.2., C.7., D.8., and E.1.

7.    **NOTICES**. Any notices to McCauley required or permitted to be given hereunder shall be in writing (unless otherwise specifically provided herein) and shall be sufficiently given if delivered personally or transmitted by facsimile, courier service, or mailed by registered or certified mail, return receipt requested, postage prepaid, to the McCauley address specified in this paragraph. In all cases where a facsimile is transmitted, both

Parties agree to provide the other with originals of the facsimile documents by courier service within one week of the date of facsimile transmittal.  The date of effective notice is the date of receipt of the facsimile or the date of personal delivery of the document or the date of receipt of the document by certified mail, registered mail or courier service, unless of course the documents were originally sent by facsimile.  A written notice shall be considered delivered even if the other party does not accept delivery and the date of receipt of any mailing of any notice shall be counted in computing the notice period.  Notices to Service Center should be sent to the General Manager at the business address provided in Exhibit C.  Notices to McCauley should be sent to the Propeller Aircraft Customer Service, at Cessna Aircraft Company, Five Cessna Boulevard, Wichita, Kansas  67215 or to Post Office Box 7706, Wichita, Kansas  67277-7706 (Facsimile No. 316/942-9006).

8.    **REMEDIES**.  Except as provided in Paragraphs B.6.(d), B.10., C.2., C.7., D.8., and E.1., the parties agree in any dispute, whether resolved by arbitration or otherwise, each party will pay its own expenses of arbitration and/or litigation, including, without limitation, attorney fees, arbitrator fees, court costs, and other expenses.

9.    **ENTIRE AGREEMENT**.  Except as specifically stated herein, all understandings and agreements between the parties relative to the Products covered by this Agreement are contained herein or in the documents incorporated herein by reference.  No change to this Agreement shall be valid or binding on either party until reduced to writing and signed in accordance with Paragraph E.10.

*(the remainder of this page intentionally blank)*

10.   **SIGNATURES**.  This Agreement is only valid when it contains, with respect to Service Center, the signature of the owner, if an individual proprietorship; the signature of one of the general partners, if a partnership; or the signature of a duly authorized officer of Service Center, if a corporation or limited liability company; and, with respect to McCauley, the signature of an authorized employee of McCauley.  The signatories to this Agreement verify that they have read the complete Agreement, understand its contents, and have full authority to bind and hereby do bind their respective party.

The parties hereto have signed this Agreement, which is finally executed at Wichita, Kansas, U.S., in duplicate originals.

| EAST COAST PROPELLERS PTY LTD | CESSNA AIRCRAFT COMPANY |
|---|---|
| **(SERVICE CENTER's Legal Name)** | McCauley Propeller Systems |
| By: _~John Marks~_ | Accepted |
| (signature) | By: _____ |
|  | (signature) |
| Name:  JOHN   MARKS | Name:   Steven K. Charles |
| (type or print) |  |
| Title: MANAGING  DIRECTOR | Title:    Director, Customer Service |
| (type or print) |  |
| SERVICE CENTER's | |
| AGREEMENT | ACCEPTANCE AND AGREEMENT |
| OFFER DATE:  1 JANUARY 2004 | EFFECTIVE DATE: _____ |

**Raftopoulos, Bill**

| | |
|---|---|
| From: | John Marks from East Coast Propellers [eastcoastpropellers@bigpond.com] |
| Sent: | Wednesday, April 07, 2004 7:02 PM |
| To: | BRaftopoulos@cessna.textron.com |
| Subject: | Mc Cauley Agreements |

Dear Bill

Thank you for your email regarding our Mc Cauley Agreements. The following information is provided for our business references.

Business References:
Hartzell: Contact Kathy Black, email kblack@hartzellprop.com, fax No. 9377784215
BFGoodrich: Contact Cheryl Zaklan, email cheryl.zaklan@goodrich.com, Fax No. 3303742137
Tenix Aviation: Contact Todd Pennifold, email todd.pennifold@tenix.com, Fax No. 08828111728
Aircraft Propellers & Spares: Contact Linton Hayres, email propbits@ozemail.com.au, Fax No. 0395800765
Aviall: Contact Craig Lockerbie, email clockerbie@aviall.com, Fax No.03 9330 3194

Financial Organisation:
Under "Current Government Postions Held", please enter "None".

Regards
John Marks
Managing Director
East Coast Propellers Pty Ltd
Building 641 Klemm Street
BANKSTOWN AIRPORT NSW 2200
Telephone: (02) 9791 0246
Facsimile : (02) 9791 0057
Mobile      : 0416 009 772
eastcoastpropellers@bigpond.com.au
www.eastcoastpropellers.com.au

EXHIBIT A

## ORGANISATION FORM
### (Please Type)

**Service Center's Legal Name: EAST COAST PROPELLERS PTY LTD**

**Check applicable box:**

☐ Privately Owned Corporation

☐ Publicly Held Corporation

☐ Sole Proprietorship

☐ Partnership

☑ Limited Liability Company

**BUSINESS REFERENCES, do not use a McCauley reference**
(name, address, telephone number, email address):

1. Hartzell Propellers Inc, One Propeller Place, PIQUA, OHIO USA, 45356-2634
Telephone: 937 778 4200

2. BF Goodrich, 1555 Corporate Woods Parkway, Uniontown, OHIO 44685-8799
Telephone: 330 374 3040

3. Tenix Aviation, PO Box 721, Salisbury SA 5108   ~~Tim williams~~ Richard Vorias
Telephone: 08 8258 3033                             Richard.vorias @ tenix.com

4. Aircraft Propellers & Spares, PO Box 200, Mentone VIC 3194
Telephone: 61 03 9580 2034   Propbits@ozemail.cam.au

5. Aviall, Bankstown Airport NSW 2200   Craig Lockerbie - clockerbie@ aviall.com
Telephone: 9791 0511

**FINANCIAL ORGANISTION:** (Please complete all of the following 3 Sections).

| Names of All STOCKHOLDERS (*&**) Of SERVICE CENTER Regardless of Financial interest | Title, if any | Percentage of Ownership | Current Government Positions Held and Applicable Country*** |
|---|---|---|---|
| JOHN MARKS | MANAGING DIRECTOR | 50% | NoNe |
| ELLEN MARKS | DIRECTOR | 50% | NoNe |

| Names of ALL DIRECTORS of SERVICE CENTER regardless of financial interest | Title | Percent of Owner-ship | Current Government Positions Held and Applicable Country*** |
|---|---|---|---|
| JOHN MARKS | MANAGING DIRECTOR | 50% | NONE |
| ELLEN MARKS | DIRECTOR | 50% | NONE |
| | | | |
| | | | |
| | | | |

| Names of ALL OFFICERS of SERVICE CENTER regardless of financial interest | Title | Percent of Owner-ship | Current Government Positions Held and Applicable Country*** |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

IF ANY OF YOUR STOCKHOLDERS ARE CORPORATIONS, PLEASE COMPLETE THIS FORM FOR EACH SUCH ENTITY. WE MUST BE PROVIDED INFORMATION ON THE INDIVIDUALS WHO ARE THE ULTIMATE OWNERS OF YOUR COMPANY.

\*     IF YOU ARE A PRIVATELY OWNED CORPORATION, YOU MUST SHOW 100% OF ALL STOCKHOLDERS, THEIR PERCENTAGE OF STOCK OWNERSHIP, AND THEIR GOVERNMENT JOBS, IF ANY.

\*\*    IF YOU ARE A PUBLICLY HELD CORPORATION, THEN IDENTIFY STOCKHOLDERS OWNING 5% OR MORE OF YOUR STOCK, AND THE COUNTRIES AND GOVERNMENT JOBS, IF ANY, HELD BY SUCH STOCKHOLDERS. STOCKHOLDERS OWNING LESS THAN 5% DO NOT NEED TO BE LISTED.

\*\*\*   THIS COLUMN MUST BE COMPLETED. If no Government positions are held by the individual(s), then the word "NONE" should be inserted in the blank space.

IF INSUFFICIENT SPACE TO RESPOND, PLEASE ATTACH ADDITIONAL PAGES.

## EXHIBIT B

### SIGNATURE AUTHORIZATION SHEET
(Please Type)

Service Center's
Name:        EAST COAST PROPELLERS PTY LTD

This is Service Center's authorization for McCauley to honor the signatures of the following names for warranty claims for Service Center:

**(Please type names of individuals authorized to contractually commit Service Center [signatures are not required].)**

**1. JOHN MARKS**

**2. JEFF MARKS**

**3. CHERYL BULL**

The individuals identified above are not authorized to commit McCauley in any way or manner.

**Service Center agrees to pay and to be liable for payment of sums due Mc Cauley as a result of written or oral transactions submitted by any individual identified above.**

SERVICE CENTER:

_____
(signature)

NAME: **JOHN MARKS**

TITLE: **MANAGING DIRECTOR**

DATE: **15/12/03**

## EXHIBIT C

**GENERAL INFORMATION DATA SHEET**
(Please Type)

## LEGAL NAME AND BUSINESS ADDRESS:

Name:    EAST COAST PROPELLERS PTY LTD

Street:    641 Klemm Street

Airport:    BANKSTOWN AIRPORT     State: NSW

Postal Code: 2200     Country: AUSTRALIA

## MAILING ADDRESS:

**As above**

## SHIPPING ADDRESS: (check here if for freight forward [ ])

**As Above**

## ADDITIONAL INFORMATION:

Telephone: 61 29791 0246     Facsimile: 61 2 9791 0057

Internet/E-mail Address: eastcoastpropellers@bigpond.com.au

Primary Contact: JOHN MARKS

Internet website URL: www.eastcoastpropellers.com.au

## EXHIBIT D

**EXPORT COMPLIANCE AGREEMENT**

Service Center's Legal Name: *EAST COAST PROPELLERS PTY LTD.*

Service Center hereby notifies Cessna Aircraft Company that it assumes full and complete responsibility for the export of Products supplied by Cessna Aircraft Company, including, but not limited to, export reporting, determining licensing requirements, and obtaining licensing authorities. Service Center, if it is a foreign citizen or corporation, understands that its freight forwarder, a United States' corporation, will be acting as the U.S. Exporter of Record on behalf of Service Center. Service Center acknowledges the freight forwarder designated as the U.S. Exporter has been notified, is in concurrence with its role, and has full authority to perform its obligations on behalf of Service Center.

Service Center's
Legal Name: *EAST COAST PROPELLERS PTY LTD.*

Signature: _____

Name: _____*JOHN    MARKS*_____
(print or type)

Title: _____*MANAGING DIRECTOR*_____
(print or type)

Date: _____*15/12/03*_____

**EXHIBIT**

tabbies®

C

# PERSONAL FINANCIAL STATEMENT AS OF _December 31, 2002_
Date

SUBMITTED TO: **CITIZENS BANK**

## PERSONAL INFORMATION

| APPLICANT (NAME) ARTHUR M. D'GNCFRIO, JR. | CO-APPLICANT (NAME) N/A |
|---|---|
| Employer NEW ENGLAND PROPELLER SERVICE, INC. | Employer |
| Address of Employer 3 MATTHEWS DRIVE, E HADDAM, CT 06423 | Address of Employer |
| Business Phone No. 860 873-1494 / No. of Years with Employer 27 / Title/Position PRESIDENT | Business Phone No. / No. of Years with Employer / Title/Position |
| Name of previous employer & position (if with current employer less than 3 yrs.) N/A / No. of Yrs. — | Name of previous employer & position (if with current employer less than 3 yrs.) / No. of Yrs. |
| Home Address 1304 SAYBROOK RD, HADDAM, CT 06438 | Home Address |
| Home Phone No. 860 345-2525 / Social Security No. 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 / Date of Birth 2-26-53 | Home Phone No. / Social Security No. / Date of Birth |
| Name, Phone No. of your Accountant L.T. WALSH, SR  860-873-1494 | Name, Phone No. of your Accountant |
| Name, Phone No. of your Attorney ROGER EISENSTEIN 860-651-4968 | Name, Phone No. of your Attorney |
| Name, Phone No. of your Investment Advisor/Broker N/A | Name, Phone No. of your Investment Advisor/Broker |
| Name, Phone No. of your Insurance Advisor N/A | Name, Phone No. of your Insurance Advisor |

Cash Income & Expenditures Statement For Year Ended _DEC. 31, 2002_ **(Omit cents)**

| ANNUAL INCOME | AMOUNT ($) | ANNUAL EXPENDITURES | | AMOUNT ($) |
|---|---|---|---|---|
| Salary (applicant) | $ 30,000 | Federal Income and Other Taxes  27% | $ 6,619 |  |
| Salary (co-applicant) | — | State Income and Other Taxes  27% | 1,866 |  |
| Bonuses & Commissions (applicant) | — | Rental Payments, Co-op, or Condo Maintenance | — |  |
| Bonuses & Commissions (co-applicant) | — | Mortgage Payments  Residential / Investment | |  |
| Rental Income | — | Property Taxes  Residential / Investment | |  |
| Interest Income | 6 | Interest & Principal Payments on Loans | |  |
| Dividend Income | — | Insurance | |  |
| Capital Gains -PASS THRU | 5,291 | Investments (including tax shelters) | |  |
| Partnership Income PASS THRU | 9,882 | Alimony/Child Support | |  |
| Other Investment Income | — | Tuitions | 21,521 |  |
| Other Income (List)** | — | Other Living Expense | |  |
| | | Medical Expenses | |  |
| | | Other Expense (List) | |  |
| **TOTAL INCOME ▶** | $ 45,179 | **TOTAL EXPENDITURES ▶** | | $ 30,006 |

Any significant changes expected in the next 12 months?  ☐ Yes  ☐ No (If yes, attach information).

** Income from alimony, child support, or separate maintenance income need not be revealed if the applicant or co-applicant does not wish to have it considered as a basis for repaying this obligation.

F-537

These forms are intended for use in commercial lending transactions. Where any other use is contemplated, it is suggested that a careful review be made to ensure compliance with applicable laws and regulations.

ORDER FROM Bankers Systems, Inc., St. Cloud, MN 56302

Balance Sheet as of _DECEMBER 31, 2002_    _ARTHUR M. D'ONOFRIO_

| ASSETS | AMOUNT ($) | LIABILITIES | AMOUNT ($) |
|---|---|---|---|
| Cash in this Bank (including money market accounts, CDs) | $ | Notes Payable to this Bank | X X X |
| | | Secured | $ |
| Cash in Other Financial Institutions (List) (including money market accounts, CDs) . | | Unsecured | |
| | | Notes Payable to Others (Schedule E) | X X X |
| | | Secured | |
| _CASH ON HAND_ | 300 | Unsecured | 100,000 |
| | | Accounts Payable (including credit cards) _APPROX._ | 1,000 |
| Readily Marketable Securities (Schedule A) | | Margin Accounts | |
| Non-Readily Marketable Securites (Schedule A) | 1,000 | Notes Due: Partnership (Schedule D) | |
| Accounts and Notes Receivable | | Taxes Payable | |
| Net Cash Surrender Value of Life Insurance (Schedule B) | 5,605 | Mortgage Debt (Schedule C) | |
| Residential Real Estate (Schedule C) | | Life Insurance Loans (Schedule B) | 5,300 |
| Real Estate Investments (Schedule C) | | Other Liabilities (List): | |
| Partnerships / PC Interests (Schedule D) | | _BUSINESS ADVANCES_ | 145,029 |
| IRA, Keogh, Profit-Sharing & Other Vested Retirement Accts. | 21,376 | | |
| Deferred Income (number of years deferred _____) | | | |
| Personal Property (including automobiles) | 1,500 | | |
| Other Assets (List): | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL LIABILITIES | 251,329 |
| | | NET WORTH | (221,548) |
| | $29,781 | | $29,781 |

## CONTINGENT LIABILITIES

| | YES | NO | AMOUNT |
|---|---|---|---|
| Are you a guarantor, co-maker, or endorser for any debt of an individual, corporation, or partnership? | ☒ | ☐ | $ _SEE ATTACHED_ |
| Do you have any outstanding letters of credit or surety bonds? | ☐ | ☒ | |
| Are there any suits or legal actions pending against you? | ☒ | ☐ | ⊗ _SEE ATTACHED_ |
| Are you contingently liable on any lease or contract? | ☒ | ☐ | |
| Are any of your tax obligations past due? | ☐ | ☒ | |
| What would be your total estimated tax liability if you were to sell your major assets? | | | $ 10,000 +- |

If yes for any of the above, give details:
_V. NASTRO / U.S. PROPELLER SERVICE OF CALIFORNIA, ET AL
LITIGATION. JUDGEMENT OF APPROXIMATELY $515,000 PLUS INTEREST
RENDERED AND PARTIAL RE-TRIAL IN PROCESS._

## Schedule A - All Securities (including non-money market mutual funds)

| of Shares (Stock) or Face Value (Bonds). | DESCRIPTION | OWNER(S) | WHERE HELD | COST | CURRENT MARKET VALUE | PLEDGED | |
|---|---|---|---|---|---|---|---|
| | | | | | | YES | NO |
| READILY MARKETABLE SECURITIES (including U.S. Governments and Municipals)* | | | | | | | |
| | | | | | | ☐ | ☐ |
| | | | | | | ☐ | ☐ |
| | | | | | | ☐ | ☐ |
| | | | | | | ☐ | ☐ |
| | | | | | | ☐ | ☐ |
| NON-READILY MARKETABLE SECURITIES (closely held, thinly traded, or restricted stock) | | | | | | | |
| 54 AS | | | | | | ☐ | ☐ |
| INCL | AEROCLSS, INC. | A.M. D'ONOFRIO | CONN. | 1,000 | 1,000 | ☒ | ☐ |

If not enough space, attach a separate schedule or brokerage statement and enter totals only.    (SECURED).

*ARTHUR M. D'ONOFRIO*

## Schedule B - Insurance
### Life Insurance (use additional sheet if necessary)

| Insurance Company | Face Amount of Policy | Type of Policy | Beneficiary | Cash Surrender Value | Amount Borrowed | Ownership |
|---|---|---|---|---|---|---|
| FIRST COLONIAL LIFE INS. | 800,000 | TERM | GOODSPEED AIRPORT | 0 | 0 | GOODSPEED AIRPORT |
| EQUITABLE LIFE | 1,200,000 & 154,000 | TERM | CARELYN D'ONOFRIO | 5,605 | 5,300 | ARTHUR D'ONOFRIO |
| N.E. ALUMNI | 110,000 | TERM | CARELYN D'ONOFRIO | 0 | 0 | ARTHUR D'ONOFRIO |

| Disability Insurance | Applicant | Co-Applicant |
|---|---|---|
| Monthly Distribution if Disabled | N/A | |
| Number of Years Covered | | |

## Schedule C - Personal Residence & Real Estate Investments, Mortgage Debt (majority ownership only) *

### Personal Residence

| Property Address | Legal Owner | Purchase Year | Price | Market Value | Present Loan Balance | Interest Rate | Loan Maturity Date | Monthly Payment | Lender |
|---|---|---|---|---|---|---|---|---|---|
| N/A | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

### Investment

| Property Address | Legal Owner | Purchase Year | Price | Market Value | Present Loan Balance | Interest Rate | Loan Maturity Date | Monthly Payment | Lender |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Use expanded schedule(s) as appropriate, dating and signing the schedule(s) in the same manner as this statement.

## Schedule D - Partnerships (less than majority ownership for real estate partnerships)*

| Type of Investment | Date of Initial Investment | Cost | Percent Owned | Current Market Value | Balance Due on Partnerships; Notes, Cash Call | Final Contribution Date |
|---|---|---|---|---|---|---|
| Business/Professional (indicate name): N/A | | | | | | |
| | | | | | | |
| Investments (including Tax Shelters): | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Note: For investments which represent a material portion of your total assets, please include the relevant financial statements or tax returns, or in the case of partnership investments or S-corporations, schedule K-1s.

## Schedule E - Notes Payable

| Due to | Type of Facility | Amount of Line | Secured Yes | No | Collateral | Interest Rate | Maturity | Unpaid Balance |
|---|---|---|---|---|---|---|---|---|
| HANA TRUST | TRUST | N/A | ☐ | ☒ | NONE | 6.75% | 8-15-2012 | 100,000 |
| | | | ☐ | ☐ | | | | |
| | | | ☐ | ☐ | | | | |
| | | | ☐ | ☐ | | | | |

ARTHUR H. D'ONOFRIO

**Please Answer The Following Questions:**

1. Income tax returns filed through (date): _DECEMBER 31, 2002_  Are any returns currently being audited or contested?  ☐ Yes  ☒ No

   If yes, what year(s)? _N/A_

2. Have (either of) you or any firm in which you were a major owner ever declared bankruptcy?  ☐ Yes  ☒ No

   If yes, please provide details: _N/A_

3. Have you drawn a will?  ☒ Yes  ☐ No

   If yes, please furnish the name of the executor(s) and year will was drawn: _WIFE - CARELYN D'ONOFRIO._

4. Number of dependents (excluding self) and relationship to applicant: _TWO CHILDREN_

5. Have you ever had a financial plan prepared for you?  ☐ Yes  ☒ No

6. Did you include two years federal and state tax returns?  ☐ Yes  ☒ No  _PREVIOUSLY FURNISHED_

7. Do (either of) you have a line of credit or unused credit facility at any other institution(s)?  ☐ Yes  ☒ No

   If so, please indicate where, how much, and name of banker: _N/A_

8. Do you anticipate any substantial inheritances?  ☐ Yes  ☒ No

   If yes, please explain: _N/A_

**Representations and Warranties**

The information contained in this statement is provided to induce you to extend or to continue the extension of credit to the undersigned or to others upon the guarantee of the undersigned. The undersigned acknowledge and understand that you are relying on the information provided herein in deciding to grant or continue credit or to accept a guarantee thereof. Each of the undersigned represents, warrants and certifies that the information provided herein is true, correct and complete. Each of the undersigned agrees to notify you immediately and in writing of any change in name, address, or employment and of any material adverse change (1) in any of the information contained in this statement or (2) in the financial condition of any of the undersigned or (3) in the ability of any of the undersigned to perform its (or their) obligations to you. In the absence of such notice or a new and full written statement, this should be considered as a continuing statement and substantially correct. If the undersigned fail to notify you as required above, or if any of the information herein should prove to be inaccurate or incomplete in any material respect, you may declare the indebtedness of the undersigned or the indebtedness guaranteed by the undersigned, as the case may be, immediately due and payable. You are authorized to make all inquiries you deem necessary to verify the accuracy of the information contained herein and to determine the credit-worthiness of the undersigned. The undersigned authorize any person or consumer reporting agency to give you any information it may have on the undersigned. Each of the undersigned authorizes you to answer questions about your credit experience with the undersigned. As long as any obligation or guarantee of the undersigned to you is outstanding, the undersigned shall supply annually an updated financial statement. This personal financial statement and any other financial or other information that the undersigned give you shall be your property.

Date _____

Your Signature _ARTHUR M. D'ONOFRIE, SR_

Date _____

Co-Applicant's Signature (if you are requesting
the financial accommodation jointly) _____

ARTHUR  M. D'ONOFRIO, SR.

PERSONAL  FINANCIAL  STATEMENT - DECEMBER  31, 2002


CAROLYN  D'ONOFRIO,  WIFE,  IS  SOLE  OWNER  OF
RESIDENTIAL  PROPERTIES  LOCATED  AT  1304  SAYBROOK
ROAD,  HADDAM,  CONN.  AND  LUMBERYARD  ROAD
EAST  HADDAM,  CONN.  ARTHUR  M.  D'ONOFRIO, SR
IS  LISTED  AS  GUARANTOR / OBLIGATOR  ON  THE
RELATED  MORTGAGES.  ALSO  ARTHUR  M.  D'ONOFRIO SR.
IS  GUARANTOR,  CO-MAKER  OR  ENDORSER  OF  VARIOUS
ENTERPRISE  AGREEMENTS  AND  OBLIGATIONS, WHICH
ARE  CONTINUALLY  CHANGING

**EXHIBIT**

D

Christopher Stewart



## First International Bank

*Financing Manufacturers Worldwide*®

### PERSONAL FINANCIAL STATEMENT

**IMPORTANT:** Read these directions before completing this Statement

☐ If you are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete only Sections 1 and 3

☐ If you are applying for joint credit with another person, complete all Sections providing information in Section 2 about the joint applicant

☐ If you are applying for individual credit, but are relying on income from alimony, child support, or separate maintenance or on the the income or assets of another person as a basis for repayment of the credit requested, complete all Sections, providing information in Section 2 about the person whose alimony, support, or maintenance payments or income or assets you are relying

☒ If this statement relates to your guaranty of the indebtedness of other person(s), firm(s) or corporation(s), complete Sections 1 and 3

TO: First International Bank

| SECTION 1 - INDIVIDUAL INFORMATION | SECTION 2 – OTHER PARTY INFORMATION |
|---|---|
| Name *ARTHUR M D'ONOFRIO JR* | Name |
| Residence Address *1304 SAYBROOK ROAD* | Residence Address |
| City, State & Zip *HADDAM CONN. 06438* | City, State & Zip |
| Position or Occupation *PRESIDENT* | Position or Occupation |
| Business Name *NEW ENGLAND PROPELLER SERVICE* | Business Name |
| Business Address *INDUSTRIAL PARK - P.O. Box 344* | Business Address |
| City, State & Zip *EAST HADDAM. CONN 06423* | City, State & Zip |
| Res. Phone *345-2525*   Bus. Phone *873-1494* | Res. Phone          Bus. Phone |

*N/A*

| SECTION 3 - STATEMENT OF FINANCIAL CONDITION AS OF *DECEMBER 31, 49 2000* | | | |
|---|---|---|---|
| **ASSETS**<br>(Do not include assets of doubtful value) | In Dollars<br>(Omit cents) | **LIABILITIES** | In Dollars<br>(Omit cents) |
| Cash on hand and in banks | 5,400 | Notes payable to banks - secured | |
| IRA or other retirement accounts | 44,539 | Notes payable to banks - unsecured | |
| U.S. Govt. Marketable Securities - see Sched. A | | Due to brokers | |
| Non-Marketable Securities - see Schedule B | 3,861,000 | Amounts payable to others - secured | |
| Securities held by broker in margin accounts | | Amounts payable to others - unsecured | |
| Restricted or control stocks | | Accounts and bills due | 5,000 |
| Partial interest in Real Estate<br>see Schedule C | | Real Estate Mortgages payable -<br>· see schedule D | |
| Real Estate Owned - see Schedule D | — | Unpaid income tax | |
| Loans Receivable | — | Other unpaid taxes and interest | |
| Automobiles and other personal property | 2,500 | Other debts | |
| Cash value-life insurance - see Schedule F | — | | |
| Other assets - itemize | | | |
| *PATENT - STC* | 10,000 | | |
| | | TOTAL LIABILITIES | 5,000 |
| | | NET WORTH | 3,918,439 |
| TOTAL ASSETS | 3,923,439 | TOTAL LIABILITIES AND NET WORTH | 3,923,439 |

| SOURCES OF INCOME FOR YEAR ENDED *12- 31- 99* | | PERSONAL INFORMATION |
|---|---|---|
| Salary, bonuses & commissions | $ 47,760 | Do you have a will? *YES*, if so, name of executor |
| Dividends *& INTEREST* | 1,538 | *WIFE - CAROLYN D'ONOFRIO* |
| Real Estate income *GROSS RENT* | 20,700 | Are you a partner or officer in any other venture? Is so, describe |
| Other income (alimony, child support, or separate maintenance<br>income need not be revealed if you do not wish to have it considered<br>as a basis for repaying this obligation) | | *YES. SEE SCHEDULE B* |
| | | Are you obligated to pay alimony, child support or separate<br>maintenance payments? If so, describe |
| | | *NO.* |
| | | Are any assets pledged other than as described on schadules?<br>If so, describe |
| TOTAL | $ 69,938 | *NO* |

| CONTINGENT LIABILITIES | | PERSONAL INFORMATION |
|---|---|---|
| Do you have any contingent liabilities? If so, describe<br>*SEE ATTACHED STATEMENT* | *YES* | Income tax settled through (date) *12- 31- 1999* |
| As endorser, co-maker or guarantor? | $ | Are you a defendant in any suits or legal actions? *YES* |
| On leases or contracts? | $ | Personal bank accounts carried at: |
| Legal claims | $ | *CITIZENS BANK* |

## SCHEDULE A - U.S. GOVERNMENTS & MARKETABLE SECURITIES

| Number of Shares or Face Value (Bonds) | Description | In Name of | Are these Pledged? | Source of Value | Market Value |
|---|---|---|---|---|---|
| | N/A | | | | |
| | | | | | |
| | | | | | |

## SCHEDULE B - NON-MARKETABLE SECURITIES

| Number of Shares | Description | In Name of | Are these Pledged? | Source of Value | Market Value |
|---|---|---|---|---|---|
| SEE | ATTACHED SCHEDULE | | | | |
| | | | | TOTAL | 3,861,000 |

## SCHEDULE C - PARTIAL INTERESTS IN REAL ESTATE

| Address & Type of Property | Title in Name of | % of Ownership | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Balance |
|---|---|---|---|---|---|---|---|
| | N/A | | | | | | |
| | | | | | | | |
| | | | | | | | |

## SCHEDULE D - REAL ESTATE OWNED

| Address & Type of Property | Title in Name of | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Balance | Monthly Payment |
|---|---|---|---|---|---|---|---|
| | N/A | | | | | | |
| | | | | | | | |
| | | | | | | | |

## SCHEDULE E - LIFE INSURANCE CARRIED, INCLUDING N.S.L.I. AND GROUP INSURANCE

| Name of Insurance Company | Owner of Policy | Beneficiary | Face Amount | Policy Value | Cash Surrender Value |
|---|---|---|---|---|---|
| SEE ATTACHED | SCHEDULE | | | NIL | NIL |
| | | | 2,210,000 | TO NONE | TO NONE |

## SCHEDULE F - BANKS OR FINANCE COMPANIES WHERE CREDIT HAS BEEN OBTAINED

| Name & Address of Lender | Credit in the Name of | Secured or Unsecured? | Original Date | Original Balance | Current Balance | Monthly Payment |
|---|---|---|---|---|---|---|
| FARMERS & MECHANICS | A.D. JR. | U | 1996 | 50,000 | 0 | N/A |
| CITIZENS BANK | | | 1996 | | | |
| M.D. N.A. | | | 1993 | 36,000 | | |
| FIRST CARD | | | 1993 | | | |

For the purpose of procuring credit or any other financial accommodation from you from time to time, direct or contingent, the undersigned represents that the following is a true statement of the financial condition of the undersigned and of all facts herein set forth, and for such purpose agrees that you may at any time hereafter assume that the conditions and affairs of the undersigned have continued to be substantially as good as herein set forth and that there has been no change materially impairing the ability of the undersigned further agrees to claims and demands against the undersigned, unless you shall have been notified in writing to the contrary by the undersigned, and for such purpose the undersigned further agrees to notify you immediately in writing of any substantial change in the condition or affairs of the undersigned. In consideration of your granting any such credit or other financial accommodation to the undersigned, direct or contingent, the undersigned agrees with you as follows: as security for the payment of all liability of the undersigned to you, direct or contingent, now existing or hereafter arising, you are hereby given a lien upon, and/or rights of set-off against, any deposit or other account of the undersigned with you and all claims, money, stocks, bonds, commercial paper, instruments and other property of the undersigned which has or shall for any purpose come into your possession, custody or control, whether or not accepted for the purpose for which the same is delivered or intended. In any one or more of the following events, any and all obligations and liabilities of the undersigned to you, direct or contingent, now existing or hereafter arising, shall thereupon, unless you shall otherwise elect, become and be due and payable forthwith without any demand or notice to the undersigned: if it shall appear at any time that any of the statements herein contained is untrue; or if the undersigned fails to notify you of any material change in the condition or affairs of the undersigned as above agreed; or if any change occurs in the condition or affairs of the undersigned which materially impairs the ability of the undersigned to pay all claims and demands against the undersigned; or if the undersigned assigns any account or transfers or encumbers any assets to as, in your opinion, to materially affect the business or financial condition of the undersigned; or if the undersigned shall die; or if the undersigned shall become insolvent (however such insolvency may be evidenced), or make a general assignment for the benefit of creditors, or suspend the transaction of his, their or its usual business, or fail to pay any obligation to you when the same becomes due; or if a petition in bankruptcy, or a petition for application for composition, extension or reorganization shall be filed by or against the undersigned; or if any judgement or writ or warrant of attachment shall be entered or issued against the undersigned; or if a receiver shall be appointed of any of the property of the undersigned. No delay on your part in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right. You are authorized to make all inquiries you deem necessary to verify the accuracy of statements made herein and to determine the undersigned's creditworthiness.

Signature (Individual) /s/        Signature (Other Party) N/A

S.S. No. 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 Date of Birth 2-20-53     S.S. No. _____ Date of Birth _____

ARTHUR M. D'ONOFRIO JR.
PERSONAL FINANCIAL STATEMENT
DECEMBER 31, 2000

SCHEDULE B - NON-MARKETABLE SECURITIES

| DESCRIPTION | 1 | 2 | 3 IN NAME OF | 4 VALUE | 5 % OF OWNERSHIP | 6 SECURITY/ PROVEN | 7 |
|---|---|---|---|---|---|---|---|
| NEW ENGLAND PROPELLER | SERVICE | INC. | AMD JR | 3,555,000 | 100% | YES | |
| U.S. PROPELLER SERVICE | SERVICE | INC. | AMD JR | 766,000 | 100% | NO | |
| DIV-ACR, INC. | | | AMD JR | 599,000 | 50% | NO | |
| AEROCESS, INC. | | | AMD JR | 3,000 | 33 1/3% | YES | |
| A.D.M.W, L.L.C. | | | AMD JR | 120,000 | 50% | YES | |
| | | TOTAL VALUE | | 4,233,000 | | | |
| | | AMD JR VALUE | | 3,581,000 | | | |

ARTHUR M. D'ONOFRIO, SR.

PERSONAL FINANCIAL STATEMENT - DECEMBER 31, 2000

CAROLYN D'ONOFRIO, WIFE, IS SOLE OWNER OF
RESIDENTIAL PROPERTIES LOCATED AT 1304 SAYBROOK
ROAD, HADDAM, CONN. AND LUMBERYARD ROAD,
EAST HADDAM, CONN. ARTHUR M. D'ONOFRIO, SR
IS LISTED AS GUARANTOR/OBLIGATER ON THE
RELATED MORTGAGES. ALSO, ARTHUR M. D'ONOFRIO, SR.
IS GUARANTOR, CO-MAKER OR ENDORSER OF VARIOUS
ENTERPRISE AGREEMENTS AND OBLIGATIONS, WHICH
ARE CONTINUALLY CHANGING

ARTHUR M. D'ONOFRIO, JR.

PERSONAL FINANCIAL STATEMENT - DEC. 31, 2000

SCHEDULE E - LIFE INSURANCE

FIRST COLONIAL

LIFE INSURANCE CO.          (A)              800,000

EQUITABLE INSURANCE         (B)            1,200,000

EQUITABLE INSURANCE         (B)              110,000

N.E. ALUMNI                 (B)              100,000
                                           2,210,000

(A) OWNER - GOOD SPEED AIRPORT DEVELOPMENT CORP.
    (G.A.D.Co.) - BENEFICIARY - G.A.D.Co.

(B) OWNER - ARTHUR M. D'ONOFRIO, JR. -
    BENEFICIARY - CAROLYN D'ONOFRIO - WIFE