

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT NASTRO, | : |
| Plaintiff, | : CIVIL ACTION NO. |
| v. | : 3:02CV00857(DJS) |
| ARTHUR M. D'ONOFRIO, et. al. | : |
| Defendants. | : June 1, 2004 |

### MEMORANDUM IN SUPPORT OF
### MOTION OF CONTEMPT

This memorandum is submitted by plaintiff Vincent Nastro ("Nastro") in support of the motion for contempt against defendants Arthur M. D'Onofrio ("D'Onofrio") and New England Propeller Service, Inc. ("NEPS") for violation of the Court Order for preliminary injunction filed herein on May 16, 2003.

I.  **BACKGROUND**

This action was commenced by Nastro against, among others, D'Onofrio ("D'Onofrio") alleging that D'Onofrio's transfers of his ownership interest in four Connecticut companies on June 21, 2001, 2 weeks after a judgment was rendered against D'Onofrio in that certain action entitled Vincent Nastro v. Arthur M. D'Onofrio, Superior Court of California, County of San Joaquin, Stockton Branch, Case No. 293975 (the "California Litigation") were fraudulent. In connection with the filing of this action, Nastro applied for a

preliminary injunction restraining any further transfers of ownership of the four Connecticut companies and also requesting that the companies be restrained from transferring any funds to or for the benefit of D'Onofrio, his wife Carolyn or his children.

After extensive briefing, by Order filed May 16, 2003, the Court issued a preliminary injunction. Among the items ordered by the Court was the following:

> b.   U.S. PROPELLER SERVICE OF CT INC., NEW ENGLAND PROPELLER SERVICE OF CT, INC., DIV-ACQ, INC. AND ADMW, LLC shall not transfer any funds, assets, or interests of any kind whatsoever whether legal, beneficial or by way of a security interest to the Chana Trust, to the Continental Trust Company Limited, to Arthur M. D'Onofrio; to any member of his family; or for the benefit of Arthur M. D'Onofrio, for the benefit of any member of his family, or for the benefit of any other person or legal entity without express permission from this court.

The terms of this Order were explicit: NEPS was not permitted to transfer any funds to or for the benefit of D'Onofrio. No request for modification of this Order has been requested.

As a part of the discovery in this action, a Subpoena in a Civil Case was issued to Jay-Allen Eisen ("Eisen") of Sacramento, California. Since March, 2001, shortly before the judgment was entered in the California Litigation, Eisen has been counsel of record for D'Onofrio in the California Litigation, including the appeals filed by D'Onofrio of the judgment. The documents requested were: (1) retainer agreements with D'Onofrio; and (2) records of payment of legal bills, including the name of the payor, for the legal services rendered on behalf of D'Onofrio.

Eisen responded to the discovery by producing to the undersigned the documents attached hereto as Exhibit A, which documents are Bates-stamped E-1 through E-153. The documents contain a retainer agreement (E-3 through E-6), invoices for legal services from April 27, 2001 (E-151) through March 30, 2004 (E-8),[1] and copies of checks in payment of

---

[1] The dates listed are the date of the respective invoices.

2

the invoices. The total amount of the checks is $151,146.41, of which $33,348.57 was paid on or after May 16, 2003, the date of the Order for preliminary injunction.

It should be noted that, although the retainer agreement between Eisen and D'Onofrio (E-3 through E-6) also listed NEPS as a party, NEPS was not a party to the California Litigation, and an examination of the invoices from Eisen further shows that all services rendered were on behalf of D'Onofrio.

## II.    THE LEGAL STANDARDS

"A party may be held in civil contempt for failure to comply with an order of the court if (1) the order was clear and unambiguous[2], (2) proof of noncompliance is clear and convincing, and (3) the party has not been reasonably diligent and energetic in attempting to do what was ordered." Walpole Woodworkers, Inc. v. Atlas Fencing, Inc., 218 F.Supp.2d 247, 254 (D. Conn. 2002) (citing EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Joint Apprentice-Journeyman Educ. Fund, 925 F.2d 588, 594 (2d Cir. 1991). See also EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n, 753 F.2d 1172, 1178 (2d Cir. 1985), aff'd, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981); Drywall Tapers and Pointers of Greater New York, Local 1974 of I.B.P.A.T. AFL-CIO v. Local 530 of Operative Plasterers and Cement Masons Int'l Ass'n, 889 F.2d 389, 394 (2d Cir. 1989).

If these elements are met, a party harmed by a contemnor may seek remedies. "Generally, the sanctions imposed after a finding of civil contempt serve two functions: to coerce future compliance and to remedy past noncompliance." Vuitton et Fils S.A. v.

---

[2] In determining whether the order is clear and unambiguous, "the party being enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden." Drywall Tapers and Pointers of

3

Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979) (citing United States v. United Mine Workers, 330 U.S. 258, 302-04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). With respect to the former function, the district judge has discretion to declare remedies and should take into consideration the following factors: "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." New York State Nat'l Organization for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989) (citations omitted). Sanctions imposed to remedy past noncompliance "restore the parties to the position they would have held had the injunction been obeyed." Vuitton et Fils S.A., 592 F.2d at 130.

It is further "appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful." *Id.* "While willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them. Indeed, . . . a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt." Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996).

### III.   ARGUMENT

In the present situation, the Order for preliminary injunction was clear and unambiguous: NEPS was not permitted to pay any funds to or on behalf of D'Onofrio. The payment by NEPS of legal bills for D'Onofrio clearly shows the willful violation of the Order for which the finding of contempt is requested. Finally, it is also clear that D'Onofrio took no

---

Greater New York, Local 1974 of I.B.P.A.T. AFL-CIO v. Local 530 of Operative Plasters and Cement

4

action to comply with the Order, such as by directing NEPS to cease paying his personal legal bills.

The relief requested by Nastro seeks: (1) to remedy the past violation of the Order for preliminary injunction by requiring NEPS and D'Onofrio to recover the amounts paid in violation of the Order and deposit the funds with the Clerk of Court, and (2) to prevent future violations of the Order for preliminary injunction by appointing a receiver for NEPS, with such receiver to be compensated by NEPS.[3] Both items of relief are justified in this case because of D'Onofrio's contemptuous conduct of the Order for preliminary injunction.

## IV.   CONCLUSION

On the basis of the clear violation of the Order for preliminary injunction, D'Onofrio and NEPS should be found in contempt of the Order and the requested sanctions issued.

THE PLAINTIFF
VINCENT NASTRO

by: _____
Edwin L. Doernberger
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847
e-mail: eld@sdvlaw.com
Fed. Bar No. ct05199

---

Masons Int'l Ass'n, 889 F.2d 389, 395 (2d Cir. 1989).
[3] Appointment of a receiver is also explicitly provided for as a remedy under the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §52-552h(a), subsection B.

5