UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT NASTRO,<br>     Plaintiff, | : NO.: 3:02CV00857(DJS) |
| vs. | |
| ARTHUR M. D'ONOFRIO, CAROLYN<br>D'ONOFRIO, ARTHUR A. D'ONOFRIO,<br>PAUL D'ONOFRIO, NICOLE D'ONOFRIO,<br>NEW ENGLAND PROPELLER SERVICE OF<br>CT, INC., DIV-ACQ, INC., ADMW, LLC,<br>THE CHANA TRUST, THE CONTINENTAL<br>TRUST COMPANY LIMITED, KLEBAN &<br>SAMOR, P.C., ELLIOT I. MILLER and<br>U.S. PROPELLER SERVICE OF CT., INC.,<br>     Defendants. | : NOVEMBER 17, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR CLARIFICATION,
<u>VACATION AND/OR MODIFICATION OF INJUNCTIVE ORDERS</u>**

**<u>PRELIMINARY STATEMENT</u>**

On May 16, 2003, injunctive orders were entered by this Court with the intention of maintaining the status quo of the parties in this case pending resolution of allegations by plaintiff, Vincent Nastro ("Nastro"), that transfers of assets by Arthur M. D'Onofrio ("D'Onofrio" or "Debtor") to an irrevocable trust known as the Chana Trust were fraudulent as to him. Plaintiff claimed that the transfers rendered D'Onofrio unable to satisfy an unliquidated claim by Nastro for money damages. Nastro's claim is premised upon a partial judgment in a California civil action

("the California action"). That suit arose from a business dispute relating to a failed aircraft parts business co-owned by Nastro and D'Onofrio, known as U.S. Propeller Services of California, Inc.

The injunctive orders at issue entered without a hearing and directed, *inter alia*, that "U.S. PROPELLER SERVICE OF CT, INC., NEW ENGLAND PROPELLER SERVICE OF CT, INC., DIV-ACQ, INC. AND ADMW, LLC shall not transfer any funds, assets, or interests of any kind whatsoever whether legal, beneficial or by way of a security interest to the Chana trust; to the Continental Trust Company Limited; to Arthur M. D'Onofrio; to any member of his family; or for the benefit of Arthur M. D'Onofrio, for the benefit of any member of his family, or for the benefit of any other person or legal entity without express permission from this Court."

On July 29, 2004, D'Onofrio filed a voluntary bankruptcy petition, Case No. 04-33561 (Chapter 11, ASD). In accordance with § 362 of the Bankruptcy Code, all civil actions against D'Onofrio are stayed, including the instant action.[1] As detailed more fully herein, D'Onofrio's bankruptcy petition, substantial efforts to effectuate the return of the Chana Trust assets to the Chapter 11 estate, the imminent filing of a Chapter 11 plan which proposes to reorganize the business affairs of D'Onofrio and New England Propeller Service of Connecticut, Inc. ("NEPS") as well as other events emanating from the bankruptcy petition constitute the requisite changed circumstances justifying modification of the injunctive orders.

---

[1] Since § 362 operates to stay actions <u>against</u> a bankruptcy debtor, the instant motion is not violative of that stay. To the extent that plaintiff seeks to oppose this motion, defendants stipulate to limited relief from the automatic stay for that purpose only.

**LAW AND ARGUMENT**

It is well established that a court has the power, in the exercise of its discretion, to modify its orders to adapt to changed conditions.  United States v. Swift & Co., 286 U.S. 106, 114, 52 S. Ct. 460, 76 L. Ed 999 (1932); Davis v. New York City Housing Authority, 278 F.3d 64, 88 (2d Cir. 2002).  Generally, vacating or modifying a preliminary injunction is warranted where the movant presents new facts to the district court sufficient to demonstrate changed or previously unforeseen circumstances.  Merrell National Laboratories, Inc. v. Zenith Laboratories, Inc., 579 F.2d 786, 791-92 (3d Cir. 1978).

As an initial consideration, in view of the jurisdiction of the Bankruptcy Court over the assets and affairs of the Debtor, this Court's orders of injunction should be vacated in their entirety.   Alternatively, D'Onofrio's bankruptcy petition and the substantial and significant events flowing from that petition warrant modification of the orders of injunction, since they are no longer applicable to the circumstances of this case, the gravamen which is the allegedly fraudulent transfer of assets to the Chana Trust.

D'Onofrio's proposed Chapter 11 plan incorporates the extraordinary measures necessary to repatriate and include the assets of that trust in the Chapter 11 estate.  Several critical and essential steps preliminary to that end result have already been implemented.  Once the assets of the Chana Trust are included in the bankruptcy estate, Nastro's principal claims in this action will effectively be mooted.

The Chapter 11 plan addresses payment of the debt owed to Nastro, thereby obviating the need for the injunctive orders, if not this entire action. However, since such actions might be construed as operating for "the benefit of" defendant, D'Onofrio, it could be argued that they would run afoul of the strict terms of the Court's injunctive orders. On these bases alone, the injunctive orders should be either vacated or substantially modified, since they manifestly no longer are warranted in view of these substantially changed circumstances. At a minimum, the order of this Court must be modified to permit the defendants to take those actions necessary or reasonably required to effectuate the return of the Chana Trust assets to the Chapter 11 estate and dissolution of the Chana Trust.

In addition, the Chapter 11 bankruptcy plan will be funded by the defendant, NEPS, an ongoing and viable business concern founded in 1951 and purchased by D'Onofrio's family in 1975. To accomplish this, the movants request modification of this Court's orders to permit funding of the Chapter 11 plan and to pay or pledge such assets or property as may be required or necessary to fund the plan.

D'Onofrio serves as president and a director of NEPS. He has not been paid a salary since 2001. To permit D'Onofrio to pay his creditors, including plaintiff Nastro, he and NEPS seek a specific modification of the injunctive orders to permit NEPS to advance as a business expense, or pay to D'Onofrio, the equivalent of up to two (2) years of back wages in order to fund the plan and a prospective salary of not less than one hundred fifty thousand dollars ($150,000.00) per annum.

Since at least 1996, NEPS has been paying legal costs incurred by D'Onofrio, principally in connection with the California action. These payments not only predated the injunctive orders in this case, but have also been treated from the outset as an accrued expense by NEPS, since Nastro's California suit against D'Onofrio related to his interest in, and direction of, that business. Moreover, at the time Nastro commenced the California action, NEPS was owed nearly $500,000.00 by U.S. Propeller Services of California. Thus, disbursements for D'Onofrio's legal expenses have been for the benefit of NEPS in at least substantial part, and therefore not in violation of this Court's order.

To the extent that such payments, as well as future disbursements for attorneys' fees by NEPS, could be construed as benefiting D'Onofrio, however, the order of injunction should be modified, to permit, <u>nunc pro tunc</u>, payment of the fair and reasonable legal expenses of D'Onofrio and/or NEPS related or connected with the California action, related Connecticut actions and the Chapter 11 case. Prohibition of such payments for professional services would deprive D'Onofrio and the business entities in which he holds an interest of effective legal representation in the actions pending against them, thereby thwarting any viable bankruptcy plan and substantially barring the debtor from exercising his right to avail himself of remedies afforded under the bankruptcy statutes. The fundamental unfairness to D'Onofrio of such a result is beyond dispute. It is well recognized that prohibition of the payment of reasonable attorneys' fees implicates D'Onofrio's Sixth Amendment right to counsel. <u>See</u>, <u>United States v. Monsanto</u>, 924 F.2d 1186 (1991).

Further, it appears plainly in the interest of plaintiff Nastro himself that a viable bankruptcy plan be promulgated, approved and implemented. Obviously, professional assistance in that effort is required in this instance. In view of all of these considerations, the injunctive orders should be modified to permit NEPS to continue payment of reasonable attorneys' fees.

Finally, as set forth in defendants' Motion to Vacate Orders of Injunction, dated July 6, 2004 and Motion for Reconsideration, dated August 4, 2004, together with their supporting memoranda, both of which are incorporated herein by reference, the orders of injunction were rendered void by the Connecticut Supreme Court's ruling in <u>Cahaly v. Benistar Property Exchange Trust Co., Inc.</u>, 268 Conn. 264 (2004). Absent a final judgment from a foreign jurisdiction that was immediately enforceable against D'Onofrio, <u>Cahaly</u> dictates that Nastro was not entitled to a remedy that deprived the defendants of the use, possession, or enjoyment of their property, absent a showing by him of probable cause. 268 Conn. at 271, n. 6.

**CONCLUSION:**

For the foregoing reasons, this Court's injunctive orders should be vacated in their entirety. In the alternative, based upon the development of demonstrably changed and unforeseen circumstances since those orders entered, the above requested modifications are warranted.

                DEFENDANTS, NEW ENGLAND
                PROPELLER SERVICE OF CT, INC.
                by its attorneys:


                _____
                James J. Tancredi (ct06819)
                DAY BERRY & HOWARD LLP
                CityPlace I
                Hartford, CT 06103
                Phone: (860)275-0100
                Fax:   (860)275-0343
                E-mail: jtancredi@dbh.com


                ARTHUR M. D'ONOFRIO, JR.
                by his attorneys:


                _____
                Raymond C. Bliss (ct 07239)
                Baker O'Sullivan & Bliss PC
                Putnam Park, Suite 100
                100 Great Meadow Road
                Wethersfield, CT 06109-2371
                Phone: (860)258-1993
                Fax:     (860)258-1991
                E-mail: Bliss@boblawyers.com

CONSENT OF CO-DEFENDANTS:
by their attorneys


_____
Scott M. Karsten (ct05277)
Nicole D. Dorman (ct07030)
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119
Phone: (860)233-8251
Fax:   (860)232-8736
E-mail: skarsten@sackspec.com
            ndorman@sackspec.com

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been mailed, postage prepaid, this ____ day of November, 2004, to the following counsel of record:

Edwin L. Doernberger, Esquire
Bradford J. Sullivan, Esquire
Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517

Thomas O'Dea, Esquire
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880

 

                                                                   _____
                                                                   James J. Tancredi