UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT NASTRO | : | CIVIL ACTION |
| | : | NO. 3:02 CV 00857 (DJS) |
| V. | : | |
| ARTHUR M. D'ONOFRIO, et.al. | : | FEBRUARY 3, 2006 |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS KLEBAN & SAMOR, P.C. AND ELLIOT I. MILLER'S MOTION TO DISMISS**

The plaintiff Vincent Nastro ("Nastro") submits this memorandum of law in opposition to the Motion to Dismiss of defendants' Kleban & Samor, P.C. and Elliot I. Miller dated January 18, 2006.[1] These defendants have moved to dismiss the fifth count of the Amended Complaint based on the RICO statute on the grounds that it fails to state a claim against these defendants upon which relief may be granted. Nastro opposes this motion on the grounds that the defendants' use of the mails and wires constitute the predicate criminal acts of an enterprise consisting of the attorneys and various individuals and companies which engaged in an enterprise to defraud Nastro.

I. **BACKGROUND**

As alleged in the Amended Complaint, the background of this matter is straightforward. On June 7, 2001, Nastro obtained a judgment in California against D'Onofrio in the amount of $514,698.75 in compensatory damages (with

---

[1] A memorandum in opposition to Defendant's prior motion to dismiss was filed by Nastro on July 31, 2003 (Doc. 73) which is incorporated herein by reference.

prejudgment interest) and punitive damages in the amount of $1,600,000.[2] On August 10, 2001, the Judgment was registered in Connecticut pursuant to Conn. Gen. Stat. §52-604, et. seq. and became a judgment of the State of Connecticut in Docket No. CV-01-0095961-S, Superior Court, Judicial District of Middlesex at Middletown. On or about June 21, 2001, following the entry of the judgment in California, D'Onofrio as settlor created The Chana Trust, an "offshore trust", located on the Island of Jersey in the Channel Islands.

D'Onofrio enlisted the assistance of defendants Kleban & Samor, P.C. and Elliot I. Miller (collectively "Defendants") in his creation of The Chana Trust. The Defendants actively conducted and participated in the creation of this fraudulent trust and enabled D'Onofrio to escape liability as to his legal creditors, including but not limited to, Nastro. In aiding the establishment of The Chana Trust, the Defendants engaged in wire and mail fraud in direct violation of 18 U.S.C. § 1962 (c) by the use of telephone, facsimile, e-mail and regular mail, in removing substantially all of D'Onofrio's assets to an offshore Trust in order to place them beyond the reach of D'Onofrio's creditors. These predicate acts, as particularly alleged in the Amended Complaint, constitute a pattern of racketeering activity.

As long as The Chana Trust remains in effect, the scheme to defraud D'Onofrio's creditors, including Nastro, will continue. Further, as long as The Chana Trust remained in effect and Nastro was unable to reach those protected assets, the Defendants continued to conduct criminal activity constituting violations of 18 U.S.C. §1962 (c).

---

[2] D'Onofrio appealed from this judgment and the appellate court affirmed the award of compensatory damages and D'Onofrio's liability for punitive damages, but remanded for a new trial as to the amount of punitive damages based on D'Onofrio's net worth at the time of re-trial.

## II. ARGUMENT

### A. Legal Standard.

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). "The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." (Internal quotation marks omitted) Jaghory v. New York State Department of Education, 131 F.3d 326, 329 (2d Cir. 1997); (Quoting Hoover v. Ronwin, 466 U.S. 558, 587, 104 S.Ct. 1989, 2005, 80 L.Ed.2d 590 (1984)); (See also Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991)). "Because the complaint must allege facts which confer a cognizable right of action, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (Internal quotation marks omitted) DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003). (Quoting York v. Ass'n of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).

### B. Nastro Sufficiently Alleges Act of Defendants In The Complaint Stating A Claim Upon Which Relief Can Be Granted Under The RICO Statute.

Nastro bases his RICO claim against the Defendants upon the actions of wire and mail fraud committed by the Defendants. The Defendants utilized their legal services to participate in and conduct a pattern of racketeering activity in the furtherance of a RICO enterprise.

3

### 1. Nastro's claims of mail fraud and wire fraud are legally sufficient to constitute racketeering activity.

As Nastro sets out in the Complaint the Defendants have committed several acts of mail fraud and wire fraud in the execution of the scheme to defraud Nastro of the amounts D'Onofrio owes to him.

Defendants argue that Nastro's allegations that the Defendants committed mail and wire fraud are legally insufficient under 18 U.S.C. §§1341 and 1343. Specifically, Defendants state "[t]hose sections expressly refer to obtaining money or property by deceit or by false pretense."[3]  However, according to the Honorable Judge Covello's decision in <u>The Cadle Company and D.A.N. Joint Venture, Ltd. v. Charles A. Flanagan, et al.</u>, 2005 WL 1039005 (D.Conn May 2, 2005), in order to prove mail or wire fraud "the plaintiff must prove that the defendant (1) participated in a scheme to defraud (2) with money or property as the object of the scheme, and (3) use of the mail or wires in furtherance of the scheme."

In the present case, Defendants participated in a scheme with D'Onofrio to defraud Nastro of money or property by using mail and wire to create the Chana Trust and transfer the D'Onofrio assets to said trust rendering D'Onofrio insolvent and unable to satisfy the judgment entered against him and in favor of Nastro.

### 2. Contrary to Defendants assertions, it is not necessary that Nastro prove Defendants' intent to establish a violation of the mail fraud statute.

---

[3] See Defendants' Memorandum of Law in Support of Motion to Dismiss, dated January 18, 2006, page 4.

To prove a violation of the mail fraud statute "the plaintiff must show 1) that the defendant 'caused' the mailing . . . and 2) that the mailing was for the purpose of executing the scheme or . . . 'incidental to an essential part of the scheme.'" (Internal quotation marks omitted) McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992), (quoting United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir. 1989)). See also: United State v. Altman, 48 F.3d 96, 102 (2d Cir. 1995); Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 363 (U.S.S.Ct. 1954).

Defendants' claim that the only circumstance in which mail or wire fraud may be considered are those cases limited to the involvement of intentional fraud[4] is misplaced. Mail fraud may be proven when the defendant causes the mailing and the mailing was for the purpose of executing the scheme, such as the mailing of certificates and assignments of D'Onofrio's stock and membership interest to the Trust's Trustee, or incidental to an essential part of the scheme, such as the letter sent from the Defendants to the IRS indicating the creation of a foreign trust on behalf of D'Onofrio. Both scenarios mentioned took place after a judgment was entered against D'Onofrio and both scenarios occurred in the furtherance of the scheme to defraud Nastro from his ability to recover amounts due from D'Onofrio.

Further, "[f]raudulent intent may be found from circumstantial evidence that one party arranged matters with another party in such a way as would facilitate the commission of fraud." Crowe v. Henry, 115 F.3d 294, 297 (5th Cir. 1997). D'Onofrio arranged matters with the Defendants and Defendants

---

[4] See Defendants' Memorandum of Law in Support of Motion to Dismiss, dated January 18, 2006, page 4.

5

facilitated the creation of The Chana Trust in order to further D'Onofrio's scheme to defraud Nastro.

The claims set forth in Nastro's Amended Complaint are well within the standards establishing mail and wire fraud. Defendants participated in a scheme to defraud Nastro and they used wire and mail in furtherance of that scheme.

### 3. Nastro has established that Defendants participated in a continuous racketeering activity.

The Defendants created an enterprise that would require continuous activity to maintain assets outside of the reach of Nastro. The Defendants, via telephone, mail and facsimile, created a trust which required long-term maintenance to continue avoiding any claims Nastro could rightfully place on the assets situated therein. The Defendants' predicate acts created and effectuated an open-ended pattern of continuity. These actions by the Defendants demonstrate their participation in racketeering activity.

The fact that these predicate acts did not always involve the same people is irrelevant to establishing the acts necessary to create a pattern of racketeering activity. "It is the relationship these predicates must bear one to another that are the distinct requirements." H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 242, 109 S.Ct. 2893, (1989). Further, "a RICO pattern may be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." Id. Therefore, it is not necessary for Defendants to be the only ones acting to preserve the illegality of

the Trust, only that their acts in creating the Trust have set into motion an open-ended pattern of continuing racketeering activity.

Contrary to Defendants' reliance on a Texas case for the assertion that "[n]umerous uses of the mail in regard to only one claim cannot constitute a pattern", the 2nd Circuit court held in United States v. Indelicato, 865 F.2d 1370, 1383 (2d Cir. 1989) "[w]e doubt that Congress meant to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further but a single scheme." See Proctor & Gamble Company v. Big Apple Industrial Buildings, Inc., 879 F.2d 10, 16 (2d Cir. 1989). "What is required is that the complaint plead a basis from which it could be inferred that the acts . . . were neither isolated nor sporadic." Proctor, 879 F.2d at 16. (Quoting Beauford v. Hemsley, 865 F.2d 1386, 1391 (2d Cir. 1989)).

This is not an isolated event or an isolated victim. Further, the pattern of racketeering activity in creating The Chana Trust was completely related to the establishment of the RICO enterprise. This criminal activity will continue indefinitely for the duration of the existence of The Chana Trust.

### 4. Nastro has established more than two predicate acts.

Nastro has alleged more than two predicate acts in the RICO count against the Defendants. The Defendants made numerous communications between various people in order to effectuate the RICO purpose by creating the Chana Trust in which to hide D'Onofrio's assets.

The court in United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir. 1989)[5], held that "it is not significant for purposes of the mail fraud statute that a third-party, rather than the defendant, wrote and sent the letter at issue, providing, . . . the defendants could reasonably have foreseen that the third-party would use the mail in the ordinary course of business as a result of defendants' act."

In the first communication, Defendants contacted Continental, the Trust's Trustee, by telephone in order to commence proceedings for establishing a Trust. Thus, this contact via telephone constitutes wire fraud as its purpose was to further a scheme to defraud Nastro.

The second alleged predicate act was the communication by facsimile which was sent to Defendants requesting *their direction* as to how to draft the language of the Trust. Seeking instruction from the Defendants as they were "calling the shots" on the construction of this fraudulent Trust. The wire was used in furtherance of the fraud.

Third, Defendants sent a facsimile to Continental, the Trustee for the Trust, requesting further information in order to establish the Trust. Therefore, Defendants were engaged in activity over the wire in furtherance of their scheme to defraud. This was the third predicate act.

Fourth, Trustee sent Defendants notification of D'Onofrio's execution of the Trust, establishing that the scheme to defraud was well under way. This use of the mails constituted the fourth predicate act.

---

[5] This case involved an insurance claim scheme and communications between multiple people, as was part of the business of processing a claim.

Fifth, Defendants sent a letter via mail to the IRS indicating the creation of a foreign trust on behalf of D'Onofrio. This is evidence of the scheme to defraud in that it was a required act in order to execute the Trust and, therefore, represents the fifth predicate act.

Finally, Defendants sent a letter to the Trustee through the mail, containing certificates and assignments of D'Onofrio's stock and membership interest to the Trustee. This is direct evidence of the fraudulent transfer of D'Onofrio's assets into an offshore Trust in order to escape the ability to fulfill his debt to Nastro. This comprises the sixth predicate act.[6]

In the present situation, it was foreseeable to Defendants that in establishing a fraudulent RICO enterprise, Defendants would be required to communicate certain information to various individuals in order to further the scheme. Nastro has properly pleaded the requisite predicate acts in order to form a basis for a RICO count against the Defendants.

### 5. Nastro has established that Defendants are different and distinct from the RICO enterprise.

The Defendants erroneously claim that Nastro failed to allege the Defendants and the RICO enterprise are distinct entities and, therefore, this RICO count must fail. In <u>Riverwoods Chappaqua Corp v. Marine Midland Bank</u>, 30 F.3d 339, 344 (2d Cir. 1994)[7], the court found that although a corporate entity may not be both the RICO person and the RICO enterprise under section

---

[6] Following discovery, further predicate acts may be uncovered.
[7] Riverwoods court ultimately dismissed the RICO claim on the basis that the RICO entity was not separate from the RICO person because the RICO persons identified were the bank and bank employees acting within the scope of their employment.

1962(c), this does not foreclose the possibility of a corporate entity being held liable as a defendant under section 1962(c) where it associates with others to form an enterprise that is sufficiently distinct from itself. Here, the court noted that a section 1962(c) claim may be sustained where there is only a partial overlap between the RICO person and the RICO enterprise and that a defendant may be a RICO person and one of a number of members of the RICO enterprise.[8]

The Court in Fortney, 2001 WL 1539143 (N.D.Ill.), found that a RICO enterprise consisted of property holders, the attorneys who managed and directed the transactions transferring or otherwise unloading the property and the various friends and family member who took or helped to conceal the property or the proceeds from the sale of the property." Fortney, at 3. The attorneys' motion for summary judgment was denied. It is evident from the denial of the attorneys' motion for summary judgment that even though they played a part in the RICO enterprise, they were also found to be distinct persons for the purpose of §1962(c).

Defendants are members of the RICO enterprise, consisting of the association of the persons participating in the scheme to defraud Nastro, but also distinct and separate entities from the RICO enterprise. Elliot I. Miller is a RICO person who is also a member of the RICO enterprise. However, he is a distinct and separate person from the RICO enterprise in his day-to-day activities with

---

[8] In United States v. Stolfi, 889 F.2d 378, 380 (2d Cir. 1989), the Court held "entities that are separate and distinct enterprises for some purposes may jointly be an enterprise for RICO purposes where they have been connected by a defendant's participation in them through a pattern of racketeering activity."

Defendant Kleban & Samor. Defendants are involved in the RICO enterprise to the extent that they participate in the creation, direction and operation of the Trust. The RICO enterprise consists of the Defendants, D'Onofrio, the Chana Trust and The Continental Trust Company, Ltd. Therefore the Defendants are different and distinct from the RICO enterprise.

### 6. The performance of otherwise proper legal services by a lawyer or law firm is a RICO violation.

Defendants claim that the provision of professional services by outsiders to a racketeering enterprise is insufficient to satisfy the participation requirement of RICO, citing Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison, et al., 955 F.Supp. 248, 254 (S.D.N.Y. 1997) and Reves v. Ernst & Young, 507 U.S. 170, 188, 113 S.Ct. 1163 (1993). Despite Reves popularity, the Court in Sluka v. Estate of Herink, 1996 WL 612462 (E.D.N.Y.) at 8, distinguished Reves. Sluka involved a motion to dismiss a RICO count against accountants among others. Id. The Court held "courts have employed a more lenient standard and allowed RICO allegations against professionals to withstand a motion to dismiss." Id. See Mathon v. Marine Midland Bank, 875 F.Supp. 986, 995 (E.D.N.Y. 1995).

Similarly, the Court in Thomas v. Ross & Hardies, 9 F.Supp.2d 547, 554 (D. Maryland 1998) stated that "Reves did not establish a per se rule that one cannot operate or manage an enterprise via the provision of legal services." In ruling on a motion to dismiss Rico claims by the Defendant attorneys who were alleged to run the RICO enterprise, the Court stated that is was

> considering a motion to dismiss, and Plaintiffs are far from establishing that these were the core activities of the firm or that Kershner actually did these acts. . .

> This is a factual dispute that cannot be resolved in a motion to dismiss. . . . the allegations set forth by the complaint sufficiently suggest that there exists a set of facts that would entitle the Plaintiffs to relief."

Id. at 555. The attorneys in Fortney were further unable to obtain summary judgment as the court found that there was enough evidence to overcome the proposition that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under 18 U.S.C. §1962(c)." Fortney at 2.

In light of this information, it is evident that Defendants' use of their professional skills to further a RICO enterprise is sufficient to defeat a motion to dismiss the RICO claims at this stage of the proceedings.

### III. CONCLUSION

The motion before this court is a motion to dismiss. Nastro has sufficiently alleged the elements necessary for the RICO claim. He has certainly set forth enough information to warrant surviving a motion to dismiss. Nastro therefore respectfully requests that Defendants' motion to dismiss be denied.

THE PLAINTIFF
VINCENT NASTRO

by: _____
Edwin L. Doernberger
Fed. Bar No. ct05199
Heidi H. Zapp
Fed. Bar No. ct24426
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed via first class mail, postage pre-paid, to the following counsel of record on February 3, 2006:

Scott M. Karsten, Esq.
Nicole D. Dorman, Esq.
Sack, Spector and Karsten, LLP
836 Farmington Avenue
West Hartford, CT 06119

Thomas P. O'Dea, Jr., Esq.
James M. Sconzo, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880-4739

_____
Heidi H. Zapp