UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **VINCENT NASTRO,** | : |
| Plaintiff, | : |
| v. | : No. 3:02CV00857(DJS) |
| **ARTHUR M. D'ONOFRIO ET AL.,** | : |
| Defendants. | : |

## ORDER

Plaintiff, Vincent Nastro ("Nastro") initially brought this action against thirteen defendants seeking injunctive relief and alleging violations of both federal and Connecticut law. After various motions, conferences, and other proceedings, the only remaining defendants in this case are Kleban & Samor, P.C. ("K&S") and Elliot I. Miller ("Miller") (collectively, "Lawyer Defendants").[1] In the Fifth Count of his Amended Complaint, Nastro alleges that Lawyer Defendants have violated the Racketeer

---

[1] On May 16, 2003, the court dismissed Nastro's claims against The Chana Trust and the Continental Trust Company Limited, as set forth in Nastro's original Complaint, for lack of personal jurisdiction. (See dkt. # 51, Mem. of Decision and Order.) The court also dismissed Nastro's Connecticut Uniform Fraudulent Transfers Act and Connecticut Unfair Trade Practices Act claims against Lawyer Defendants. (See id.) As there were no other claims against Lawyer Defendants at that time, Lawyer Defendants were dismissed from the case. (See id.) Nastro subsequently filed an Amended Complaint, which alleged Lawyer Defendants' RICO violations. On January 13, 2006, Nastro filed a Notice of Dismissal (Partial) (dkt. # 160), in which he gave notice to the court that he was dismissing his action, with prejudice, against: Arthur M. D'Onofrio, Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, Nicole D'Onofrio, New England Propeller Service, Inc., U.S. Propeller Service of CT, Inc., DIV-ACQ, Inc. and ADMW, LLC. On January 19, 2006, the court approved Nastro's Notice of Dismissal (see dkt. # 162). Thus, all defendants have been dismissed from this case except for Lawyer Defendants.

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Lawyer Defendants have filed a Motion to Dismiss **(dkt. # 161)**.   The following facts are alleged in the Amended Complaint.    In 1996, Nastro filed an action against Arthur M. D'Onofrio ("D'Onofrio") in the Superior Court of California in and for the County of San Joaquin ("the California Action").  The California Action went to trial.  On June 7, 2001, Nastro obtained a judgment against D'Onofrio in the California Action in the amount of $514,698.75 for compensatory damages and prejudgment interest and $1,600,000.000 for exemplary damages ("the Judgment").  D'Onofrio appealed the Judgment to the California Appellate Court, but, because he did not file a bond for a stay of proceedings pursuant to the California Code of Civil Procedure, there was no stay of the Judgment.  On August 10, 2001, the Judgment, pursuant to Section 52-605 of the Connecticut General Statutes, was registered in Connecticut and became a judgment of the State of Connecticut.  On April 1, 2003, the California Appellate Court, Third Appellate District, affirmed the award of compensatory damages; however, with regard to the punitive damages, the California Appellate Court remanded the action to the trial court for a new trial that would be based on evidence of D'Onofrio's financial condition at the time of the retrial.

According to Nastro, D'Onofrio, acting as settlor, created The Chana Trust ("the Trust"), an offshore trust located on the Island of Jersey in the Channel Islands. The original trustee of the Trust is the Continental Trust Company Limited ("Continental").[2] The beneficiaries of the Trust are D'Onofrio's wife and children.[3] Nastro maintains that on and before June 21, 2001, D'Onofrio owned 100% of the shares of New England Propeller Service, Inc. ("NEPS"), U.S. Propeller of CT ("USPCT"), Inc., and DIV-ACQ, Inc. ("DIV-ACQ"), and that D'Onofrio also was the owner of a 50% membership in Defendant ADMW, LLC ("ADMW").[4] Nastro further maintains that, on June 21, 2001, D'Onofrio transferred all of his right, title, and interest in his shares of NEPS, USPCT, and DIV-ACQ, and his membership in ADMW, to Continental as trustees of the Trust.

Nastro claims that D'Onofrio received no money, consideration, or other value for the transfers of the above-mentioned shares and membership. In addition, Nastro claims that, as a result of these transfers, D'Onofrio became insolvent. Nastro asserts that the above-mentioned transfers fraudulently deprived him of the remedies he is entitled to under the

---

[2] The Trust and Continental had been defendants in Nastro's original complaint. The court dismissed Nastro's claims against the Trust and Continental for lack of personal jurisdiction.

[3] D'Onofrio's wife and children had been defendants in this case until Nastro filed his Notice of Dismissal.

[4] As with D'Onofrio's wife and children, these companies had been defendants in this case until Nastro filed his Notice of Dismissal.

Judgment.  According to Nastro, who states that he is a "creditor" of D'Onofrio within the meaning of the Connecticut Uniform Fraudulent Transfer Act, D'Onofrio devised a scheme to defraud Nastro by creating an offshore trust and transferring his stocks and membership interests to the trust, thus depriving Nastro of his claims to those assets in satisfaction of any judgment Nastro had against D'Onofrio.

Nastro claims that Defendant K&S, a law firm, and Defendant Miller, a member of K&S, assisted D'Onofrio in this allegedly fraudulent scheme.  That is to say, Nastro maintains that Lawyer Defendants participated and assisted D'Onofrio in establishing the Trust and conducting the allegedly fraudulent transfers.  In addition, Nastro alleges that, because the Trust remains in place, there is a continued scheme to defraud him, and that Lawyer Defendants are involved with continued wrongful activity in order to keep D'Onofrio's assets out of Nastro's reach.  Thus, Nastro claims that Lawyer Defendants' conduct constitutes mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  For their part, Lawyer Defendants maintain that Nastro's RICO count must fail because Nastro cannot establish the requisite elements for a RICO violation.  To support some of their arguments, Lawyer Defendants have submitted an Amended Report of Repatriation and Return of Trust Assets, and an Instrument of Appointment and

Termination. (See dkt. # 167, Reply to Pl.'s Mem. In Opp. to Defs.' Motion to Dismiss, Ex. A.)  Lawyer Defendants assert that these documents prove that the Trust no longer exists and that the assets of the Trust have been returned to D'Onofrio—facts which, according to Lawyer Defendants, preclude Nastro from demonstrating a continuing "pattern of racketeering activity" as required under RICO.

When considering a motion to dismiss, a court may only look to materials outside the pleadings that are either an appropriate subject for judicial notice, or were integral to the complaint or incorporated in it by reference.  See Leonard F. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999); Cortec Indus. Inc., v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1999).  Extrinsic documents are integral to the complaint if the plaintiff "*rel[ied]* on the terms and effect of [the] document[s] in drafting the complaint."  Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006) (internal quotation marks omitted).  With regard to materials subject to judicial notice, "'A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  Id. at 157 (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger

U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).  A court may transform a 12(b)(6) motion into a summary judgment motion pursuant to Rule 56(c) if the parties submit evidence beyond the pleadings; however, such action is inappropriate unless the parties are given notice and an opportunity to respond appropriately.  Fed. R. Civ. P. 12(b)(6) ("If, on a [12(b)(6) motion], . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); see Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000).

Lawyer Defendants premise their arguments, in part, upon the Amended Report of Repatriation and Return of Trust Assets and the Instrument of Appointment and Termination.  Here, though, the Amended Complaint did not reference these materials, nor did it rely in any way upon the terms or effect of these documents. Because Lawyer Defendants rely upon materials that were outside of the pleadings, but which were attached to Lawyer Defendants' paperwork and are now a part of the record, the court shall convert defendants' pending 12(b)(6) motion to dismiss into a motion for summary judgment.  **As such, the parties shall have an opportunity to file supplemental briefs and exhibits on or before December 29, 2006.  The parties shall also have the opportunity**

to respond to the supplemental briefs.  The responses shall be filed on or before January 19, 2007 and, if necessary, reply briefs shall be filed on or before February 2, 2007.

**SO ORDERED** this <u>22nd</u> day of November, 2006.

<u>    /s/DJS        </u>
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**