UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

----------------------------------------------------x
VINCENT NASTRO                :   NO. 3:02 CV 00857 (DJS)
                                 :

The Plaintiff          :

v.                         :

ARTHUR M. D'ONOFRIO, et al    :

The Defendants    :
----------------------------------------------------x  JANUARY 29, 2007

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to this Court's order dated November 22, 2006, the defendants, KLEBAN & SAMOR, P.C. and ELLIOT I. MILLER (hereinafter Attorney Miller), hereby submit this supplemental memorandum of law in support of their motion for summary judgment[1].

### I.    STATEMENT OF FACTS

This matter arises out of the plaintiff, Vincent Nastro's, attempt to enforce a judgment which was entered against the defendant, Arthur D'Onofrio, in a California action to dissolve a corporation which both Mr. Nastro and Mr. D'Onofrio owned.

---

[1] The Court's order dated November 22, 2006 converted the defendants 12(b)(6) motion to dismiss into a motion for summary judgment and provided the parties with the opportunity to file supplemental briefs and exhibits.

The defendant, Attorney Elliot Miller, is a Connecticut and New York lawyer who was of counsel to the law firm of Kleban & Samor, P.C. until he retired from the practice of law in August 2006. (Defendants' Local Rule 56(a)1 Statement, ¶ 2).

In late-April/early May 2001, Attorney Miller received a telephone call from a lawyer who advised him that he had referred Mr. Arthur D'Onofrio to him for tax advice related to an off-shore trust that Mr. D'Onofrio was establishing. (Defendants' Local Rule 56(a)1 Statement, ¶ 4). Shortly thereafter, Attorney Miller received a telephone call from Mr. D'Onofrio. (Id. at ¶ 5). Mr. D'Onofrio advised Attorney Miller that he had been referred to him for tax advice in connection with an off-shore trust that he was establishing for the benefit of his wife and children in Jersey, in the Channel Island (hereinafter referred to as "the Chana Trust"). (Id. at ¶ 5). Attorney Miller had never spoken with, nor had he ever provided legal advice to, Mr. D'Onofrio before this conversation. (Id. at ¶ 5).

After their initial telephone conversation, Attorney Miller and Mr. D'Onofrio met at Attorney Miller's office to discuss some of the tax issues and/or tax implications surrounding Mr. D'Onofrio's establishment of the Chana Trust. (Defendants' Local Rule 56(a)1 Statement, ¶ 6). At this meeting, Attorney Miller referred Mr. D'Onofrio to the Continental Trust Company. (Id. at ¶ 6). Attorney Miller recommended the Continental Trust Company to Mr. D'Onofrio because in his experience, the Continental Trust Company was more sensitive to United States tax considerations than other Jersey banks and fiduciary institutions and it

- 2 -

was willing to modify its trust language to accommodate United States tax law. <u>Id</u>.

On or about May 11, 2001, Mr. D'Onofrio formally retained Attorney Miller to give tax advice regarding the provisions of the Chana Trust. (<u>Id</u>. at ¶ 7). The scope of Attorney Miller's representation was to review the draft trust document and to provide advice concerning the estate tax, gift tax and income tax effects of the establishment of the Chana Trust. (<u>Id</u>.)

After Attorney Miller was retained, he received a draft copy of the Chana Trust from the trustee, Continental Trust Company. (Defendants' Local Rule 56(a)1 Statement, ¶ 8). Neither Attorney Miller nor anyone from Kleban & Samor, P.C. had any involvement in preparing the initial draft copy of the Chana Trust. (<u>Id</u>.).

Once the draft copy of the Chana Trust was received, both Attorney Miller and associates at Kleban & Samor, P.C. reviewed the provisions of the Chana Trust for their potential estate, gift and income tax implications. (Defendants' Local Rule 56(a)1 Statement, ¶ 9). After reviewing the initial draft copy of the Chana Trust, an associate at Kleban & Samor, P.C. prepared a memorandum which was sent to Mr. D'Onofrio detailing Attorney Miller and/or Kleban & Samor, P.C.'s analysis and advice with respect to the estate, gift and income tax implications of the provisions contained in the draft copy of the Chana Trust. (<u>Id</u>. at ¶ 10). Also, requested revisions to the draft copy of the Chana Trust were communicated to the trustee, Continental Trust Company. (<u>Id</u>. at ¶ 11).

Thereafter, several more drafts of the Chana Trust were provided to Kleban & Samor, P.C. and associates at Kleban & Samor, P.C. reviewed these revised trust documents and made additional comments from an estate, gift and income tax perspective. (Id.).

According to the trust document, on or about June 21, 2001, Mr. D'Onofrio executed the Chana Trust in Jersey, in the Channel Islands. (Defendants' Local Rule 56(a)1 Statement, ¶ 12). Neither Attorney Miller nor anyone from Kleban & Samor, P.C. was present when the Chana Trust was executed. (Id.). Furthermore, unbeknownst to Attorney Miller, judgment had apparently entered against Mr. D'Onofrio in the California action brought by Mr. Nastro approximately two weeks prior to execution of the Chana Trust. (Id. at ¶ 18).

After the Chana Trust was executed, an associate at Kleban & Samor, P.C. sent to the Continental Trust Company a Form SS-4, which is an application for an employer identification number for the Chana Trust. (Defendants' Local Rule 56(a)1 Statement, ¶ 13). Additionally, on or about July 2, 2001, an associate at Kleban & Samor, P.C. prepared and filed a Form 3520 with the Internal Revenue Services. (Id. at ¶ 14). This document was filed in order to report to the Internal Revenue Services that a foreign trust had been established, as required by law. (Id.).

In April 2002, Kleban & Samor, P.C. prepared and filed fiduciary income tax returns for the Chana Trust. (Defendants' Local Rule 56(a)1 Statement, ¶ 16).

Apparently, on or before this time, Mr. Nastro commenced an action in the Connecticut Superior Court to collect on the California judgment entered against Mr. D'Onofrio.

Thereafter, on May 17, 2002, Mr. Nastro commenced the present action against Mr. D'Onofrio, his wife and children, the Connecticut based companies in which he owned and transferred stock, the Chana Trust, the Continental Trust Company, Kleban & Samor, P.C. and Attorney Miller. In his original complaint, Mr. Nastro claimed that Mr. D'Onofrio's transfer to stock to the Chana Trust was a "fraudulent transfer" pursuant to Connecticut General Statutes § 52-555a. As to Attorney Miller and Kleban & Samor, P.C., Mr. Nastro alleged that they participated and assisted Mr. D'Onofrio in the establishment of the Chana Trust and in the "fraudulent transfer" of stock. Mr. Nastro also alleged that Attorney Miller and Kleban & Samor's alleged participation and assistance in the transfer of assets violated CUTPA.

On or about August 5, 2002, Attorney Miller and Kleban & Samor filed a motion to dismiss the plaintiff's complaint. This motion was granted by the Court on May 16, 2003. On June 6, 2003, following the Court's order of dismissal, Mr. Nastro filed a new complaint purporting to allege, in relevant part, a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Attorney Miller and Kleban & Samor, P.C. On June 24, 2003, Attorney Miller and Kleban & Samor, P.C. filed a motion to dismiss Mr. Nastro's June 6, 2003 complaint.

On July 29, 2004, while Attorney Miller and Kleban & Samor, P.C.'s motion to dismiss was pending, Mr. D'Onofrio filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code, commencing Chapter 11 Case No. 04-33561. (Defendants' Local Rule 56(a)1 Statement, ¶ 19). Because of this filing, the Court entered an order dated August 23, 2004 staying all action in this case[2].

On or about December 23, 2004, the Chana Trust was terminated and the trust assets were repatriated and returned to Mr. D'Onofrio's custody. (Defendants' Local Rule 56(a)1 Statement, ¶ 20). Thereafter, at some point prior to November 4, 2005, Mr. Nastro and Mr. D'Onofrio, among others, reached a settlement in the Bankruptcy Case. (Defendants' Local Rule 56(a)1 Statement, ¶ 22). The settlement concluded and/or terminated, with prejudice, all actions by Mr. Nastro against Mr. D'Onofrio, including the subject lawsuit. (Id.)

On December 7, 2005, the court granted the parties' motion to reopen the subject lawsuit. On January 18, 2006, Attorney Miller and Kleban & Samor, P.C. re-filed their motion to dismiss the plaintiff's complaint. On February 6, 2006, the plaintiff filed his objection to the defendants' motion to dismiss and on February 28, 2006, the defendants filed their reply.

On November 22, 2006, this Court issued an order converting the defendants' motion to dismiss into a motion for summary judgment and providing

---

[2] On July 8, 2005, the Court closed the case administratively because pursuant to D. Conn. L. Civ. R. 41(a), there had been no action in this case under the applicable time limitation.

the parties with an opportunity to file supplemental briefs. This memorandum of law is filed in accordance with this Court's November 22, 2006 and is intended to supplement the briefs previously filed by Attorney Miller and Kleban & Samor, P.C.

## II.   STANDARD OF REVIEW

The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of establishing that no material factual issues are in dispute. Diggs v. Town of Manchester, 303 F.Supp.2d 163, 166 (D.Conn. 2004). Summary judgment is appropriate when the moving party has proven that there is no evidence to support an essential element of the plaintiff's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court is required to resolve ambiguities and draw reasonable inferences in favor of the nonmoving party in determining whether a genuine issue of material fact exists. Diggs, supra, at 166. However, if the evidence presented by the nonmoving party is "merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). Thus, when a properly supported motion for summary judgment is made the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id.

III.    ARGUMENT

        **A.**    **The Plaintiff Cannot Produce Any Evidence to Support Any of the Elements Necessary to Prevail on   Claim Under the Racketeer Influenced and Corrupt Organizations Act**

The Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO") was enacted primarily "to attack the infiltration of organized crime and racketeering into legitimate organizations." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993)(quoting S.Rep. No. 91-617, at 76). However, RICO does provide for civil claims for damages for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

In order to properly state a RICO claim for damages under 18 U.S.C. § 1962(c), a plaintiff must establish: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2nd Cir. 1990).

        **1.**    **Plaintiff cannot establish conduct which constitutes a " racketeering activity" under RICO**

As stated above, in order to state a claim for RICO against a defendant, the plaintiff must establish that the defendant engaged in "racketeering activity."  In the present case, the plaintiff claims that Attorney Miller and Kleban & Samor, P.C. assisted and participated in committing mail and wire fraud in "fraudulently"

transferring Mr. D'Onofrio's stock and membership interest in certain corporations to the Chana Trust. Despite the plaintiff's claims, neither the transfer of these assets or any of the alleged communications constitute mail or wire fraud actionable under RICO and therefore, judgment should enter in favor of Attorney Miller and Kleban & Samor, P.C.

The relevant provision of the RICO which defines a "racketeering activity" states that:

> "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance...which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is **indictable** under any of the following provisions of title 18, United States Code: ...section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)....

18 U.S.C. § 1961(1).

The crime of Mail Fraud, under 18 U.S.C. § 1341, is committed whenever:

> [Any individual], having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false of fraudulent pretenses, representations, or promises ...for the purpose of executing such a scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing ... .

Likewise, the crime of Wire Fraud under 18 U.S.C. § 1343 is committed whenever:

> [Any individual], having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds, or the purpose of executing such scheme or artifice
> .... .

Because a claim of mail or wire fraud must be indictable under 18 U.S.C. § 1341 and § 1343, in order to establish that a defendant engaged in such activity so as to demonstrate participation in "racketeering activity," the plaintiff must prove that the defendant "(1) participated in a scheme to defraud (2) with money or property as the object of the scheme, and (3) use of the mail or wires in furtherance of the scheme." United States v. Dinome, 86 F.3d 277, 283 (2nd Cir. 1996). In addition, the plaintiff must prove that the "scheme was devised with the specific intent to defraud...that the use of the mails [or wires] in furtherance of the scheme was reasonably foreseeable...that...non disclosures or affirmative misrepresentations [were] material, [and] that some actual harm or injury was at least contemplated." The Cadle Company v. Flanagan, 2005 WL 1039005 *10 (D.Conn. 2005), citing United States v. Rodolitz, 786 F.2d 77, 80 (2nd Cir. 1986).

In the present case, the plaintiff's claims of mail and wire fraud against Attorney Miller and Kleban & Samor, P.C. are not based on any intentional fraud, but at best, an alleged constructive fraud in establishing the Chana Trust. It is

- 10 -

evident that when characterizing the transfer of Mr. D'Onofrio's stock to the Chana Trust as a "fraudulent[] transfer," (Complaint, Fifth Count, ¶ 37),  the plaintiff is relying on Connecticut's Fraudulent Transfer Act, Connecticut General Statutes § 52-552f.[3]  This statue provides the standard under which a transaction may be challenged without regard to the intent of the debtor to defraud.  This statute merely describes a form of "constructive fraud" premised, not on intentional wrongdoing or misrepresentations, but on proof relating to the timing of the creditor's claim, the questioned transaction, the identity of the transferee, the consideration received and the insolvency of the debtor at certain times. However, just because a transaction may be deemed a constructive fraud under Connecticut General Statutes § 52-552f, it does not necessarily mean that a fraud has been committed which would be actionable under RICO.

For example, in <u>Webster Industries, Inc. v. Northwood Doors, Inc.</u>, 320 F.Supp. 2d 821 (N.D. Iowa 2004), the plaintiff suppliers brought suit against an insolvent manufacturer, related entities, and individual officers seeking payments allegedly due and asserting various theories to support their claims, to include a cause of action for RICO.  In their RICO claim, the plaintiffs alleged that the defendants engaged in racketeering activity when they transferred property in violation of Iowa's version of the Uniform Fraudulent Transfer Act ("UFTA").

---

[3] Connecticut General Statutes § 52-552f states, in relevant part, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation."

- 11 -

The UFTA, which is nearly identical to Connecticut's Fraudulent Transfer Act, Connecticut General Statutes § 52-552f, provides, in part, that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation under any of the following circumstances: (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; [or] (b) [w]ithout receiving a reasonably equivalent value in exchange for the transfer ... ."

In granting summary judgment in favor of the defendants on the plaintiffs' RICO claim, the court found that "fraudulent transfers" in violation of UFTA were not racketeering activities actionable under RICO. Specifically, the court held that:

> ... 'fraudulent transfers', as defined by the UFTA are not criminal offenses identified as 'racketeering activity' in 18 U.S.C. § 1961(a). Therefore, even if adequately pleaded, such "fraudulent transfers" would not support the [plaintiff's] 'RICO' claims." Furthermore, ... no mailings related to such transfers could form the basis for a 'mail fraud' predicate act.

(Internal citations omitted); Id. at 848.

That is precisely the situation in the present case. Here, the plaintiff's RICO claim is based on the supposed "fraudulently transferring [of] Arthur M. D'Onofrio's stocks in Connecticut Corporations and his membership interest in a limited liability company to the Chana Trust[4]." (See Amended Complaint, Fifth Count, ¶ 37). However, as the court aptly noted in Webster Industries, Inc.,

---

[4] The plaintiff also claims, in paragraph 28 of Fifth Count that "[t]he aforesaid transfers were fraudulent as to Nastro pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a, et seq."

"fraudulent transfers', as defined by the UFTA are not criminal offenses identified as 'racketeering activity' in 18 U.S.C. § 1961(a)" and cannot constitute a mail or wire fraud predicate act under RICO. Id.

Furthermore, all of the communications allegedly supporting the plaintiff's RICO claims are related to the Chana Trust and the claimed "fraudulent transfer" pursuant to Connecticut General Statutes § 52-552a. According to the plaintiff's complaint and RICO Statement dated June 6, 2003, the communications which constitute mail and wire fraud are:

> (a)    A May 16, 2001 telephone conversation between Kleban & Samor, P.C. and the Continental Trust Company in connection with the creation of the Chana Trust;

> (b)    A fax dated May 14, 2001 from Kleban & Samor, P.C. to the Continental Trust Company making specific inquiries about language for the trust instrument.

> (c)    A fax dated June 22, 2001 from Kleban & Samor, P.C. to the Continental Trust Company containing a SS-4 form, the application for an employer identification number for the trust for IRS purposes.

> (d)    A letter dated June 21, 2001 from the Continental Trust Company to Attorney Miller indicating the creation of the foreign trust on behalf of Mr. D'Onofrio.

> (e)    A letter dated July 11, 2001 from Kleban & Samor, P.C. to the Continental Trust Company enclosing certificates and assignments of

- 13 -

Mr. D'Onofrio's stock and membership interest to the Trustee, Continental Trust Company.

It is evident that each one of these communications by or between Attorney Miller and Kleban & Samor, P.C. involve or relate to the Chana Trust and/or the alleged "fraudulent transfer" by Mr. D'Onofrio. However, since a "fraudulent transfer" in violation of Connecticut General Statutes § 52-552a is not a criminal offense identified as "racketeering activity" in 18 U.S.C. § 1961(a), and cannot constitute a mail or wire fraud predicate act under RICO, any truthful and accurate communication relating to the same cannot form the basis for mail or wire fraud actionable under RICO. See Webster Industries, Inc., supra.

In the present case, there is no evidence that Attorney Miller or Kleban & Samor, P.C. made any intentional misrepresentations to anyone with the intent that they rely upon it to their detriment. Furthermore, there is no evidence that the establishment of the Chana Trust and the transfer of assets were made under any false misrepresentations or pretenses  In fact, Attorney Miller did not even know of the California judgment entered in favor of the plaintiff before the Chana Trust was executed. (Defendants' Local Rule 56(a)1 Statement, ¶ 18).

Therefore, in the complete absence of any evidence that Attorney Miller or Kleban & Samor, P.C. engaged "racketeering activity" – namely,  mail or wire fraud indictable under 18 U.S.C. § 1341 and  § 1343 - the plaintiff's RICO claim must fail and the defendants' motion for summary judgment should be granted.

**2.    Plaintiff cannot establish a continuous racketeering activity under RICO.**

Even if this court finds that the defendants engaged in "racketeering activity" sufficient to support a claim for RICO, the defendants are still entitled to summary judgment because the plaintiff cannot establish a continuous racketeering activity as required by statute.

In order to prove a continuous racketeering activity under RICO, a plaintiff "must show that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone, 492 U.S. 229, 239 (1989). "Continuity is both a closed- and open-ended concept, referring either to a closed period of related conduct that by its nature projects into the future with a threat of repetition." Id at 241.

Closed-ended continuity may be established by "a series of related predicates extending over a substantial period of time." Feirstein v. Nanbar Realty Corp., 963 F.Supp. 254, 259 (S.D.N.Y. 1997). As more than one court has noted, the Second Circuit has never "held that a period of less than two years amounted to a period of time sufficiently substantial to make out a closed-ended pattern." First Capital Asset Management, Inc., 150 F.Supp.2d 624, 634 (S.D.N.Y. 2001) ; SKS Constructors, Inc. v. Drinkwine, 458 F.Supp.2d 68, 78 (E.D.N.Y. 2006)("The Second Circuit has noted that it has never held a period of less than two years of activity sufficient to satisfy the closed ended continuity requirement.") citing DeFalco v. Bernas, 244 F.3d 286, 321 (2nd Cir. 2001).

On the other hand, open-ended continuity may be established by showing "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." DeFalco v. Bernas, 244 F.3d 286, 323 (2nd Cir. 2001). When the enterprise "primarily conducts a legitimate business, there must be evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." First Capital Asset Management, 150 F.Supp.2d 633.

In the present case, the plaintiff cannot prove closed or open-ended continuity in order to establish a claim under RICO. As the evidence in this case demonstrates, Mr. D'Onofrio retained Attorney Miller on May 11, 2001 to give tax advice concerning the provisions of the Chana Trust. (Defendants' Local Rule 56(a)1 Statement, ¶ 7). The last possible act of Kleban & Samor, P.C. and Attorney Miller related to the Chana Trust occurred in April 2002, when Kleban & Samor prepared and filed fiduciary income tax returns for the Chana Trust. (Defendants' Local Rule 56(a)1 Statement, ¶ 16). Therefore, even assuming that the alleged acts of Attorney Miller and Kleban & Samor, P.C. are predicate acts sufficient to state a claim for RICO, these acts, at most, spanned eleven months. This simply is insufficient to prove closed-ended continuity.

Moreover, the plaintiff cannot establish open-ended continuity because there is no threat of continued "criminal activity." As the evidence in this case demonstrates, the Chana Trust was terminated and the assets of the trust were

repatriated and returned to Mr. D'Onofrio's custody on December 23, 2004. (Defendants' Local Rule 56(a)1 Statement, ¶ 20). Thereafter, at some point before November 4, 2005, Mr. Nastro and Mr. D'Onofrio, among others reached a settlement in Mr. D'Onofrio's bankruptcy action, which resulted in the conclusion and/or termination, with prejudice, of all actions by Mr. Nastro against Mr. D'Onofrio, including the subject lawsuit. (Id. at ¶ 22). Again, assuming that the alleged acts of Attorney Miller and Kleban & Samor, P.C. are predicate acts sufficient to state a claim for RICO, the plaintiff cannot prove open-ended continuity because the Chana Trust has been terminated and his judgment against Mr. D'Onofrio has been satisfied.

### 3.    Plaintiff cannot establish two or more predicate acts that constitute a pattern of racketeering activity under RICO

The plaintiff cannot establish two or more predicate acts that establish a pattern of racketeering activity as required to prevail on a cause of action under RICO. The RICO statute clearly states that a "pattern of racketeering activity requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "[A]lthough two acts are necessary they are per se not sufficient to show a pattern." Feirstein v. Nanbar Realty Corp., 963 F.Supp. 254, 260 (S.D.N.Y. 1997), citing Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 n. 14 (1985). It is well established that multiple acts in furtherance of a single criminal scheme do not constitute a pattern of racketeering activity. See Persaud v. Bode, FHB, 2006 WL 1419397 (E.D.N.Y. 2006); Linens of Europe, Inc. v. Best Mfg., Inc., 2004

WL 2071689 (S.D.N.Y. 2004); Tellis v. United States Fid. & Guar. Co., 826 F.2d 477, 478 (7th Cir. 1986).

In Persaud, supra, a plaintiff brought a RICO claim against several defendants alleging fraud, extortion, and conspiracy to commit fraud when they allegedly conspired with plaintiff's prior attorney to sell the plaintiff a parcel of property which he already owned. Persaud, at *3. The plaintiff alleged that the defendants sold him property to which they did not have title, initiated an unlawful foreclosure on his property and then fraudulently resold the property to the plaintiff. Id. at * 5. In this instance, the court found that if the allegations were true, they would only "constitute one act of fraud" insufficient to establish at least two predicate acts. Id.

Likewise in Tellis, supra, the Seventh Circuit Court of Appeals found that multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim, relating to one basic transaction does not constitute a necessary pattern under RICO. Tellis, 826 F.2d 480. In that case, an employee filed a RICO claim against his employer and employer's insurer. Id. at 477. The plaintiff claimed that he was induced, by false statements made by his employer at a workers' compensation hearing, to accept a proposed settlement. Id. at 479. The employer stated at the hearing that the plaintiff could return to a light duty job if the settlement was accepted, however, the plaintiff was denied re-employment. Id.

In Tellis, the plaintiff set forth the predicate acts, in his RICO statement, as "a series of fraudulent mailings, including a letter requesting plaintiff to submit to

- 18 -

a physical examination, a notice requesting that he appear at a hearing before the Illinois Industrial Commission, a medical report by the physician who examined him, the settlement check, a check made out to the physician in payment for his services in examining plaintiff and rendering his report, and a payment to the [insurer]..." Id. The Court of Appeals agreed with the district court's analysis that "multiple acts of mail fraud did not constitute a pattern where they all occurred within a fairly short period of time, related to a single transaction, [] involved a single victim, and inflicted a single injury." Id. Therefore, the court did not find a pattern of racketeering activity necessary to prove a RICO claim.

In the present case, the plaintiff cannot establish two predicate acts as is required to establish a pattern of racketeering activity under RICO. Based on the allegations of the plaintiff's complaint and the evidence presented with this motion, it is clear that there is only one alleged transaction, namely, the creation of the Chana Trust. In fact, the plaintiff alleges in his RICO statement that the purpose of the alleged enterprise was to create and maintain the Chana Trust. Each and every allegation regarding the use of the mail and facsimiles by the plaintiff relates to the single act of establishing the Chana Trust. As the court aptly noted in Tellis, "[n]umerous uses of the mail in regard to only one claim cannot constitute a pattern." Therefore, since the plaintiff cannot establish two or more predicate acts on the part of Attorney Miller and Kleban & Samor, P.C., the defendants' motion for summary judgment should be granted.

- 19 -

### 4. The alleged RICO enterprise and the RICO person are identical.

The plaintiff cannot establish that the alleged RICO person is distinct from the alleged RICO enterprise. The RICO statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A plaintiff must "allege and prove the existence of two distinct entities: (1) a person; and (2) and enterprise that is not simply the same person referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).

In the present case, the plaintiff alleges in his RICO case statement that "person" and the RICO "enterprise" are not distinct, but rather, admits the defendants are the enterprise. This admission is fatal to the plaintiff's claim. Therefore, since the plaintiff has admitted that the RICO person is the same as the RICO enterprise, the plaintiff cannot establish a legally sufficient RICO claim and the defendants are entitled to judgment as a matter of law.

### 5. The plaintiff cannot prove that the defendants participated in the operation of management of an enterprise since the evidence demonstrates that the defendants' conduct involved only ordinary legal services by tax attorneys.

18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs...." In order for a RICO claim to be

actionable against an attorney, the attorney must "participate in the operation or management of the enterprise itself." See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).

In Turkish v. Kasenetz, 964 F.Supp. 689, 694-695 (E.D.N.Y. 1997), the plaintiffs brought an action for RICO against various family members and associates. In addressing the "operation or management" element of a RICO cause of the action, the court noted that:

> [t]o be liable under 18 U.S.C. §1962(c), a defendant must have participated in the operation or management of the enterprise itself. An enterprise may be operated not only by upper management, but also by individuals, although only associated with the enterprise, nevertheless exert control over it.
>
> Generally, an attorney's provision of legal services does not constitute "operation or management" of the alleged enterprise.   This is true even where an attorney's advice facilitates a client's fraudulent scheme or assists in its concealment.
>
> But where a lawyer's actions are unrelated to representation of a client or demonstrate a direct and independent role in the affairs of the enterprise, such attorney may be held liable under RICO.

Id. at 694-695 (internal quotation marks and citations omitted) (emphasis added). The Court in Turkish declined to grant summary judgment in favor of the defendant attorney where it was alleged that the attorney did not act merely as legal counsel, but was the co-executor of an estate alleged to be one of the RICO enterprises. The court found that the allegations, if true, would place the attorney not in the role of an outside professional but as a direct participant in the affairs of

the enterprise.  No such evidence has been presented in this case.  In fact, the evidence demonstrates that Attorney Miller's and Kleban & Samor, P.C.'s only involvement in this case was the provision of tax advice and services regarding Mr. D'Onofrio's establishment of the Chana Trust.  This is not enough for RICO. See also, Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.I., 832 F.Supp. 585, 592 (E.D.N.Y. 1993)(plaintiff adduced no facts to suggest that attorney's actual or projected role was to "lead, run, manage, or direct" any part of the enterprise; thus, he did not participate in the "conduct" of an enterprise and did not violate §1962(c), even though he may have intentionally assisted a scheme to defraud).

In Baumer v. Pachl, 8 F.3d 1341 (9th. Cir. 1993), the plaintiffs brought a civil RICO claim against an attorney alleging (1) between April and September, 1982 the attorney undertook by use of the United States mail numerous efforts to perpetuate an alleged fraud, including the preparation of two letters in September 1982 to the Department of Corporations and other persons and entities, allegedly designed to forestall and cover-up the fraud by minimizing or mischaracterizing the allegedly improper activities of others, and (2) in 1982 the attorney knowingly filed a false partnership agreement in which he inflated the number of limited partners and mailed to the limited partners copies of the agreement, to create the false impression that a partnership was formed and operated in accordance with law. Id. at 1342-1343.  The Court found that these allegations were insufficient to state a RICO cause of action against the attorney.

[The attorney's] involvement, the preparation of two
letters in September, 1982, the preparation of a
partnership agreement in 1982, and assistance in a
March, 1987 Chapter 7 proceeding, in which he again
sent two letters, does not suffice to impute liability
under _Reves_. The allegedly fraudulent scheme began
in 1976 and continued until 1987; [the attorney's]
involvement did not begin until 1982 and his role
thereafter was at best sporadic. [The attorney] at no
time held any formal position in the limited
partnership. Nor did he play any part in directing the
affairs of the enterprise. [The attorney's] role was
limited to providing legal services to the limited
partnership and EPA. Whether [the attorney] rendered
his services well or poorly, properly or improperly, is
irrelevant to the _Reves_ test. We are therefore
compelled to conclude that under the _Reves_ "operation
or management" test the complaint fails to allege a
§1962(c) cause of action as to [the attorney]. _See also_
_Univ. of Md. at Balt., et al v. Peat, Marwick, Main &_
_Co._, 996 F.2d 1534, 1539 (3d Cir. 199) (case decided
after _Reves_ wherein court stated that "[s]imply because
one provides goods or services that ultimately benefit
the enterprise does not mean that one becomes liable
under RICO as a result. There must be a nexus
between the person and the conduct in the affairs of an
enterprise. The operation or management test goes to
that nexus.").

Id. at 1344-45.

The Second Circuit Court of Appeals applied the Reves operation and

management standard in Azrielli v. Cohen Law Offices, 21 F.3d 512 (2nd Cir.

1994). In that case, purchasers of a stock corporation brought a RICO claim

against the sellers and their attorneys stemming from a flip/assignment real estate

transaction. Id. at 515. The sellers were referred to the defendant attorney to

represent them at the closing. Id. at 521. The defendant attorney argued that he

acted as no more than their attorney and had no role in any of the events prior to

the referral. Id. The attorney further asserted that he had no role in the conception, creation, or execution of the purported flip/assignment. Id. The court applied the Reves standard and stated that "the plaintiffs produced no evidence to show that [the attorney] in any way participated in the management or direction of a RICO enterprise." Id.

In the present case, the evidence demonstrates that Attorney Miller and Kleban & Samor, P.C.'s role was confined, at all times, to providing standard and appropriate legal advice and services.  Attorney Miller was retained by Mr. D'Onofrio to review the draft trust documents, provide advice concerning the estate, gift and income tax effects of the establishment of the Chana Trust and prepare required tax filings. (Defendants' Local Rule 56(a)1 Statement, ¶ 7). After he was retained, Attorney Miller and/or Kleban & Samor, P.C. reviewed the draft trust document, communicated tax advice to Mr. D'Onofrio, requested revisions to the trust document, prepared and filed required forms with the Internal Revenue Services, and prepared and filed fiduciary and income tax returns for the Chana Trust. (Defendants' Local Rule 56(a)1 Statement, ¶¶ 8, 9, 11, 13, 14, 16). This evidence clearly demonstrates that Attorney Miller and Kleban & Samor, P.C. role with regard to the Chana Trust was providing legal services to Mr. D'Onofrio and as the above-cited case law demonstrates, this is simply not enough to prevail on a claim for RICO against an attorney.

Therefore, because there is no evidence that Attorney Miller and Kleban & Samor, P.C. engaged in any conduct other than the normal and appropriate

provision of legal advice and services, the plaintiff cannot establish that the defendants participated in the management or direction of a RICO enterprise and therefore, the defendants are entitled to judgment as a matter of law.

IV.    CONCLUSION

As stated above, in order to prevail on a RICO claim, the plaintiff must prove that (1) the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. What is clear is that the plaintiff has absolutely no evidence to support any one of these elements. Instead, what the evidence demonstrates is that Attorney Miller and Kleban & Samor, P.C., sole involvement with Mr. D'Onofrio and the Chana Trust was the provision of standard and appropriate tax advice and services, as they were retained to do. Such evidence is simply insufficient to support a claim for RICO. Accordingly, for the reasons set forth herein, there exists no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law.

WHEREFORE, the defendants, KLEBAN & SAMOR, P.C. and ELLIOT

I. MILLER, respectfully request this court grant their Motion for Summary

Judgment.

THE DEFENDANTS
Elliot I. Miller and
Kleban & Samor, P.C.


By _____
        Anthony Nuzzo, Jr.
        Federal Bar No: CT05397
        NUZZO & ROBERTS, L.L.C.
        One Town Center
        P.O. Box 747
        Cheshire, Connecticut 06410
        Tel:  (203) 250-2000
        Fax:  (203) 250-3131
        anuzzo@nuzzo-roberts.com

## CERTIFICATION

This is to certify that on January 29, 2007, a copy of the foregoing Defendants' Supplemental Memorandum of Law in Support of Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By _____

Anthony Nuzzo, Jr.
Federal Bar No. CT05397
NUZZO & ROBERTS, L.L.C.
One Town Center
P.O. Box 747
Cheshire, Connecticut 06410
Tel: (203) 250-2000
Fax: (203) 250-3131
anuzzo@nuzzo-roberts.com

\\fp\nuzzo\wp\423002\134\Memo Law MSJ 1 29 07.doc

- 27 -