UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
-----------------------------------------------------x
VINCENT NASTRO                      :   NO. 3:02 CV 00857 (DJS)
                                    :
                                    :
            The Plaintiff           :
                                    :
v.                                  :
                                    :
ARTHUR M. D'ONOFRIO, et al          :
                                    :
                                    :   JANUARY 29, 2007
            The Defendants          :
-----------------------------------------------------x
```

## DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT

The defendants, KLEBAN & SAMOR, P.C. and ELLIOT I. MILLER, contend that there are no genuine issues of material fact to the following statements.

1.    This matter arises out of the plaintiff, Vincent Nastro's attempt to enforce a judgment which was entered against the defendant, Arthur D'Onofrio, in a California action to dissolve a corporation which both Mr. Nastro and Mr. D'Onofrio owned. Amended Complaint ("Complaint"), ¶¶ 15-31,

2.    The defendant, Attorney Elliot Miller, is a Connecticut and New York attorney who was of counsel with the law firm of Kleban & Samor, P.C. until he retired

from the practice of law in August 2006.  Exhibit 1, Affidavit of Elliot I. Miller dated January 24, 2007, ¶ 3.

3.    Attorney Miller's practice concentrated on corporate transactions, and on the trial and management of complex litigation matters, including international corporate financings, domestic venture capital financings primarily for technology-based enterprises, offshore trusts and corporations, corporate securities and tax.  Exhibit 1, ¶ 3.

4.    In late-April/early-May 2001, Attorney Miller received a telephone call from a lawyer who advised him that he had referred Mr. Arthur D'Onofrio to him for tax advice related to an off-shore trust that he was establishing.  Exhibit 1, ¶ 4.

5.    Shortly thereafter, Attorney Miller received a telephone call from Mr. Arthur D'Onofrio. Mr. D'Onofrio advised Attorney Miller that he had been referred to him for tax advice in connection with an off-shore trust that he was establishing for the benefit of his wife and children in Jersey, in the Channel Islands (hereinafter referred to as "the Chana Trust").  Attorney Miller had never spoken with, nor had he ever provided legal advice to, Mr. D'Onofrio before this conversation.  Exhibit 1, ¶ 5.

6.    After Attorney Miller's initial telephone conversation with Mr. D'Onofrio, Attorney Miller met with Mr. D'Onofrio at his office to discuss some of the tax issues and/or implications surrounding his establishment of the Chana Trust.  At this meeting, Attorney Miller referred Mr. D'Onofrio to the Continental Trust Company because in

Attorney Miller's experience, the Continental Trust Company was more sensitive to United States tax considerations than other Channel Island banks and fiduciary institutions and they were willing to adapt their trust language to accommodate United States tax law.  Exhibit 1, ¶ 6.

7.    On or about May 11, 2001, Mr. D'Onofrio retained Attorney Miller to give tax advice concerning the provisions of the Chana Trust.  The scope of Attorney Miller's representation was to review the draft trust document and provide advice concerning the estate tax, gift tax and income tax effects of the establishment of the Chana Trust. Exhibit 1, ¶ 7; Retainer Agreement attached as Exhibit A to Exhibit 1, p.1.

8.    After Attorney Miller was retained and as part of his representation of Mr. D'Onofrio, he received a draft copy the Chana Trust.  This document was provided to him by the trustee, Continental Trust Company. Neither he nor anyone from Kleban & Samor, P.C. had any involvement in preparing the initial draft copy of The Chana Trust. Exhibit 1, ¶ 8 & 9; Email from Continental Trust Company attached as Exhibit B to Exhibit 1.

9.    Once the draft copy of the Chana Trust was received, both Attorney Miller and associates at Kleban & Samor, P.C. who worked at his direction and under his supervision reviewed the provisions of the Chana Trust for their potential estate, gift and income tax implications.  Exhibit 1, ¶ 10.

- 3 -

10.     After reviewing the initial draft copy of the Chana Trust, an associate at Kleban & Samor, P.C. who worked at Attorney Miller's direction and under his supervision prepared a Memorandum which was sent to Mr. D'Onofrio detailing their analysis and advice with respect to the estate, gift and income tax implications of the provisions contained in the draft copy of the Chana Trust. Exhibit 1, ¶ 11; Memorandum attached as Exhibit C to Exhibit 1, pp. 1-3.

11.     After reviewing the initial draft copy of the Chana Trust, the requested revisions were communicated to the trustee, Continental Trust Company. Thereafter, several more drafts of the Chana Trust were provided to Kleban & Samor, P.C. Associates at Kleban & Samor, P.C. who worked at Attorney Miller's direction and under his supervision reviewed these revised trust documents and made additional comments from an estate, gift and income tax perspective. Exhibit 1, ¶ 12.

12.     On or about June 21, 2001, Mr. D'Onofrio executed the Chana Trust in Jersey, in the Channel Islands. Neither Attorney Miller nor anyone from Kleban & Samor, P.C. was present when the Chana Trust was executed. Exhibit 1, ¶ 13.

13.     On or about June 22, 2001, an associate at Kleban & Samor, P.C. who worked at Attorney Miller's direction and under his supervision sent to Continental Trust Company a Form SS-4, which is an application for an employer identification number for the Chana Trust. The fax cover sheet accompanying this form requested that Continental

- 4 -

Trust Company type the requested information on the blank form, sign it and send it to: IRS Entity Control, Philadelphia, PA 19255. Exhibit 1, ¶ 14; fax cover sheet attached as Exhibit D to Exhibit 1.

14.    On or about July 2, 2001, an associate at Kleban & Samor, P.C. who worked at Attorney Miller's direction and under his supervision prepared and filed a Form 3520 with the Internal Revenue Services. This document was filed in order to report to the Internal Revenue Services that a foreign trust had been established, as required by law. Exhibit 1, ¶ 15; Form 3520 attached as Exhibit E to Exhibit 1, pp. 1-2.

15.    On or about July 11, 2001, Attorney Miller forwarded to the trustee, Continental Trust Company, certificates and assignments of Mr. D'Onofrio's stock and membership interests in certain corporations to Continental Trust Company. Exhibit 1, ¶ 16; Letter dated July 11, 2001 attached as Exhibit F to Exhibit 1.

16.    In April 2002, Kleban & Samor, P.C. prepared and filed fiduciary income tax returns for the Chana Trust. Exhibit 1, ¶ 17; Preparation materials for the fiduciary and income tax returns sent to Mr. D'Onofrio attached as Exhibit H to Exhibit 1, pp. 1-14; Communications with trustee and inter-office memoranda concerning preparation of the return attached as Exhibit I to Exhibit 1, pp. 1-7.

17.    Attorney Miller's representation of Mr. D'Onofrio consisted solely of giving tax advice and preparing required tax filings. Attorney Miller did not draft or establish the trust known as the Chana Trust. Exhibit 1, ¶ 19.

18.    Attorney Miller was not informed, nor did he have knowledge of, the June 7, 2001 judgment entered against Mr. D'Onofrio in the California action filed in the Superior Court of California in and for the county of San Joaquin, case no. 293975, entitled Nastro v. D'Onofrio, at any time prior to the execution of the Chana Trust. Exhibit 1, ¶ 20.

19.    On July 29, 2004, Mr. D'Onofrio filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code, commencing Chapter 11 Case No. 04-33561. Exhibit 2; United States Bankruptcy Court Voluntary Petition dated July 29, 2004, pp. 1-2.

20.    On or about December 23, 2004, the Chana Trust was terminated and assets of the trust were repatriated and returned to Mr. D'Onofrio's custody. Exhibit 1, ¶ 18; Exhibit 3, Amended Report of Repatriation and Return of Trust Assets dated January 25, 2005, pp. 1-7.

21.    At some point prior to November 4, 2005, Mr. Nastro and Mr. D'Onofrio, among others, reached a settlement in the Bankruptcy Case. The settlement concluded and/or terminated, with prejudice, all actions by Mr. Nastro against Mr. D'Onofrio,

- 6 -

including the subject lawsuit.  Exhibit 4, Motion to Approve Compromise and Settlement

of Claims dated November 4, 2005, pp. 1-8; Exhibit 5, Order on Motion to Approve

Compromise and Settlement of Claims dated November 30, 2005, pp. 1-5.

                              THE DEFENDANTS
                              Elliot I. Miller and
                              Kleban & Samor, P.C.


                         By _____
                              Anthony Nuzzo, Jr.
                              Federal Bar No: CT05397
                              NUZZO & ROBERTS, L.L.C.
                              One Town Center
                              P.O. Box 747
                              Cheshire, Connecticut 06410
                              Tel:  (203) 250-2000
                              Fax:  (203) 250-3131
                              anuzzo@nuzzo-roberts.com

- 7 -

CERTIFICATION

This is to certify that on January 29, 2007, a copy of the foregoing Defendant's
Local Rule 56(a)1 Statement was filed electronically and served by mail on anyone
unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties
by operation of the Court's electronic filing system or by mail to anyone unable to accept
electronic filing as indicated on the Notice of Electronic Filing. Parties may access this
filing through the Court's CM/ECF System.


By _____

Anthony Nuzzo, Jr.
Federal Bar No: CT05397
NUZZO & ROBERTS, L.L.C.
One Town Center
P.O. Box 747
Cheshire, Connecticut 06410
Tel: (203) 250-2000
Fax: (203) 250-3131
anuzzo@nuzzo-roberts.com


\\fp\nuzzo\wp\423002\134\Local Rule 56(a)(1) Statement 1 29 07.doc

- 8 -