UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT NASTRO | CIVIL ACTION |
| | NO. 3:02 CV 00857 (DJS) |
| V. | |
| KLEBAN & SAMOR, P.C. and | |
| ELLIOT I. MILLER | JANUARY 29, 2007 |

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff Vincent Nastro ("Nastro") submits this memorandum of law as a supplemental memorandum as ordered by the Court and in response to defendants', Kleban & Samor, P.C. and Elliot I. Miller (hereinafter collectively referred to as "Defendants") Motion to Dismiss dated January 18, 2006.[1] The remaining count in this matter is the fifth count of the Amended Complaint based on the RICO statute. Nastro alleges Defendants engaged in RICO violations in that the Defendants used the mail and wire in conjunction with a RICO enterprise for the purpose of defrauding D'Onofrio's creditors including Nastro.

---

[1] Nastro incorporates by reference his Memorandum in Opposition to Defendants Kleban & Samor, P.C. and Elliot I. Miller's Motion to Dismiss dated February 3, 2006 (No. 164) and July 30, 2003 (No. 73), for a more expansive argument.

I.  **BACKGROUND**

Nastro directs the Court to the factual background as set forth in the February 3, 2006 (No. 164) Memorandum of Law in Opposition to Defendants Motion to Dismiss for a full recitation of the facts of this case.

II. **LEGAL STANDARD**

   A. **Summary Judgment**

"A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law." Russell v. Eldridge, 932 F.Supp.535, 537 (D.Conn. 1993) citing Celotex Corp v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "In a motion for summary judgment, the moving party must initially demonstrate that there are no material facts in dispute and '[a]ll reasonable inferences and any ambiguities are drawn in favor of the non-moving party.'" United Technologies Corp. v. American Home Assurance Company, 989 F.Supp. 128, 134 (D.Conn. 1997) citing Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Once the moving party has met its burden, the non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 332, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B. Nastro Sufficiently Alleges Acts of Defendants in the Complaint to Sustain a RICO Action.

Nastro has previously set forth at extensive length the elements necessary for establishing mail or wire fraud and the facts supporting the allegation against Defendants. As stated in Nastro's prior memorandums, the Defendants engaged in a scheme with D'Onofrio to defraud Nastro of money or property by using mail and wire to create The Chana Trust and transfer D'Onofrio's assets to said trust rendering D'Onofrio insolvent and unable to satisfy the judgment entered against him and in favor of Nastro. Specifically, the Defendants utilized their legal services to participate in and conduct a pattern of racketeering activity in the furtherance of a RICO enterprise to defraud Nastro.

#### 1. Mail and wire fraud do not require intent in order to be established.

Nastro has laid the foundation of mail and wire fraud quite clearly in its Memorandum in Opposition to Defendants Motion to Dismiss dated February 3, 2006, see pages 5 and 6. Despite the case law in support of Nastro's claim that actual intent is unnecessary, Defendants insist on the requirement of intentional fraud citing the footnotes in United States v. Von Barta, 635 F.2d 999, 1005 fn.14 (2nd Cir. 1980), cert denied, 450 U.S. 998, 101 S.Ct. 1703 (1981) and United States v. Computer Sciences Corp., et al., 689 F.2d 1181, 1188 fn. 14 (4th Cir.

1982) as support for their erroneous assertion. When the actual footnotes are read it should be noted that they say:

> It is also well recognized that innocence in a mailing, the consideration that a mailing was absent criminal intent, **does not** insulate from mail fraud prosecution if the mailing was a step in the fraudulent path.

(Emphasis added). This footnote actually states the opposite of what Defendants would have the court believe; intentional fraud is **not necessary** for proving mail or wire fraud. Consequently, it is not necessary for Nastro to assert the Defendants committed intentional fraud to survive a summary judgment motion.

### 2. Nastro has established the requisite continuity necessary to support bringing a RICO action.

In addition to arguments already made to the court on this issue, Nastro addresses Defendants repetitive argument that Nastro is unable to establish closed-ended continuity because the predicate acts took place during a seven week span and that is insufficient to establish such continuity. Defendants have also continuously refused to accept United States v. Indelicato, 865 F.2d 1370, 1383 (2d Cir. 1989), which states:

> We doubt that Congress meant to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further but a single scheme.

Defendants also rely on the fact that the assets of The Chana Trust have been returned to D'Onofrio and therefore, there is no open-ended continuity and the closed-ended continuity was too brief in time to establish a racketeering

activity. The fact that such assets were returned does not negate the fact that Defendants engaged in racketeering activity to establish a trust account which would prevent creditors of D'Onofrio from satisfying their judgments. Further, at the time the racketeering activity took place this appeared to be an open-ended, long term plan. Similarly, in Thomas v. Ross & Hardies, 9 F.Supp.2d 547, 554 (D. Maryland 1998), the Court held that:

> ... the facts alleged by the complaint strongly suggest that Kersner and Clott would have continued to defraud homeowners for as long as they could. ... the scheme ended not because a limited goal had been accomplished, but because the perpetrators were caught and prosecuted. Defendant's argument that the scheme posed no long-term threat because it necessarily unraveled upon attempts by the homeowners to draw on their lines of credit is unpersuasive.

(Internal citations omitted). Instead of continuing the legal battle, D'Onofrio chose to return the assets placed in the Chana Trust.[2] This fact is irrelevant to the activity that took place harming Nastro and causing him to incur excessive amounts of money in legal fees and time to try and satisfy his judgment against D'Onofrio. The Second Circuit in Indelicato and the District Court in Thomas made it clear that Defendants' behavior would be sufficient to satisfy this element of RICO. There was a pattern of continuity and the fact that the scheme was cut short is irrelevant; this was clearly a long-term enterprise.

---

[2] D'Onforio's return of the assets was also conducted unscrupulously as his *minor* daughter did not have a separate lawyer and signed the return of such assets without the benefit of counsel.

### 3. Nastro has established more than the 2 predicate acts necessary to establish a RICO claim.

In both Nastro's July 30, 2003 and February 3, 2006 Memorandums previously referenced and incorporated herein, Nastro addresses this issue extensively and will not repeat the argument.

In light of the foregoing, it should be noted that Defendants rest their argument that Nastro has not established more than 2 predicate acts as all acts are steps taken in one act of establishing the Chana Trust. See Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss dated February 24, 2006, pg. 5. Contrary to Defendants' position, the Second Circuit has stated:

> We have explicitly eschewed any multiple scheme or episode requirement to demonstrate the continuity of the pattern of racketeering activity. Noting that the statutory definition of racketeering activity was cast in terms of "act" or "offenses," without mention of schemes, episodes, or transactions, we concluded that Congress did not mean to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further **but a single scheme**. Thus continuity may be demonstrated in various ways, such as from the nature of the enterprise, as in Indelicato, or from the sheer number of predicate acts over several years, or from the number of schemes. As we said in Beauford, what is required is that the complaint plead a basis from which it could be inferred that the acts ... were neither isolated nor sporadic.

(Internal citations omitted and emphasis added). Proctor & Gamble Company v. Big Apple Industrial Buildings, Inc., 879 F.2d 10, 16 (2nd Cir. App. 1989). Consequently, the six predicate acts are acceptable towards establishing RICO activity regardless of the fact that they further one scheme. The acts are

6

necessary to achieve the purpose of the RICO enterprise, that being the transfer of D'Onofrio assets to an off shore account in an effort to evade creditors.

### 4. The RICO persons are different from the RICO enterprise

The RICO enterprise in this matter consists of the following: Arthur M. D'Onofrio, Atty. Eilliot I. Miller, Kleban & Samor, P.C., Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, Nicole D'Onofrio, New England Propeller Service, Inc., U.S. Propeller Service of CT, Inc., Div-Acq. Inc., ADMW, LLC, Chana Turst and Continental Trust Co., Ltd.  The purpose of the enterprise was to shield D'Onofrio's assets from his creditors, including, but not limited to, Nastro.  The Defendants have a separate purpose and activity from that of the RICO enterprise, legitimate attorneys.  Therefore, Defendants constitute distinct and separate entities from the RICO enterprise as well as members of the RICO enterprise and RICO persons.  The Connecticut District Court clarifies this position in The Cadle Company v. Flanagan, et al., 271 F.Supp.2d 379, 386-87 (D.Conn. 2003):

> The Supreme Court has clarified that an enterprise may also include a group of persons associated together for a common purpose of engaging in a course of conduct over a period of time and encompasses both legitimate and illegitimate enterprises. While a solitary entity cannot, as matter of law, simultaneously constitute both the RICO person whose conduct is prohibited and the entire RICO enterprise whose affairs are impacted by the RICO person ... a single entity can be both the RICO person and one of a number of members of the RICO enterprise. [Internal quotations and citations omitted].
> ...

> Moreover, the Second Circuit has held that an enterprise under the RICO statute may consist of more than one entity, so long as those entities have been connected by a defendant's participation in them through a pattern of racketeering activity.

Not unlike the previously listed defendants in this case, in <u>Cadle</u> the RICO enterprise was comprised of Charles A. Flanagan, Atty. Leonard Fasano, Fasano, Ippolito & Lee, LLC, Todd Bainer, Stanley Prymas and Thompson & Peck, Inc. Consequently, Nastro has more than sufficiently established that there is a RICO enterprise and separate RICO persons and the Defendants have failed to show otherwise.

### 5. The Defendants can not be absolved of their actions in the RICO scheme simply because they used their professional skills.

The fact that the Defendants are attorneys and utilized their professional services does not excuse them from being an active participant in the RICO scheme to defraud creditors of D'Onofrio. This issue has been addressed in the incorporated by reference memorandums of law as stated in footnote 1. Not withstanding that fact, it should be noted that <u>Thomas v. Ross & Hardies</u>, 9 F.Supp.2d 547, 554-55 (D. Maryland 1998) states:

> Courts have recognized, however, that <u>Reves</u> did not establish a per se rule that one cannot operate or manage an enterprise via the provision of legal services. A person may violate §1962(c) if he conducts the affairs of an enterprise, even though he does so through the provision of professional services. Because of the supportive nature of professional services, it is most often the case that

8

> lawyers and accountants do not conduct an enterprise's affairs. Nevertheless, there are situations in which the professional services provided strike at the very core of the enterprise and therefore the lawyer or accountant providing the services is managing or operating the firm.

(Internal citations omitted). See The Cadle Company v. Flanagan, et al., 271 F.Supp.2d 379, (D.Conn. 2003) As is evident in this case, the Defendants used their professional skills in furtherance of a scheme to defraud creditors from collecting against D'Onofrio through the use of mail and wire. Defendants' ability to conduct the legal transactions necessary to complete the enterprise goal of hiding D'Onofrio's assets "strikes at the very core of the enterprise". Consequently, merely because they used professional legal skills does not excuse them from their participation in the RICO scheme.

### III.  CONCLUSION

This Court was initially presented with a motion to dismiss on this matter and subsequently transformed it to a summary judgment. Under the standard for summary judgment, Nastro has presented several issues of material facts through his memorandums in opposition to Defendants motions to dismiss and in this supplemental brief. Per the Summary Judgment standard wherein all reasonable inferences and any ambiguities are drawn in favor of the non-moving party, Defendants have failed to sustain their burden for supporting their summary judgment motion/motion to dismiss. Consequently, Defendants' summary judgment/motion to dismiss must be denied.

THE PLAINTIFF
VINCENT NASTRO

by: _____
Edwin L. Doernberger
Fed. Bar No. ct05199
Heidi H. Zapp
Fed. Bar No. ct24426
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed via first class mail, postage pre-paid, to the following counsel of record on January 29, 2007:

Thomas P. O'Dea, Jr., Esq.
James M. Sconzo, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880-4739

Heidi H. Zapp