## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **VINCENT NASTRO** | : | **CIVIL ACTION** |
| | : | **NO. 3:02 CV 00857 (DJS)** |
| | : | |
| **V.** | : | |
| | : | |
| **KLEBAN & SAMOR, P.C. and** | : | |
| **ELLIOT I. MILLER** | : | **FEBRUARY 20, 2007** |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The plaintiff Vincent Nastro ("Nastro") submits this opposition in response to defendants', Kleban & Samor, P.C. and Elliot I. Miller (hereinafter collectively referred to as "Defendants") Supplemental Memorandum of Law in Support of Summary Judgment dated January 29, 2007.[1]  In the fifth count of the Amended Complaint, Nastro alleges Defendants engaged in RICO violations in that the Defendants, together with other policies, used the mail and wire in conjunction with a RICO enterprise for the purpose of defrauding D'Onofrio's creditors including Nastro.

---

[1] Nastro incorporates by reference his Memorandum in Opposition to Defendants Kleban & Samor, P.C. and Elliot I. Miller's Motion to Dismiss dated February 3, 2006 (No. 164), July 30, 2003 (No. 73) and January 29, 2007 (No. 178) for a more expansive argument.

## I.    BACKGROUND

Nastro directs the Court to the factual background as set forth in the February 3, 2006 (No. 164) Memorandum of Law in Opposition to Defendants Motion to Dismiss for a full recitation of the facts of this case. Nastro disputes a number of factual allegations made by Defendants and which are addressed in Nastro's Rule 9(c)(2) Statement. Further, Nastro notes that there has been no inquiry to date as to what knowledge Attorney Elliot I. Miller had regarding Arthur D'Onofrio's assets at the time of the creation of the Chana Trust nor has any inquiry been made to ascertain Attorney Miller's knowledge of the judgment against Mr. D'Onofrio at the time of the transfer of assets.

## II.    ARGUMENT

Nastro bases his RICO claim against the Defendants upon the actions of wire and mail fraud committed by the Defendants. The Defendants utilized their legal services to participate in and conduct a pattern of racketeering activity in the furtherance of a RICO enterprise.

### A.    Nastro properly establishes conduct which constitutes a racketeering activity under RICO.

Contrary to Defendants' assertion, Nastro has sufficiently pled the elements of RICO. 18 U.S.C. §1962(c) states:

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which effect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. §1961(1) lists mail fraud, under 18 U.S.C. §1341, and wire fraud, under 18 U.S.C. §1343, as prohibited racketeering activities. The Defendants

have committed acts of mail fraud and wire fraud in the execution of the scheme to defraud Nastro of the amounts D'Onofrio owes to him.

      1.    Nastro has not pled that the fraudulent transfer is a predicate act of the RICO claim

Defendants allege that "just because a transaction may be deemed a constructive fraud under C.G.S. §52-552(f) (Connecticut's Fraudulent Transfer Act), it does not necessarily mean that a fraud has been committed which would be actionable under RICO." See Defendants' Supplemental Memorandum of Law dated January 29, 2007 ("Defendants' Memorandum") at 11. Conversely, the same is also true: because a transaction may be deemed a constructive fraud under C.G.S. §52-552(f) does not mean that a fraud has been committed which *would not* be actionable under RICO. Defendants' rely incorrectly on Webster Industries, Inc. v. Northwood Doors, Inc., 320 F.Supp.2d 821 (N.D. Iowa 2004) for the proposition that Nastro improperly pled his RICO count against the Defendants. Defendants argue that they should be granted summary judgment since both Webster and the present case involve fraudulent transfers, and was granted in Webster on the basis that the predicate act was alleged to be the fraudulent transfer predicate act and such activity can not constitute a predicate act for a RICO allegation. However, in this case, the fraudulent transfer *is not* relied on as the predicate act; it is the enterprise's *scheme* to defraud Nastro. Such scheme was conducted, in part, by Defendants' engaging in racketeering activity by way of mail and wire fraud.

In Webster, the Plaintiffs rely on a pattern of mail fraud *and* fraudulent

transfers in violation of the UFTA. However, "... , fraudulent transfers as defined by UFTA are not criminal offenses identified as "racketeering activity in 18 U.S.C. §1961(1) ... the [plaintiffs] consequently must rely entirely on predicate acts of mail fraud to establish the necessary pattern." Id. at 849. The "racketeering activity" alleged by Nastro, is and always has been, the Defendants' use of the mail and wire to further the scheme to defraud Nastro. The defendants in Webster were ultimately entitled to summary judgment on the basis that:

> [n]o specific incidence of a pertinent representation is identified anywhere in the amended complaint; indeed, the complaint **does not even allege** that any such representations were conveyed by mail or wire, or identify any mailings that assisted in the original fraudulent promises to pay for goods delivered on credit.

(Emphasis added) Id. at 848. Defendants' conclusion that "since a fraudulent transfer in violation of Connecticut General Statutes §52-552a is not a criminal offense identified as racketeering activity in 18 U.S.C. § 1961(a), and cannot constitute a mail or wire fraud predicate act under RICO, any truthful and accurate communication relating to the same cannot form the basis for mail or wire fraud actionable under RICO" is misguided. Nastro properly, and specifically, alleged that Defendants engaged in numerous acts of mail and wire fraud in the furtherance of the enterprise's scheme to defraud thereby affecting interstate and/or foreign commerce. Consequently, a fraudulent transfer may be a RICO activity which is fulfilled by the prohibited racketeering activities of mail and wire fraud.

> 2.     The Defendants engaged in mail and wire fraud in violation of 18 U.S.C. § 1961 to further the scheme to defraud Nastro.

In order to plead mail or wire fraud, the plaintiff must identify some scheme or artifice to defraud that is furthered by each alleged use of the mails or interstate transmission by wire. <u>McLaughlin v. Anderson</u>, 962 F.2d 187, 190-191 (2d Cir. 1992); <u>See</u> <u>Hartz v. Friedman</u>, 919 F.2d 469, 472 (7th Cir. 1990); <u>United States v. Koen</u>, 982 F.2d 1101, 1106 (7th Cir. 1992); <u>Schmuck v. United States</u>, 489 U.S. 705, 721, 109 S.Ct. 1443, 1452, 103 L.Ed.2d 734 (1989); <u>United States v. Stout</u>, 965 F.2d 340, 344 (7th Cir. 1992).  Further, "the plaintiff must show 1) that the defendant 'caused' the mailing . . . and 2) that the mailing was for the purpose of executing the scheme or . . . 'incidental to an essential part of the scheme.'" (Internal quotation marks omitted) <u>McLaughlin</u>, 962 F.2d at 191, (<u>quoting</u> <u>United States v. Bortnovsky</u>, 879 F.2d 30, 36 (2d Cir. 1989)).  <u>See also</u>: <u>United State v. Altman</u>, 48 F.3d 96, 102 (2d Cir. 1995); <u>Pereira v. United States</u>, 347 U.S. 1, 8,  74 S.Ct. 358, 363 (U.S.S.Ct. 1954).  Mailings in the course of one's business in order to further a scheme to defraud is a violation of the mail fraud statute.  <u>See</u> <u>Koen</u>, 982 F.2d at 1108; <u>See also</u> <u>United States v. Bortnovsky</u>, 879 F.2d 30, 40-41 (2d Cir. 1989); <u>United States v. Hollis</u>, 971 F.2d 1441, 1448 (10th Cir. 1992).

Defendants claim that the only circumstance in which mail or wire fraud may be considered are those cases limited to claims of intentional fraud.  Nastro has laid the foundation of mail and wire fraud quite clearly in his Memorandums

as incorporated in Footnote 1.[2]  Despite the case law in support of Nastro's claim that actual intent is unnecessary, Defendants continue to claim that intentional fraud is required.

Atlas Pile Driving Co. v. DiCon Financial Co., 886 F.2d 986, 992 (8th Cir. 1989) (cited in Webster )states, "[a] mailing that serves as an element of mail fraud may be a routine mailing or even one that is sent for a legitimate business purpose so long as it assists in carrying out the fraud."  Mail fraud may be proven when the defendant causes the mailing and the mailing was for the purpose of executing the scheme, such as the mailing of certificates and assignments of D'Onofrio's stock and membership interest to the Trust's Trustee (See Exhibit F to Defendants' Memorandum); or incidental to an essential part of the scheme, such as the letter sent from the Defendants to the IRS indicating the creation of a foreign trust on behalf of D'Onofrio (See Exhibit E to Defendants' Memorandum). Both scenarios mentioned took place after a judgment was entered against D'Onofrio and both scenarios occurred in the furtherance of the scheme to defraud Nastro from his ability to recover amounts due from D'Onofrio.

As stated in Nastro's Memorandum in Opposition to Defendants' Summary Judgment, citing the footnotes in United States v. Von Barta, 635 F.2d 999, 1005 fn.14 (2nd Cir. 1980), cert denied, 450 U.S. 998, 101 S.Ct. 1703 (1981) and United States v. Computer Sciences Corp., et al., 689 F.2d 1181, 1188 fn. 14 (4th Cir. 1982):

---

[2]  See Nastro's Opposition to Defendants Motion to Dismiss dated February 3, 2006, pages 5 and 6, and his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment pages 3 and 4.

> It is also well recognized that innocence in a mailing,
> the consideration that a mailing was absent criminal
> intent, ***does not*** insulate from mail fraud prosecution
> if the mailing was a step in the fraudulent path.

(Emphasis added).  Intentional fraud is **not necessary** for proving mail or wire fraud.  Consequently, it is not necessary for Nastro to assert that the Defendants committed intentional fraud.

### B.    Nastro has established the requisite continuity necessary to support bringing a RICO action.

In addition to arguments already made to the court on this issue, Nastro addresses Defendants repetitive argument that Nastro is unable to establish closed-ended continuity because the predicate acts took place during a seven week span and that is insufficient to establish such continuity.[3]  Defendants also refuse to accept United States v. Indelicato, 865 F.2d 1370, 1383 (2d Cir. 1989), which states:

> We doubt that Congress meant to exclude from the
> reach of RICO multiple acts of racketeering simply
> because they achieve their objective quickly or
> because they further but a single scheme.

Defendants also rely on the fact that the assets of The Chana Trust have been returned to D'Onofrio and therefore, there is no open-ended continuity and the closed-ended continuity was too brief in time to establish a racketeering activity.[4]  The fact that such assets were returned does not negate the fact that Defendants engaged in racketeering activity to establish a trust account which

---

[3] In fact, the Defendants' acts in furtherance in the conspiracy continued through at least April, 2002. See Exhibit H to Defendant's Memorandum.
[4] The assets were in fact not returned until this Court modified the preliminary injunction entered on December 18, 2002 (Docket No. 47) prohibiting the further transfer of any of the assets, which order was not entered until December 7, 2005 (Docket No. 153), over four years after the fraudulent transfer.

would prevent creditors of D'Onofrio from satisfying their judgments. Further, at the time the racketeering activity took place this appeared to be an open-ended, long term plan. Similarly, in Thomas v. Ross & Hardies, 9 F.Supp.2d 547, 554 (D. Maryland 1998), the Court held that:

> … the facts alleged by the complaint strongly suggest that Kersner and Clott would have continued to defraud homeowners for as long as they could. … the scheme ended not because a limited goal had been accomplished, but because the perpetrators were caught and prosecuted. Defendant's argument that the scheme posed no long-term threat because it necessarily unraveled upon attempts by the homeowners to draw on their lines of credit is unpersuasive.

(Internal citations omitted). Instead of continuing the legal battle, D'Onofrio chose to return the assets placed in the Chana Trust. This fact is irrelevant to the activity that took place harming Nastro and causing him to incur excessive legal fees and time to try and satisfy his judgment against D'Onofrio. The Second Circuit in Indelicato and the District Court in Thomas made it clear that Defendants' behavior is sufficient to satisfy this element of RICO. There was a pattern of continuity and the fact that the scheme was cut short is irrelevant; this was clearly a long-term enterprise.

### C. Nastro has established more than the 2 predicate acts necessary to establish a RICO claim.

In both Nastro's July 30, 2003 and February 3, 2006 Memorandums previously referenced and incorporated herein, Nastro addresses this issue extensively and will not repeat the argument.

In light of the foregoing, it should be noted that Defendants claim that Nastro has not established more than two predicate acts since all acts by Defendants were taken in one act of establishing the Chana Trust.   See Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss dated February 24, 2006, pg. 5.  Contrary to Defendants' position, the Second Circuit held:

> We have explicitly eschewed any multiple scheme or episode requirement to demonstrate the continuity of the pattern of racketeering activity.  Noting that the statutory definition of racketeering activity was cast in terms of "act" or "offenses," without mention of schemes, episodes, or transactions, we concluded that Congress did not mean to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further **but a single scheme**.  Thus continuity may be demonstrated in various ways, such as from the nature of the enterprise, as in Indelicato, or from the sheer number of predicate acts over several years, or from the number of schemes.   As we said in Beauford, what is required is that the complaint plead a basis from which it could be inferred that the acts … were neither isolated nor sporadic.

Proctor & Gamble Company v. Big Apple Industrial Buildings, Inc., 879 F.2d 10, 16 (2nd Cir. App. 1989) (Internal citations omitted, emphasis added). Consequently, the six predicate acts are acceptable towards establishing RICO activity regardless of the fact that they further one scheme.

Defendants also claim that the multiple acts of mail and wire fraud do not constitute a pattern where they all occurred within a fairly short period of time, related to a single transaction, involved a single victim, and inflicted a single injury. See Defendants' Supplemental Memorandum of Law in Support of Motion for Summary Judgment dated January 29, 2007, at 19.  Contrary to the cases

cited by Defendants, the enterprise's scheme in this matter, transferring D'Onofrio's assets, may have involved multiple victims, any creditors of D'Onofrios, and inflicted multiple injuries. The fact that the assets were returned to D'Onofrio prior to this occurring does not negate the widespread damage the enterprise's scheme could have inflicted.

### D.    The RICO persons are different from the RICO enterprise

The RICO enterprise in this matter consists of the following: Arthur M. D'Onofrio, Atty. Elliot I. Miller, Kleban & Samor, P.C., Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, Nicole D'Onofrio, New England Propeller Service, Inc., U.S. Propeller Service of CT, Inc., Div-Acq. Inc., ADMW, LLC, Chana Trust and Continental Trust Co., Ltd. The purpose of the enterprise was to shield D'Onofrio's assets from his creditors, including, but not limited to, Nastro. The Defendants have a separate purpose and activity from that of the RICO enterprise, legitimate attorneys. Therefore, Defendants constitute distinct and separate entities from the RICO enterprise as well as members of the RICO enterprise and RICO persons. The Connecticut District Court clarified this distinction in The Cadle Company v. Flanagan, et al., 271 F.Supp.2d 379, 386-87 (D.Conn. 2003):

> The Supreme Court has clarified that an enterprise may also include a group of persons associated together for a common purpose of engaging in a course of conduct over a period of time and encompasses both legitimate and illegitimate enterprises. While a solitary entity cannot, as matter of law, simultaneously constitute both the RICO person whose conduct is prohibited and the entire

> RICO enterprise whose affairs are impacted by the
> RICO person … a single entity can be both the RICO
> person and one of a number of members of the RICO
> enterprise.  [Internal quotations and citations omitted].
>
> …
>
> Moreover, the Second Circuit has held that an
> enterprise under the RICO statute may consist of
> more than one entity, so long as those entities have
> been connected by a defendant's participation in them
> through a pattern of racketeering activity.

Not unlike the previously listed defendants in this case, in <u>Cadle</u> the RICO

enterprise was comprised of Charles A. Flanagan, Atty. Leonard Fasano,

Fasano, Ippolito & Lee, LLC, Todd Bainer, Stanley Prymas and Thompson &

Peck, Inc.   Consequently, Nastro has more than sufficiently established that

there is a RICO enterprise and separate RICO persons.

Defendants further cite to Nastro's RICO statement for the assertion that

Nastro has not established that the enterprise and the person are not distinct.

The RICO statement says specifically:

> e.      *Whether the plaintiff contends that the defendants are individuals or
> entities separate from the alleged enterprise or that the defendants are the
> enterprise itself, or members of the enterprise, and*
>
> The defendants are the enterprise itself.

As has been made repeatedly clear throughout the course of this litigation, the

defendants are in fact the enterprise, and as explained thoroughly above,

persons separate from the enterprise.  They are both.  If there was ever any

confusion on this, it was due to scrivener's error only.  There is no doubt that the

defendants are separate entities for the alleged enterprise ***AND*** the enterprise

itself.

E.    **The Defendants can not be absolved of their actions in the RICO scheme simply because they used their professional skills.**

The fact that the Defendants are attorneys and utilized their professional services does not excuse them from being a participant in the RICO scheme to defraud creditors of D'Onofrio.  Nastro has previously addressed this issue in prior memoranda.  <u>See</u> footnote 1.  As previously noted:

> Courts have recognized, however, that <u>Reves</u> did not establish a per se rule that one cannot operate or manage an enterprise via the provision of legal services.   A person may violate §1962(c) if he conducts the affairs of an enterprise, even though he does so through the provision of professional services.    Because of the supportive nature of professional services, it is most often the case that lawyers and accountants do not conduct an enterprise's affairs.  Nevertheless, there are situations in which the professional services provided strike at the very core of the enterprise and therefore the lawyer or accountant providing the services is managing or operating the firm.

<u>Thomas v. Ross & Hardies</u>, 9 F.Supp.2d 547, 554-55 (D. Maryland 1998) (Internal citations omitted).  <u>See also</u> <u>The Cadle Company v. Flanagan, et al</u>, 271 F.Supp.2d 379 (D.Conn. 2003).  As is evident in this case, the Defendants used their professional skills in furtherance of a scheme to defraud creditors from collecting against D'Onofrio through the use of mail and wire.  Defendants' ability to conduct the legal transactions necessary to complete the enterprise goal of hiding D'Onofrio's assets "strikes at the very core of the enterprise".  Consequently, merely because they used professional legal skills does not excuse them from their participation in the RICO scheme.

III.    **CONCLUSION**

Under the standard for summary judgment, Nastro has presented several issues of material facts through his memorandums in opposition to Defendants motions to dismiss, in his supplemental brief and in this response. In order to properly state a RICO claim for damages under 18 U.S.C. § 1962(c) a plaintiff must establish: (1) that the defendant (Kleban & Samor, P.C. and Elliot I. Miller) (2) through the commission of two or more acts (Mail and Wire Fraud) (3) constituting a pattern (at least six instances of such acts) (4) of racketeering activity (Mail and Wire Fraud) (5) directly or indirectly invests in, or maintains an interest in, or participates in (participates in) (6) an enterprise (Defendants and others) (7) the activities of which affect interstate or foreign commerce (transferring money over seas and leaving D'Onofrio unable to satisfy the judgment against him)." Per the Summary Judgment standard wherein all reasonable inferences and any ambiguities are drawn in favor of the non-moving party, Defendants have failed to sustain their burden for supporting their summary judgment motion/motion to dismiss. Consequently, Defendants' summary judgment/motion to dismiss must be denied.

THE PLAINTIFF
VINCENT NASTRO

by: _____
Edwin L. Doernberger
Fed. Bar No. ct05199
Heidi H. Zapp
Fed. Bar No. ct24426
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically and served via first class mail, postage pre-paid, to the following counsel of record on February 20, 2007:

Thomas P. O'Dea, Jr., Esq.
James M. Sconzo, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880-4739

Anthony Nuzzo, Jr. Esq.
Nuzzo & Roberts, LLC
One Town Center
P.O. box 747
Cheshire, CT 06410

Heidi H. Zapp