UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT NASTRO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:02CV00857(DJS) |
| ARTHUR M. D'ONOFRIO, et. al. | : | |
| Defendants. | : | February 20, 2007 |

AFFIDAVIT OF EDWIN L. DOERNBERGER

STATE OF CONNECTICUT    )
                        )   ss. HAMDEN
COUNTY OF NEW HAVEN     )

Edwin L. Doernberger, being first duly sworn, on oath deposes and says:

1. I am over the age of eighteen and believe in the obligations of an oath.

2. I am an attorney for plaintiff Vincent Nastro in this action and make this affidavit based upon my personal knowledge.

3. I also represent Vincent Nastro in an action pending in Connecticut, Nastro v. D'Onofrio, Superior Court, Judicial District of Middlesex at Middletown, Docket No. CV-01--0095961-S, which action was brought to register a judgment obtained by Vincent Nastro against D'Onofrio in the State of California. The State Court action was brought pursuant to the Uniform Enforcement of Foreign Judgments Act, Conn. Gen. Stat. §52-604, et. seq.

4. On April 30, 2002, an examination of Ellliot I. Miller was commenced by me: attached hereto as Exhibit 1 are pages 9 and 35 though 39 of that deposition.

5.  Attached hereto as Exhibits 2 and 3 respectively as copies of correspondence between Elliot I. Miller of Kleban & Samor and Continental Financial Services, Trustee of The Chana Trust, indicating that Attorney Miller had knowledge of the financial condition of Arthur D'Onofrio which was not provided to the trust because of privilege concerns.

Further affiant saith not.

Dated at Hamden, Connecticut, February 20, 2007

_____
Edwin L. Doernberger, Esq.

Subscribed and sworn to before me this 20th day of February, 2007.

_____
Commissioner of the Superior Court

# Exhibit 1

JUDICIAL DISTRICT OF MIDDLESEX AT MIDDLETOWN

```
------------------------------------------------x
VINCENT NASTRO                                  :
                                                :
                                                :
                                                :
                                                :
VS                                              :CV-01-0095961S
                                                :
                                                :
                                                :
                                                :
ARTHUR M. D'ONOFRIO                             :
------------------------------------------------x
```

Deposition of ELLIOT IRA MILLER taken pursuant to the Connecticut Practice Book before Peggy Criscuolo, Licensed Shorthand Reporter and Notary Public within and for the State of Connecticut, held at the offices of Saxe, Doernberger & Vita, PC, 1952 Whitney Avenue, Hamden, Connecticut on April 30, 2002 at 13:00 a.m.

PEGGY CRISCUOLO SHR. 351
DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS

| 117 RANDI DRIVE | 10 COLLUMBUS BLVD. |
| MADISON, CT 06443 | HARTFORD, CT 06106 |
| 203 245-9583 | 800 839-6867 |

```
1       A    Yes.  Probably August of 1988, I think.
2       Q    Do you know a gentleman by the name of Arthur M.
3  D'Onofrio?
4       A    Yes.
5       Q    Can you tell us when you met him?
6       A    About a year ago.
7       Q    Can you describe the circumstances under which
8  you met him?
9       A    I received a telephone call from Mr. D'Onofrio,
10 who told me he had been referred to me by a person whom I
11 did not know, but who was a friend of somebody I did know.
12      Q    To your knowledge, had your firm or any members
13 of your firm done any legal work for Mr. D'Onofrio before
14 that?
15      A    No, we did not.
16      Q    To your knowledge, did any members of the firm
17 Kleban & Samor have any contact with Mr. D'Onofrio before
18 that?
19      A    I cannot answer that, I have no way of knowing.
20      Q    So to your knowledge, you're not aware of any
21 contact before that; is that correct?
22      A    I'm not aware of any.  We do a conflict search
23 before we accept any engagement, and there was nothing in
24 the conflict search that indicated there would be a
25 conflict.  As to whether people in the firm knew him or had
```

```
 1              an objection by the client, we are not
 2              comfortable in simply releasing it.
 3       Q      Okay.  Does the file and documents you produced
 4  indicate any prior communication between your firm and
 5  Continental Trust Company or any related entity concerning
 6  the matter with Mr. D'Onofrio; were there communications
 7  before May 16, 2001?
 8       A      Yes.
 9       Q      What were they?
10       A      I spoke to Continental Trust Company in
11  connection with the creation of the Chana Trust.
12       Q      Where did you get the name of Continental Trust
13  Company?
14       A      I've know Continental Trust Company, I've know
15  the president of Continental Trust Company for close to
16  twenty years.
17       Q      When did you speak with Continental Trust Company
18  for the first time regarding Mr. D'Onofrio?
19       A      About a year ago, I think.
20       Q      About a year ago from now?
21       A      Yes.
22       Q      Would that have been sometime prior to May 16, of
23  2001?
24       A      Yes.
25       Q      Approximately how much prior?
```

```
 1      A    I can't speculate, probably a week to ten days,
 2  something like that.
 3      Q    What was said in that conversation, to the best
 4  of your recollection?
 5      A    To the best of my recollection, I introduced Mr.
 6  D'Onofrio to the head of Continental Trust Company.
 7      Q    When you say you introduced him, was he present
 8  during that telephone conversation?
 9      A    I'm not sure, I believe so.  I can't be entirely
10  sure of that.  If he was not there at the time I may have
11  called and said that I wanted to introduce him to Mr.
12  D'Onofrio.
13      Q    Did you explain or say anything about the purpose
14  of introducing Mr. D'Onofrio?
15      A    Yes.
16      Q    What did you say?
17      A    That Mr. D'Onofrio was interested - well, this is
18  going to get into my conversation with Mr. D'Onofrio.
19      Q    No, I'm asking about your conversation with
20  Continental Trust Company.
21      A    I understand, but that implicates what Mr.
22  D'Onofrio and I talked about.
23                MR. EISENSTEIN:  I'm going to object.
24      Q    If the items were told to a third party they are
25  no longer privileged.
```

1      A     Well, I told him that I wanted to introduce him
2  to Mr. D'Onofrio in connection with the creation of an
3  estate plan and trust for Mr. D'Onofrio, and I knew that
4  Continental Trust is sensitive to U.S. Tax considerations
5  more than other banks and fiduciary institutes are.  And
6  therefore, that I would want him to review any documents
7  that he produced to make sure they were compliant with the
8  U.S. Tax Rules and did not give rise to any inadvertent tax
9  consequences as part of the creation of the estate plan.
10     Q     To your recollection, was anything else said in
11 the initial conversation with Continental Trust?
12     A     I really can't recall what was said.  I'm trying
13 my best to reconstruct it, but I must confess that I have
14 had a lot of telephone conversations in the last year about
15 a lot of different trusts, some with Continental, some with
16 other institutions and I'm unable to reconstruct that
17 conversation beyond what I told you, which was to a certain
18 extent speculative based on an imperfect recollection as to
19 what would have been said.
20     Q     Is your normal practice to maintain notes,
21 memorandums during telephone conversations?
22     A     Sometimes.  It's not invariable or inevitable.
23 Sometimes I do.
24     Q     Do you have any notes of the conversations that
25 you may have had with Continental Trust Company?

1           MR. ELLIOT:  I'm going to hand the witness a
2      file entitled "Notes and miscellaneous."
3       A    There's nothing in this file that indicates any
4  such discussion, but there are other files if you want me
5  to look through.
6           MR. ELLIOT:  You can look through the
7      correspondence again, if you want.
8       A    There's no note of any conversation in here that
9  I had that initial conversation with Continental.  In fact,
10 with any discussions with them.
11      Q    Does the file of the firm reflect any
12 correspondence between you or any other members of the firm
13 and Continental Trust Company?
14      A    Yes.  There's a large number of communications.
15 A lot of them deal with tax matters and others that deal
16 with leans on the assets transferred to the trusts.
17          MR. ELLIOT:  Are you asking personally about
18 correspondence from the firm to Continental or Continental
19 to the firm?
20          MR. DOERNBERGER:  Both.
21          MR. ELLIOT:  There is no segregation in any
22      particular place in the file, so what I'm going
23      to do, I guess, is leaf through some files, as I
24      locate them I'll hand them to the witness.  So
25      they are not going to be in any particular order.

1            Whatever you can find in there.
2       A    They were arranged in reverse chronological
3  order. Why don't you let me organize them. I may have
4  some in the middle here, that way they will be completely
5  organized in chronological order. December 4, 2001,
6  December 14, 2001, February 26, 2002, November 12, 2001,
7  August 31, 2001, September 7, 2001, September 24, 2001,
8  April 11, 2002, June 14, 2001, December 17, 2001, August
9  31, 2001, October 8, 2001, October 8, 2001, September 28,
10 2001. This is not for the trust company, April 8, 2002.
11 October 1, 2001, September 7, 2001, July 20, 2001, July 9,
12 which may be a duplicate. And this July 11, maybe a
13 duplicate.
14            MR. ELLIOT: I'll make sure we have no
15       duplicates.
16      A    While he's looking I want to excuse myself for a
17 minute.
18            MR. EISENSTEIN: No objection.
19            MR. ELLIOT: Having gone through the file we
20       pulled communications between the firm of Kleban
21       & Samor and what appears to be Continental, we
22       pulled out the communications between those two
23       entities.
24      A    These are not objected to, I take it?
25            MR. EISENSTEIN: No, they are not objected

# Exhibit 2

# Kleban & Samor, P.C.

*Attorneys at Law*

2425 Post Road  P.O. Box 763
Southport, Connecticut 06490
Telephone (203) 255-4646
Facsimile  (203) 259-9617
Email address: info@kleban-samor.com

900 Third Avenue, 13th Floor
New York, NY 10022
Telephone (212) 826-6755
Facsimile  (212) 371-1084

Reply To Southport Office

Elliot I. Miller
(203) 254-8912
E-mail: emiller@kleban-samor.com

July 9, 2001

**Air Mail**
Peter Watts
Continental Financial Services Ltd.
PO Box 829, Charles House
Charles Street
St. Helier Jersey
Channel Islands  JE4 00E

RE:   THE CHANA TRUST

Dear Peter:

I am in receipt of your letter of 2nd of July, 2001.

It has been a pleasure for me to introduce Arthur D'onofrio to you. He has been known to me for several months, having been referred to me by a colleague of a former associate of this law firm.

I am afraid that any information I have concerning Mr. D'onofrio's financial assets has been provided to me by Mr. D'onofiro and is, therefore, privileged and I cannot disclose it. Similarly, I am not able to provide you with any written advice which this firm provided to Mr. D'onofrio in connection with the establishment of The Channa Trust, since it too is privileged.

If there is any further information you require, and which would not be subject to the attorney-client privilege, I would be happy to provide it to you upon the consent of Mr. D'onofrio.

Sincerely yours,

Elliot I. Miller

EIM:mnn
cc:   Arthur M. D'onofrio via fax

donofrio\8672\0001\cor\peter watts 070901

# Exhibit 3

# Kleban & Samor, P.C.

*Attorneys at Law*

2425 Post Road  P.O. Box 763
Southport, Connecticut 06490
Telephone (203) 255-4646
Facsimile (203) 259-9617
Email address: info@kleban-samor.com

900 Third Avenue, 13th Floor
New York, NY 10022
Telephone (212) 826-6755
Facsimile (212) 371-1084

Reply To Southport Office

Elliot I. Miller
(203) 254-8912
E-mail: emiller@kleban-samor.com

July 19, 2001

**By Fax and Mail**
Peter Watts
Continental Financial Services Ltd.
PO Box 829, Charles House
Charles Street
St. Helier Jersey
Channel Islands  JE4 00E

RE:  **THE CHANA TRUST**

Dear Peter:

I have been out of the office for several days so I am now just addressing your fax memorandum of July 17, 2001.

You inquired whether I could provide you with privileged information with Mr. D'onofrio's consent. Since the privilege belongs to Mr. D'onofrio he can waive it. However, if he wishes to waive the privilege, he can provide you with the information directly and there is no reason to use me as an intermediary. Frankly, I do not see what advantage there is to Mr. D'onofrio waiving the privilege but you might address this issue to him directly.

By the way, your fax was sent to our New York office rather than my Connecticut office. In the future, please send fax messages to the Connecticut number on the top of this page.

Sincerely yours,

Elliot I. Miller

EIM:mnn
cc:   Arthur M. D'onofrio via fax

donofrio\8672\0001\cor\peter watts 071101