UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VINCENT NASTRO,                        :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :    No. 3:02CV00857(DJS)
                                       :
ARTHUR M. D'ONOFRIO, CAROLYN           :
D'ONOFRIO, ARTHUR A.                   :
D'ONOFRIO, PAUL D'ONOFRIO,             :
NICOLE D'ONOFRIO, NEW ENGLAND          :
PROPELLER SERVICE, INC., U.S.          :
PROPELLER SERVICE OF CT, INC.,         :
DIV-ACQ, INC., ADMW, LLC, THE          :
CHANA TRUST, THE CONTINENTAL           :
TRUST CO. LTD., KLEBAN &               :
SAMOR, P.C., and ELLIOT I.             :
MILLER,                                :
                                       :
        Defendants.                    :

<u>MEMORANDUM OF DECISION AND ORDER</u>

        Plaintiff, Vincent Nastro ("the Plaintiff") initially

brought this action against thirteen defendants, alleging

violations of both federal and Connecticut law.  After various

motions, conferences, and other proceedings, the only remaining

defendants in this case are Kleban & Samor, P.C. ("K&S") and

Elliot I. Miller ("Miller") (collectively, "the Defendants").[1]
In the Fifth Count of his Amended Complaint, the Plaintiff
alleges that the Defendants have violated the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §
1962.  On January 18, 2006, the Defendants filed a motion to
dismiss (dkt. # 161),[2] which the court subsequently converted
into a motion for summary judgment (dkt. # 173) pursuant to Rule
56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").
For the reasons set forth herein, the Defendants' motion for
summary judgment **(dkt. # 161)** is **GRANTED.**

---

[1] On May 16, 2003, the court dismissed the Plaintiff's claims against The
Chana Trust and the Continental Trust Company Limited, as set forth in the
Plaintiff's original Complaint, for lack of personal jurisdiction. (See dkt.
# 52.)  The court also dismissed the Plaintiff's Connecticut Uniform
Fraudulent Transfers Act and Connecticut Unfair Trade Practices Act claims
against the Defendants.  (See id.)  As there were no other claims against the
Defendants at that time, they were dismissed from the case.  (See id.)  The
Plaintiff subsequently filed an Amended Complaint, alleging, in the Fifth
Count, that the Defendants violated the Racketeer Influenced and Corrupt
Organizations Act, 18 U.S.C. § 1962.  On January 13, 2006, the Plaintiff filed
a Notice of Dismissal (Partial) (dkt. # 160), in which he gave notice to the
court that he was dismissing his action, with prejudice, against Arthur M.
D'Onofrio, Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, Nicole
D'Onofrio, New England Propeller Service, Inc., U.S. Propeller Service of CT,
Inc., DIV-ACQ, Inc. and ADMW, LLC.  On January 19, 2006, the court approved
the Plaintiff's Notice of Dismissal.  (See dkt. # 162.)  Thus, only the
Defendants remain to defend this case.

[2] The Defendants' motion to dismiss referenced that it was brought
pursuant to Rule 12(b)(2), which allows dismissal for lack of jurisdiction
over the person.  See Fed. R. Civ. P. 12(b)(2).  Despite this mention of Rule
12(b)(2), however, the Defendants made no argument as to how or why this court
lacks personal jurisdiction over them.  The court recognizes that "[o]n a Rule
12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears
the burden of showing that the court has jurisdiction over defendant." Reese
v. Arrow Fin. Servs., LLC, 202 F.R.D. 83, 86 (D. Conn. 2001).  The Plaintiff
has alleged that K&S is a professional corporation organized under Connecticut
law with a principal place of business in Connecticut, and that Miller, a
citizen and resident of Connecticut, is a member of K&S.  The Defendants have
not rebutted (and may not be able to rebut) the Plaintiff's assertions here.
Consequently, insofar as the Defendants move to dismiss for lack of personal
jurisdiction, their motion is denied.

## I. THE PLAINTIFF'S SUBMISSIONS

Before setting forth the background facts of this case, the court notes that the Plaintiff has failed to fully comply with Rule 56 of the Local Rules of Civil Procedure for the District of Connecticut ("D. Conn. L. Civ. R."). Local Rule 56(a)(1) provides that "[t]here shall be annexed to a motion for summary judgment a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs . . . a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(1). Under Local Rule 56(a)(2),

> [t]he papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs . . . corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied.

D. Conn. L. Civ. R. 56(a)(2). "All material facts set forth in [the moving party's Local Rule 56(a)1] [S]tatement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2." D. Conn. L. Civ. R. 56(a)(1).

Furthermore, pursuant to Local Rule 56(a)(3),

> Each statement of material fact by a movant in a Local Rule 56(a)(1) Statement, or by an opponent in a Local Rule 56(a)(2) Statement, and each denial in an opponent's Local Rule 56(a)(2) Statement, must be

-3-

> followed by a specific citation to (1) the affidavit of
> a witness competent to testify as to the facts at trial
> and/or (2) evidence that would be admissible at trial.

D. Conn. L. Civ. R. 56(a)(3).  "[F]ailure to provide specific

citations to evidence in the record as required by this Local

Rule may result in the Court deeming certain facts that are

supported by the evidence admitted in accordance with Rule

56(a)(1) . . . ."  D. Conn. L. Civ. R. 56(a)(3).

The majority of the Defendants' factual statements, as

contained in their Local Rule 56(a)(1) Statement, have been

admitted by the Plaintiff in his Local Rule 56(a)(2) Statement.[3]

The Plaintiff has denied Paragraphs 8, 17, and 18 of the

Defendants' Local Rule 56(a)(1) Statement.  None of the

Plaintiff's denials, however, are supported by specific citations

to evidence in the record, even though the Defendants provided

citations to support the factual assertions contained in those

paragraphs.  Consequently, the court shall deem admitted those

---

[3]The Plaintiff titled his submission "Plaintiff's Local Rule 9(c)(2) Statement."  The court points out that "[u]nder the 2003 Amendments to the Local Rules, Local Rule 9(c)[] was renumbered as Local Rule 56(a)[]." Tyson v. Willauer, 289 F. Supp. 2d 190, 193 n.4 (D. Conn. 2003).  For purposes of consistency and to avoid confusion, the court shall refer to the Plaintiff's submission as a Local Rule 56(a)(2) Statement.

paragraphs.[4]

## II. FACTS

In 1996, the Plaintiff filed an action against Arthur M. D'Onofrio ("D'Onofrio") in the Superior Court of California ("the California Action"). The California Action went to trial.[5]   On June 7, 2001, the Plaintiff obtained a judgment against D'Onofrio in the California Action in the amount of $514,698.75 for compensatory damages and prejudgment interest, and $1,600,000.000 for exemplary damages ("the Judgment"). D'Onofrio appealed the Judgment to the California Appellate Court, but, because he did not file a bond for a stay of proceedings pursuant to the California Code of Civil Procedure, there was no stay of the Judgment. On August 10, 2001, the Judgment, pursuant to Section 52-605 of the Connecticut General Statutes, was registered in Connecticut and became a judgment of the State of Connecticut.

---

[4]The court is aware that "in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local] Rule 56[] statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Giannullo v. City of New York, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (stating that, "although [Local] Rule 56[] is designed to streamline the district court's consideration of summary judgment motions," not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"). Here, upon review of the evidence cited by the Defendants, the court is satisfied that the Defendants' citations to the record support the factual assertions contained in their Local Rule 56(a)(1) Statement.

[5]The Plaintiff states that the trial proceeded from December 12, 2000 through December 21, 2000, and from January 17, 2001 through January 25, 2001.

On April 1, 2003, the California Appellate Court, Third Appellate District, affirmed the award of compensatory damages; however, with regard to the punitive damages, the California Appellate Court remanded the action to the trial court for a new trial that would be based on evidence of D'Onofrio's financial condition at the time of the retrial.

According to the Plaintiff, D'Onofrio, acting as settlor, created The Chana Trust ("the Trust"), an offshore trust located on the Island of Jersey in the Channel Islands. The original trustee of the Trust was the Continental Trust Company Limited ("Continental").[6] The beneficiaries of the Trust were D'Onofrio's wife and children.[7] The Plaintiff maintains that on and before June 21, 2001, D'Onofrio owned 100% of the shares of New England Propeller Service, Inc. ("NEPS"), U.S. Propeller of CT ("USPCT"), Inc., and DIV-ACQ, Inc. ("DIV-ACQ"), and that D'Onofrio also was the owner of a 50% membership in ADMW, LLC ("ADMW").[8] The Plaintiff further maintains that, on June 21, 2001, D'Onofrio transferred all of his right, title, and interest in his shares of NEPS, USPCT, and DIV-ACQ, and his membership in ADMW, to Continental as trustee of the Trust. In his complaint,

---

[6] The Trust and Continental had been defendants in the Plaintiff's original complaint. The court dismissed the claims against the Trust and Continental for lack of personal jurisdiction.

[7] D'Onofrio's wife and children had been defendants in this case until the Plaintiff filed his Notice of Dismissal.

[8] As with D'Onofrio's wife and children, these companies had been defendants in this case until the Plaintiff filed his Notice of Dismissal.

the Plaintiff claims that D'Onofrio received no money,
consideration, or other value for the transfers of the above-
mentioned shares and membership.  In addition, the Plaintiff
claims that, as a result of these transfers, D'Onofrio became
insolvent.  The Plaintiff asserts that the above-mentioned
transfers fraudulently deprived him of the remedies he is
entitled to under the Judgment.

     With regard to the Defendants, K&S is a law firm and Miller
is a member of K&S.  As for the Defendants' specific conduct, the
Plaintiff alleges the following: (1) on or before May 16, 2001,
K&S contacted Continental via telephone regarding the creation of
the Trust; (2) Continental sent to K&S a facsimile dated May 14,
2001 that made specific inquiries about language for the trust
instrument; (3) Continental sent to K&S a facsimile dated June
22, 2001 that contained an SS-4, the IRS application for employer
identification number, for the Trust; (4) Continental sent to
Miller a letter, dated June 26, 2001, representing that D'Onofrio
executed the Trust on June 21, 2001; (5) K&S sent to the IRS a
letter dated July 2, 2001, which indicated the creation of the
Trust; (6) Continental sent to K&S a letter dated July 11, 2001
that contained certificates and assignments of D'Onofrio's stock
and membership interests to the trustee, Continental; (7)
Continental sent a letter, dated April 10, 2002, to K&S seeking
information for inclusion on the annual information return of

-7-

"Foreign Trust with a U.S. owner," form 3520-A for the IRS; and (8) K&S sent to Continental a facsimile and letter, dated April 11, 2002, containing a Form 1041 and a U.S. Income Tax return for Estate and Trusts, and seeking Continental's signature for completion of the Form 1041.

The Plaintiff asserts that he is a creditor of D'Onofrio within the meaning of the Connecticut Uniform Fraudulent Transfer Act. According to the Plaintiff, D'Onofrio devised a scheme to defraud the Plaintiff by creating an offshore trust and transferring his stocks and membership interests to the trust, thus depriving him of his claims to those assets in satisfaction of any judgment he had against D'Onofrio. The Plaintiff claims that the Defendants assisted D'Onofrio in this fraudulent scheme. In addition, the Plaintiff alleges that the Defendants were involved with continued wrongful activity in order to keep D'Onofrio's assets out of the Plaintiff's reach.[9] Thus, the Plaintiff claims that the Defendants' conduct constituted mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act.

### III. DISCUSSION

The only claim at issue here is the Fifth Count of the Amended Complaint, which alleges that the Defendants violated the

---

[9]The Defendants have submitted evidence showing that the Trust at issue was terminated, and that D'Onofrio had a bankruptcy action pending within the District of Connecticut.

-8-

RICO statute.  The Defendants argue that they are entitled to
summary judgment on the Fifth Count.  According to the
Defendants, the Plaintiff's RICO claim against them must fail
because: (1) there is insufficient evidence demonstrating that
the Defendants' actions constituted racketeering activities; (2)
the Plaintiff cannot establish the Defendants' participation in
two or more acts constituting a pattern of continuous
racketeering activity; (3) RICO claims require that the RICO
person must be different from the RICO enterprise, and the
alleged RICO person and enterprise in this case are the same; and
(4) the performance of proper legal services by the Defendants
does not constitute a participation in the operation or
management of a RICO enterprise.

A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(c).

Summary judgment is appropriate if, after discovery, the
nonmoving party "has failed to make a sufficient showing on an
essential element of [its] case with respect to which [it] has
the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

B. RICO

The RICO statute permits private cause of action for violations of 18 U.S.C. 1962. See 18 U.S.C. § 1964(c). "To state a claim for damages under RICO a plaintiff has two pleading burdens." Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990) (internal quotation marks omitted). "First, the plaintiff must assert that the defendant has violated 18 U.S.C. § 1962 . . ., the substantive RICO statute." Id. Second, the plaintiff must "allege that he was injured in his business or property by reason of a violation of section 1962."

-10-

Id. (internal quotation marks omitted).

With regard to violations of the substantive RICO statute, a plaintiff must specifically show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Id. "'Racketeering activity' is defined in RICO to mean 'any act or threat involving' specified state-law crimes, any 'act' indictable under various specified federal statutes, and certain federal 'offenses.'" H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 232 (1988). Title 18, section 1961(1) sets forth the federal offenses that constitute the basis for a claim of racketeering activity. See 18 U.S.C. 1961(1). Included in the list of federal offenses are mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343. See id. The Plaintiff's substantive RICO claims against the Defendants implicate both mail and wire fraud, as the Plaintiff maintains that the Defendants used both mail services and wire services (via facsimiles) to perpetrate their alleged wrongdoing. An attorney, however, is not subject to liability under RICO for merely providing legal advice. See Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L., 832 F. Supp. 585, 591

(E.D.N.Y. 1993).

### 1. Racketeering Activity

The Plaintiff alleges that the necessary predicate racketeering activities here were mail fraud and wire fraud. "The elements of mail, wire, or television fraud include (1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire, mail, or television communications in interstate commerce in furtherance of the scheme." Chanayil v. Gulati, 169 F.3d 168, 170-71 (2d Cir. 1999). The Defendants argue that the Plaintiff has not sufficiently established mail or wire fraud, and hence a racketeering activity, under RICO because he has not demonstrated any intentional fraud. The Plaintiff counters that mail and wire fraud do not require intent to be established.

The court disagrees with the Plaintiff's contention. The Second Circuit has specifically held that, with regard to such mail and wire fraud claims, "Proof of fraudulent intent is required." United States v. Altman, 48 F.3d 96, 101 (2d Cir. 1995). This is not a rare or random holding. Indeed, the court has found ample case law, from the Second Circuit and district courts within the Second Circuit, holding the same. See, e.g., United States v. Novak, 443 F.3d 150, 156 ("This Court has interpreted th[e] statutory language [for mail fraud] as requiring the government to show proof of a scheme or artifice to

defraud, which itself demands a showing that the defendant
possessed a fraudulent intent.") (internal quotation marks
omitted); United States v. Thomas, 377 F.3d 232, 242 (2d Cir.
2004) ("Critical to . . . showing [a violation of the federal
fraud statutes] is evidence that the defendant possessed a
fraudulent intent.") (internal quotation marks omitted); United
States v. Wallach, 935 F.2d 445, 461 (2d Cir. 1991) ("To
establish the existence of a scheme to defraud, the government
must present proof that the defendants possessed a fraudulent
intent."); United States v. Marino, 204 F. Supp. 2d 476, 490-91
(E.D.N.Y. 2002) ("[E]ssential to a scheme to defraud is
fraudulent intent. . . .  It is not sufficient that [the]
defendant realizes that the scheme is fraudulent and that it has
the capacity to cause harm to its victims.  Instead, the proof
must demonstrate that the defendant had a conscious knowing
intent to defraud . . . [and] that the defendant contemplated or
intended some harm to the property rights of the victim.")
(internal citation and quotation marks omitted); Daddona v.
Gaudio, 156 F. Supp. 2d 153, 161 (D. Conn. 2000) (holding that,
for mail and wire fraud claims, a plaintiff must show
"defendant's knowing or intentional participation in the scheme"
and provide "a strong inference that the defendant possessed
fraudulent intent"); A. Terzi Prods., Inc. v. Theatrical
Protective Union, 2 F. Supp. 2d 485, 499 (S.D.N.Y. 1998) (holding

that a wire fraud claim requires "specific intent to defraud").

Assuming that D'Onofrio formulated a scheme to defraud the Plaintiff, the fundamental question here is whether, based on the factual allegations and submissions in the record, the Plaintiff has produced sufficient evidence of the Defendants' knowing participation in that scheme. In the court's view, the Plaintiff has not produced evidence sufficient to demonstrate the Defendants' knowing participation in a scheme to defraud the Plaintiff. As summarized by the Honorable Victor Marrero,

> Although Rule 9(b) provides that[,] [for allegations of fraud,] intent and "other conditions of mind" may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent. . . . Furthermore, [t]hese factual allegations must give rise to a "strong inference" that the defendants possessed the requisite fraudulent intent. . . . Intent is commonly demonstrated by specifying a motive for committing fraud, i.e., that the defendant benefitted [sic] from the alleged fraud, and an opportunity to do so. If motive is not apparent, scienter can be demonstrated through a showing of conscious behavior by the defendant.

USA Certified Merchs., LLC v. Koebel, 262 F. Supp. 2d 319, 333 (S.D.N.Y. 2003) (internal citations and quotation marks omitted); see Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987), overruled on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) (en banc).

Here, while the court does not doubt that the Defendants benefited, via remuneration, by taking on D'Onofrio as a client, the Plaintiff indicates no benefit they received or could have

-14-

received from defrauding him in this case.  Based on what the court has seen in the record, the Defendants would have made the same amount of money regardless of any scheme D'Onofrio may have had.  In addition, the evidence suggests that only D'Onofrio and his family stood to benefit from the alleged fraudulent scheme. Therefore, no benefit from D'Onofrio's alleged scheme can be ascribed to the Defendants.

Furthermore, Miller has submitted an affidavit wherein he states that he was neither informed nor had knowledge of the judgment entered against D'Onofrio at any time prior to the execution of the Trust.  Although the Plaintiff has denied this in his Local Rule 56(a)(2) Statement and memoranda of law, he has not provided a shred of evidence to rebut Miller's affidavit. The Plaintiff's conclusory allegations, although possibly sufficient to survive a motion to dismiss, are insufficient to raise a genuine issue of material fact for the purposes of summary judgment.  Thus, the record in this case shows that Miller (and hence K&S) could not have participated in the necessary predicate racketeering activities of mail and wire fraud because they did not knowingly participate in, or conspire to cause, D'Onofrio's alleged scheme to defraud the Plaintiff.

2. Two or More Acts Constituting a "Pattern"

Even if the court were to assume the Plaintiff had established the Defendants' conduct to be mail and wire fraud, he

would also have to demonstrate two or more acts constituting a
"pattern" under the RICO statute.  The Defendants argue that the
Plaintiff has not established either the "two or more acts" or
the "pattern" requirement.

The court agrees with the Defendants.  With regard to the
"two or more acts" requirement, the court notes that the scheme
alleged here was the plan to deprive the Plaintiff[10] of his
ability to collect on a judgment.  As the Plaintiff rightly
points out, furtherance of only a single scheme will not cause a
RICO claim to fail.  See Indelicato, 865 F.2d at 1383.  There
still must be, however, two or more acts by the Defendants to
further the single scheme.  As the Second Circuit has warned,
"courts must take care to ensure that the plaintiff is not
artificially fragmenting a singular act into multiple acts simply
to invoke RICO."  Schlaifer Nance & Co. v. Estate of Warhol, 119
F.3d 91, 98 (2d Cir. 1997)

In the court's view, the Plaintiff is fragmenting a singular
act into multiple acts.  Accepting that there was a scheme to
defraud the Plaintiff, the Defendants' alleged act in furtherance
of that scheme was the establishment of the Trust.[11]  All of the

---

[10]The Plaintiff alleges that the purpose of the scheme was to shield
D'Onofrio's assets from his "creditors."  There is no evidence in this case
regarding any other creditors, and even if there were, the court fails to see
how the Plaintiff would have standing to bring a RICO cause of action on their
behalf.

[11]The court is aware that the Defendants deny establishing the Trust.

-16-

conduct ascribed to the Defendants in this case consisted of transactions (e.g., phone calls, facsimiles, letters) in furtherance of that one act. As a result, they were "subparts of the singular act, and not a 'pattern' of separate acts with an underlying purpose." Id. "[M]ultiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern." Tellis v. U.S. Fid. & Guar. Co., 826 F.2d 477, 478 (7th Cir. 1986); see Persaud v. Bode, No. 04 CV 4475(ARR), 2006 WL 1419397, at *5 (E.D.N.Y. Feb. 8, 2006); Dtex, LLC v. BBVA Bancomer, S.A., 405 F. Supp. 2d 639, 649-50 (D.S.C. 2005); Zhu v. First Atlantic Bank, No. 05 Civ. 96(NRB), 2005 WL 2757536, at *4 (S.D.N.Y. Oct. 25, 2005); Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., 354 F. Supp. 2d 293, 304 (S.D.N.Y. 2004); Linens of Europe, Inc. v. Best Mfg., Inc., No. 03 Civ. 9612(GEL), 2004 WL 2071689, at *16 (S.D.N.Y. Sept. 16, 2004).

The court also does not believe that the Plaintiff has established a "pattern" of racketeering activity. As the Supreme Court has noted,

> A pattern is not formed by "sporadic activity," . . . and a person cannot be subjected to [RICO] sanctions . . . simply for committing two widely separated and isolated criminal offenses . . . . Instead, [t]he term "pattern" itself requires the showing of a relationship between the predicates . . . and of the threat of continuing activity . . . . It is this factor of *continuity plus relationship* which combines to produce a pattern. . . . RICO's legislative history reveals Congress' intent that to prove a pattern of

-17-

> racketeering activity a plaintiff or prosecutor must
> show that the racketeering predicates are related, *and*
> that they amount to or pose a threat of continued
> criminal activity.

H.J. Inc., 492 U.S. at 239 (emphasis in original) (internal citations and quotation marks omitted).  The Supreme Court went on to state that "'[c]ontinuity' is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  Id. at 241.

A closed-ended pattern of racketeering activity is demonstrated by proving a series of related predicate acts that amount to continued criminal activity "extending over a substantial period of time."  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004) (internal quotation marks omitted).  "Predicate acts extending over a few weeks or months . . .  do not satisfy this requirement."  H.J. Inc., 494 U.S. at 242.  "Since the Supreme Court decided H.J. Inc., we have never held a period of less than two years to constitute a substantial period of time."  Spool v. World Child Int'l Adoption Agency, --- F.3d ----, 2008 WL 706580, at *5 (2d Cir. 2008); see Satinwood, Inc., 385 F.3d at 181 ("Notably, [the Second Circuit] has never found a closed-ended pattern where the predicate acts spanned fewer than two years.").

In addition, "[w]here the predicate acts alleged are not inherently unlawful acts, such as murder or obstruction of

-18-

justice, courts normally require a longer span of time to satisfy the continuity requirement. <u>Casio Computer Co., Ltd. v. Sayo</u>, No. 98CV3772 (WK), 2000 WL 1877516 at *11 (S.D.N.Y. Oct. 13, 2000). Indeed, "it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where . . . '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy.'" <u>Spool</u>, --- F.3d ----, 2008 WL 706580, at *5 (quoting <u>GICC Capital Corp. v. Tech. Fin. Group, Inc.</u>, 67 F.3d 463, 468 (2d Cir. 1995)).

The Plaintiff has not established close-ended continuity here. D'Onofrio retained Miller as his attorney on May 11, 2001, and the final act of racketeering activity alleged by the Plaintiff occurred in April 2002. Such a brief span of time (less than a year) falls short of the "substantial period of time" required for demonstrating a close-ended pattern. This is especially true when, as here, the alleged predicate acts were not inherently unlawful, there are only a "handful of participants," and the scheme is neither "complex" or "multi-faceted."

This leaves open-ended continuity. "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." <u>Id.</u> at *6 (internal quotation

-19-

marks omitted).  "This threat is generally presumed when the enterprise's business is primarily or inherently unlawful." Id. "When the enterprise primarily conducts a legitimate business, however, no presumption of a continued threat arises." Id. (internal quotation marks omitted).

As discussed above, the court does not believe that the Defendants were involved in racketeering activity, thus making this argument academic.  Nevertheless, the court fails to see how there was a "threat" of continued activity on the Defendants' part here when it appears that their last alleged racketeering activity occurred in April 2002 and the Trust itself has been terminated. In sum, the Plaintiff has failed to demonstrate that the Defendants performed two or more acts constituting a pattern of racketeering activity.

3. Operation or Management of an Enterprise[12]

To maintain a civil RICO claim,  a plaintiff must show that a defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the RICO] enterprise's affairs . . . ." 18 U.S.C. § 1962(c).  "[T]o conduct or participate, directly or indirectly, in the conduct of [a RICO] enterprise's affairs, . . . one must participate in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (internal quotation marks omitted).  "Of

---

[12]For the purposes of this section, the court shall assume the existence of a RICO enterprise.

-20-

course, the word 'participate' makes clear that RICO liability is
not limited to those with primary responsibility for the
enterprise's affairs, just as the phrase 'directly or indirectly'
makes clear that RICO liability is not limited to those with a
formal position in the enterprise, but *some* part in directing the
enterprise's affairs is required." Id. at 179 (footnote
omitted).

After the Supreme Court's decision in Reves, "[m]any other
courts faced with . . . § 1962(c) claims against outside
professionals have agreed that providing important services to a
racketeering enterprise is not the same as directing the affairs
of the enterprise." Dep't of Econ. Dev. v. Arthur Andersen & Co.
(U.S.A.), 924 F. Supp. 449, 466 (S.D.N.Y. 1996) (collecting
cases); see Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22
(2d Cir. 1994) (finding that the provision of legal services
related to fraudulent real estate transaction was not management
of the RICO enterprise conducting the fraudulent transaction);
Arons v. Lalime, 3 F. Supp. 2d 314, 321 (W.D.N.Y. 1998)
("[P]roviding legal advice and legal services generally does not
constitute participation in the operation or management of an
enterprise sufficient to ground an allegation of a violation of §
1962(c).") (citing Morin v. Trupin, 835 F. Supp. 126, 135
(S.D.N.Y. 1993)); Biofeedtrac, Inc., 832 F. Supp. at 590-91
(holding that attorney who knowingly assisted enterprise in

execution of fraudulent scheme by providing legal services and advice could not be held liable under § 1962(c) because his role was, at all times, limited to the provision of legal services and did not extend to operation or management of enterprise); see also Goren v. New Vision Int'l, Inc., 156 F.3d 721, 728 (7th Cir. 1998) ("Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself."); Nolte v. Pearson, 994 F.2d 1311, 1317 (8th Cir. 1993) (attorneys who prepared allegedly false opinion letters and informational memoranda regarding a music recording leasing program had not participated in "operation or management"); Univ. of Md. v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result"); Sassoon v. Altgelt, 777 Inc., 822 F. Supp. 1303 (N.D. Ill. 1993) (attorneys' provision of legal services to general partners and limited partnership did not constitute operation or management of enterprise that would support liability under Section 1962(c)); Gilmore v. Berg, 820 F. Supp. 179, 183 (D.N.J. 1993)(attorney who prepared false limited partnership documents not liable under Section 1962(c)).

Here, the Plaintiff has failed to put forth any evidence from which a reasonable jury could conclude that the Defendants, in their roles as an attorney and law firm, did anything more than offer their professional legal services to D'Onofrio.  The Defendants have submitted evidence showing that they were retained by D'Onofrio to (1) review drafts of trust documents in order to provide advice concerning the estate, gift, and income tax consequences of the establishment of the  Trust; and (2) prepare required tax filings for the Trust.  The Plaintiff has submitted nothing to counter the Defendants' evidence in this regard.  In other words, there is no evidence that the Defendants' involvement in the transactions at issue exceeded their professional duties.  As noted above, the performance of these duties would not make the Defendants liable under RICO even if they had knowledge of the alleged enterprise's illicit nature.[13]  Thus, there is no evidence they operated or managed the alleged RICO enterprise.  The Plaintiff's simple allegation that the Defendants were involved in the operation or management of the alleged RICO enterprise is insufficient to survive summary judgment.

The court has found that the Plaintiff has not produced sufficient evidence from which a reasonable jury could conclude

---

[13]The court notes that, in fact, no evidence has been submitted demonstrating that the Defendants knew of D'Onofrio's alleged scheme before the Trust was established.

that the Defendants (1) through the commission of two or more acts constituting a "pattern" of "racketeering activity," directly or indirectly participated in a RICO enterprise, or (2) conspired to violate the RICO statute.  The Plaintiff's RICO claim against the Defendants thus fails.  Consequently, the Defendants' motion for summary judgment **(dkt. # 161)** is **GRANTED**.[14]

### IV. CONCLUSION

For the reasons above, the Defendants' motion for summary judgment **(dkt. # 161)** is **GRANTED.  Judgment in favor of Kleban & Samor, P.C. and Elliot I. Miller shall enter on the Fifth Count of the Amended Complaint.  There are no longer any remaining claims in this case because the Fifth Count of the Amended Complaint was the only active count when the motion for summary judgment was filed.  Therefore, the Clerk of the Court shall close this file.**

**SO ORDERED** this <u>31st</u> day of March, 2008

_____
/s/DJS
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE

---

[14]In light of the above, the court need not discuss the Defendants' arguments that the RICO persons and enterprise in this case are the same.

-24-